IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JIM DAWS TRUCKING, LLC, | **COMPLAINT** |
| Plaintiff | |
| v. | **JURY TRIAL DEMANDED** |
| DAWS, INC., JAMES R. DAWS, LANA R. DAWS, DAWS TRUCKING, INC., and COLUMBUS TRANSPORTATION & LOGISTICS, LLC, | |
| Defendants. | |

Plaintiff Jim Daws Trucking, LLC ("JDT"), for its Complaint against Daws, Inc., James R. Daws ("Jim Daws" or "Jim"), Lana R. Daws ("Lana Daws" or "Lana"), Daws Trucking, Inc., and Columbus Transportation & Logistics, LLC ("CTL"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff JDT is a Nebraska limited liability company whose members, Ricardo Fernandez ("Rick") and Ricardo Daniel Fernandez ("Ricky"), are residents of Illinois.

2.    Defendant Daws, Inc. is a Nebraska corporation with its principal place of business at 758 280th Rd. in Milford, Nebraska. Daws, Inc.'s registration with the Nebraska Secretary of State lists the nature of its business as over-the-road flatbed trucking

3.    Defendant Jim Daws is an individual and a resident of Seward, Nebraska, and the husband of Defendant Lana Daws.

4.    Defendant Lana Daws is an individual and a resident of Seward, Nebraska, and the wife of Jim Daws.

5.    Defendant Daws Trucking, Inc., is a Nebraska corporation with its principal place of business at 758 280th Rd. in Milford, Nebraska. Daws Trucking, Inc.'s registration with the Nebraska Secretary of State lists the nature of its business as over-the-road flatbed trucking.

6.    Jim and Lana are the directors of Daws, Inc. and Daws Trucking, Inc. Jim is the President and Treasurer of both companies. Lana is the Secretary of both companies. There are no other officers or directors of Daws, Inc. or Daws Trucking, Inc.

7.    Defendant CTL is a Nebraska limited liability company with its principal place of business at 758 280th Rd., Milford, Nebraska. CTL brokers freight for trucking companies, including Daws Trucking, Inc. and other companies owned or controlled by Jim Daws, including JLD Truck Lines, LLC, J & L Enterprises, LLC, and Loyal Trucking, LLC. CTL is owned and controlled by Jim.

8.    This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**FACTS**

10.    Rick and Jim have both been in the trucking business and have known each other for many years. In 2018 and again in 2021, Jim approached Rick and said he was interested in selling his trucking business, which was commonly known as "Daws Trucking."

11.    In 2022, Rick and Ricky reached an agreement-in-principle with Jim on price and other terms to purchase the business of Daws Trucking as a going concern.

12.    Jim represented to Rick and Ricky that the business of Daws Trucking was owned by and conducted through Daws, Inc. On April 19, 2022, Rick and Ricky formed JDT as a limited liability company to purchase the business of Daws, Inc.

13.    On May 4, 2022, JDT and Daws, Inc. entered into an Asset Purchase Agreement (the "Asset Purchase Agreement"). A copy of the Asset Purchase Agreement is attached hereto as Exhibit A.

14.    Pursuant to the Asset Purchase Agreement, Daws, Inc. agreed to sell, and JDT agreed to buy, the business, property, and assets of Daws, Inc. for $12,000,000, with $8,000,000 to be paid in cash and the balance of $4,000,000 to be paid through a promissory note bearing interest at 3% per year.

15.    The Asset Purchase Agreement allocated $4,500,000 to the goodwill purchased by JDT.

16.    Pursuant to the Asset Purchase Agreement, JDT acquired all tangible and intangible assets of the business, including its "trade, business name, goodwill, and all other intangible assets," including but not limited to the business's U.S. DOT number and Motor Carrier number. The Asset Purchase Agreement specifically provides that one asset acquired by JDT was the trade name "Daws Trucking."

17.    The Asset Agreement also contains a non-compete provision in which Daws, Inc. agreed "that it shall not, either directly or indirectly, carry on or engage in, either as an owner, part owner, manager, operator, employee, agent, or other participant, the business of trucking in the continental United States of America, for a period of no less than five (5) years from the date of this Agreement, so long as Buyer or any person deriving title to the goodwill of said business from Buyer carries on a like business in such area."

18.    The Asset Purchase Agreement further provides, "By affixing their signatures to this Agreement, Seller's Shareholders join in the foregoing noncompetition agreement and agree to be individually bound thereby."

19.    Jim and Lana were both shareholders of Daws, Inc. at the time the Asset Purchase Agreement was executed, and they both signed the Asset Purchase Agreement.

20.    As Daws, Inc. did, JDT operates as an over-the-road trucking business coast-to-coast in the continental United States.

21.    The non-compete provision in the Asset Purchase Agreement is reasonable in time and scope and is designed to protect the legitimate,

protectible business interests of JDT, principally the goodwill of the Business purchased by JDT, which the parties valued at $4.5 million dollars.

22.    After the sale of the Business, Jim became an employee of JDT and was paid a salary for his services.

23.    As an employee of JDT, Jim was required to take direction from JDT, which came principally through Rick. However, Jim refused to take such direction and refused to assist in the transition of the business, including relationships with customers, employees, and drivers, in the direction of employees in the accounting, shop, and dispatching operations, and in the control of JDT's finances and bank account.

24.    In an email dated April 1, 2024, Jim claimed to have "total control" of JDT.

25.    Jim used his control over JDT to direct its operations for his own benefit, including in the following ways:

   a. Running JDT's finances through a bank account at American National Bank which he controlled, instead of through JDT's account at Union Bank & Trust.

   b. Refusing to transfer the US DOT number associated with the business as agreed in the Asset Purchase Agreement.

   c. Directing JDT to sell trucks it owned to drivers affiliated with Jim or other companies he owned or controlled.

d. Directing JDT dispatchers to favor trucks owned, in whole or in part, by Jim or companies he owned or controlled, as opposed to trucks owned by JDT.

e. Directing JDT's shop to prioritize trucks owned, in whole or in part, by Jim or companies he owned or controlled, as opposed to trucks owned by JDT.

f. Applying for the trade name "Daws Trucking" with the USPTO, despite his sale of the trade name in the Asset Purchase Agreement, without disclosing the application to Rick and without disclosing the prior sale of the trade name to the USPTO.

g. Directing JDT to pay the legal bills for advice and activities undertaken for the benefit of Jim and to the detriment of JDT.

h. Directing JDT to pay to lease three acres for a new business location for Daws Trucking, Inc. or other businesses owned or controlled by Jim.

i. Failing to provide Rick and Ricky with business records that would have informed them of his self-dealing, and otherwise failing to inform them of activities undertaken for his own benefit and against the interests of JDT.

26.    In short, since the sale, Jim has continued to act like he owned the business for which he was paid over $10,000,000 and has failed to transfer the assets and goodwill of the business to JDT.

6

27.    Despite its sale of the business and its trade name, Jim continues to represent himself as the owner of Daws Trucking on the website https://www.dawstruckingne.com/.  The website reads in part: "The owner of Daws Trucking, Jim Daws, has been in the trucking industry since 1976. Jim stands by his company motto of "Anchored in Excellence" which applies to all areas of the company with a goal to provide clients with the highest level of service possible."

28.    The website further provides: "Daws Trucking is near Milford, Nebraska located a few miles south of Interstate 80, specializing in hauling over the road flatbed freight. Daws Trucking's location in the middle of the continental United States has allowed us to transport freight from coast to coast."

29.    Upon information and belief and consistent with Jim's assertion of "total control" over the business, Jim devised a scheme in which he would retain control over the business, continue operating as he saw fit, and refuse to transfer the business and goodwill to JDT, with the end goal of forcing Rick and Ricky to abandon the business or sell it back to Jim at a discount.

30.    After April 1, 2024, Jim sought to accomplish this scheme and several offers were exchanged by the parties, but no agreement was reached.

31.    In addition to or as part of this buyback scheme, Jim has pursued plans to cripple the business of JDT by poisoning the well with customers, drivers, and employees, and to compete directly with JDT by soliciting, serving, and hiring the same customers, drivers and employees.

7

32.    As alleged above, in November 2023, through Daws Trucking, Inc., Jim filed a trademark application for the word mark "Daws Trucking" with the United States Patent and Trademark Office. The trademark application states the mark will be used for the following class of goods and services: Class 100 and 105 for "Truck hauling; Truck transport; Trucking services, namely hauling of agricultural products and construction materials and equipment."

33.    In August and September of 2024, while being paid a salary by JDT, on company time, and on company premises, Jim met with other employees of JDT to sow discontent, encourage employees and drivers to quit working with JDT, to make plans to compete against JDT, and to coordinate a mass defection from JDT to another entity or entities owned by or affiliated with Jim.

34.    In September 2024, Jim activated the plans for a mass defection from JDT. All the employees of JDT, except Jim, resigned effective Friday, September 27, 2024. Jim's final day of employment was September 30.

35.    On information and belief, Jim has encouraged customers of JDT to curtail, alter, or sever their relationships with JDT and to continue working with him through Daws Trucking, Inc.

36.    On information and belief, Jim intends to operate and is currently operating a competing trucking business or businesses, in violation of the non-competition provision set forth in the Asset Purchase Agreement, through one or more of the following:

    a.  A trucking business operated by Daws Trucking, Inc., as evidenced by the trademark application referenced above.

    b.  Though trucks owned or financed, in whole or in part, by Jim or entities affiliated with him, including but not limited to JLD Truck Lines, LLC, J & L Enterprises, LLC, and Loyal Trucking, LLC.

    c.  Through the brokering of freight through CTL.

37.    Even though he is no longer an employee of JDT, Jim remains in contact with JDT's drivers. On information and belief, he is using his personal relationships, financial relationships, and influence to encourage them not to work for the benefit of JDT.

38.    The actions of Jim and of entities owned and controlled by Jim and Lana, as alleged above, have resulted in damage and irreparable harm to JDT. If left unabated, they will result in further irreparable harm to JDT.

39.    On September 27, 2024, the same day as the mass resignations engineered by Jim, JDT secured the computer server it purchased in the Asset Purchase Agreement and the emails stored on that server. JDT's owners are still in the process of reviewing the emails and other electronic records they only recently secured. JDT anticipates a need to amend its claims to add further factual allegations, and possibly additional causes of action and additional defendants, after it has been able to fully review these records.

## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT – AGAINST DAWS, INC. and JIM DAWS

40.    JDT incorporates the allegations above as if fully set forth herein.

41.    The Asset Purchase Agreement constitutes a valid and binding contract between JDT and Daws, Inc., and, with respect to the non-compete obligations, between JDT and the shareholders of Daws, Inc., Jim and Lana Daws.

42.    JDT has met all its obligations under the Asset Purchase Agreement to date, including paying $8,000,000 in cash plus over $2,000,000 of the $4,000,000 promissory note executed pursuant to the Asset Purchase Agreement.

43.    Daws, Inc. has failed and refused to transfer the business assets to JDT.

44.    Jim and Daws, Inc. have prepared to compete, intend to compete, and on information and belief are competing against JDT in violation of the non-compete provision of the Asset Purchase Agreement.

45.    As a result of these material breaches by Daws, Inc. and Jim Daws, JDT does not owe any additional payments to Daws, Inc. under the Asset Purchase Agreement.

46.    As a result of these material breaches by Daws, Inc. and Jim Daws, JDT failed to receive the bargain for which it negotiated and paid in connection with the Asset Purchase Agreement and has been damaged in an amount to be proven but in no event less than $10,000,000, plus the costs of borrowing and other expenses associated with its agreement to purchase the business of Daws, Inc.

**SECOND CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY – AGAINST JIM DAWS**

47.    JDT incorporates the allegations above as if fully set forth herein.

48.    As an employee of JDT, Jim owed a fiduciary duty of loyalty to JDT.

49.    Jim Daws breached his fiduciary duty by engaging in self-dealing and operating JDT for his own benefit.

50.    As a result of Jim's breaches of fiduciary duty, JDT has been damaged in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE – AGAINST JIM DAWS, DAWS TRUCKING, INC., and CTL**

51.    JDT incorporates the allegations above as if fully set forth herein.

52.    The Asset Purchase Agreement required Daws, Inc. to transfer the trade, business name, goodwill, and all other intangible assets to JDT.

53.    Thus, JDT had and has valid business expectancies with the customers, employees, and drivers it received through the purchase of Daws, Inc.

54.    Jim, Daws Trucking, Inc., and CTL have unjustifiably and intentionally interfered with JDT's business relationships and expectancies.

55.    The interference with JDT's business relationships and expectancies has caused, and continues to cause, harm to JDT.

11

**FOURTH CLAIM FOR RELIEF**
**DECLARATORY AND INJUNCTIVE RELIEF – AGAINST JIM and LANA DAWS**

56.     JDT incorporates the allegations above as if fully set forth herein.

57.     An actual controversy exists as to whether Daws, Inc. and Jim and Lana Daws are bound by the non-compete provisions of the Asset Purchase Agreement and whether those provisions extend to Jim and Lana's activities through other entities they control, including Daws Trucking, Inc., CTL, JLD Truck Lines, LLC, J & L Enterprises, LLC, and Loyal Trucking, LLC.

58.     JDT is entitled to a declaration that Jim and Lana are bound by the non-compete provisions of the Asset Purchase Agreement and that these provisions prevent them from competing with JDT, directly or indirectly, through their ownership, management, operation, employment, agency, or other participation in any of these companies or with any other person or entity.

59.     JDT is further entitled to preliminary and permanent injunctive relief prohibiting Jim and Lana, or any person or entity acting in concert with them, from competing with JDT, directly or indirectly, in any capacity, in the business of over-the-road trucking in the continental United States.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff JDT requests the Court to enter judgment in its favor and against Defendants as follows:

A.     Awarding it damages in an amount to be proven at trial, but in no event less than $10,000,000, plus the financial harm caused by breaches of fiduciary duty and tortious interference.

B.     Declaring that Jim and Lana Daws are bound by the provisions of the non-compete in the Asset Purchase Agreement and that these provisions extend to Jim and Lana's activities through entities they control, including Daws Trucking, Inc., CTL, JLD Truck Lines, LLC, J & L Enterprises, LLC, and Loyal Trucking, LLC.

C.     Entering preliminary and permanent injunctions prohibiting Jim and Lana Daws, and all individuals and entities affiliated with them, from competing with JDT.

D.     Awarding JDT its reasonable attorney's fees and expenses incurred in this action.

E.     Granting such other relief as the Court may deem just or equitable.

Dated October 2, 2024

JIM DAWS TRUCKING, LLC, Plaintiff,

By:    s/ Andre R. Barry
        Andre R. Barry #22505
        Henry L. Wiedrich #23696
        CLINE WILLIAMS WRIGHT
        JOHNSON & OLDFATHER, L.L.P.
        233 South 13th Street
        1900 US Bank Building
        Lincoln, NE 68508
        Phone: (402) 474-6900
        abarry@clinewilliams.com
        hwiedrich@clinewilliams.com

**REQUEST FOR PLACE OF TRIAL**

Plaintiff Jim Daws Trucking, LLC, requests Lincoln as the place of trial.

s/ Andre R. Barry
Andre R. Barry