IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JIM DAWS TRUCKING, LLC,<br><br>　　　　　Plaintiff<br><br>v.<br><br>DAWS, INC., JAMES R. DAWS, LANA R. DAWS, DAWS TRUCKING, INC., and COLUMBUS TRANSPORTATION & LOGISTICS, LLC,<br><br>　　　　　Defendants. | Case No. 4:24-cv-03177 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR STRIKE**

Prepared and submitted by:

Andre R. Barry #22505
Henry L. Wiedrich #23696
Madeline C. Hasley #27870
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
233 South 13th Street
1900 US Bank Building
Lincoln, NE 68508
(402) 479-6900
abarry@clinewilliams.com
hwiedrich@clinewilliams.com
mhasley@clinewilliams.com

November 14, 2024

Plaintiff Jim Daws Trucking, LLC ("JDT") respectfully submits this Brief in Opposition to the Motion to Dismiss or Strike filed by Defendants Daws, Inc., James R. Daws ("Jim Daws" or "Jim"), Lana R. Daws, Daws Trucking, Inc. ("DTI"), and Columbus Transportation & Logistics, LLC ("CTL"). [Filing No. 14.]

## I. INTRODUCTION

As alleged in the Complaint, Jim Daws has tortiously interfered with the business relationships of JDT, which purchased his trucking business known as "Daws Trucking" in 2022. The relationships at issue include customers, employees, and drivers. As alleged in the Complaint, Jim—the owner and operator of DTI and CTL—engineered a mass defection of employees and drivers and has encouraged customers to stop doing business with JDT, all while starting up a competing venture that involves DTI operating as a trucking company and CTL brokering freight for the new venture.

DTI and CTL seek dismissal of the tortious interference claim against them. They argue the Complaint fails to sufficiently allege they engaged in tortious activity. As set forth below, however, the Complaint adequately alleges that Jim, as owner and operator of DTI and CTL, used those entities as part of an overall effort to breach his duty of loyalty and noncompete obligations to JDT. At the pleadings stage, this is enough to defeat the Motion to Dismiss. If the Court disagrees, JDT is prepared to allege additional facts to support its claims against DTI and CTL, so any dismissal should be without prejudice. Defendants' motion to strike JDT's claim for attorney's fees is premature and should likewise be denied.

## II. BACKGROUND

For purposes of the Motion to Dismiss, the Court must accept the allegations of the Complaint as true. In 2022, Rick Fernandez and his son, Ricky, reached an agreement-in-principle with Jim to purchase the business of Daws Trucking as a going concern. [Filing 1 ¶ 11.] Jim represented that the business was owned by and conducted through Defendant Daws, Inc. [*Id.* ¶ 12.] Rick and Ricky formed JDT to purchase the business of Daws, Inc., which they did, on May 4, 2022, for a total purchase price of $12,000,000. [*Id.* ¶¶ 12–14.] They agreed that $4,500,000 of the purchase price was attributable to goodwill. [*Id.* ¶ 15.] In the purchase agreement, JDT purchased all the tangible and intangible assets of the business, as a going concern, including the trade name "Daws Trucking." [*Id.* ¶ 16 & Ex. A.]

As part of the Asset Purchase Agreement, Daws, Inc. agreed that it "shall not either directly or indirectly, carry on or engage in, either as an owner, part owner, manager, operator, employee, agent or other participant, the business of trucking in the continental United States of America, for a period of no less than five (5) years from the date of this Agreement, so long as [JDT] or any person deriving title to the goodwill of said business from [JDT] carries on a like business in such area." [Filing 1 ¶ 17.] Jim and his wife, Defendant Lana Daws, both personally agreed to be individually bound by the terms of the noncompete. [*Id.* ¶¶ 18–19.] DTI and CTL do not attempt to challenge the enforceability of the noncompete in their Motion to Dismiss.

3

Defendants DTI and CTL are both involved in trucking, and are both owned and operated by Jim and, to some extent, by Lana. Specifically, DTI has the same address as Daws, Inc., and is registered with the Nebraska Secretary of State as being in the business of over-the-road flatbed trucking. [*Id.* ¶ 5.] Jim and Lana are the directors and officers of DTI. [*Id.* ¶ 6.] Jim also owns and controls CTL, which brokers freight for trucking companies, including companies owned or controlled by Jim. These affiliates include JLD Truck Lines, LLC, J&L Enterprises, LLC, and Loyal Trucking, LLC. [*Id.* ¶ 7.]

After the sale of the Business, Jim became an employee of JDT. [*Id.* ¶ 22.] Even though he was required to take directions from JDT as its employee, Jim refused to do so and refused to assist in transition of the business. [Filing 1 ¶ 23.] To the contrary, he claimed to have "total control" of the business he sold to JDT. [*Id.* ¶ 24.] The Complaint alleges in detail how Jim used this "total control" to violate his duty of loyalty to JDT, and how he has violated his duties under the noncompete. [*Id.* ¶¶ 25–39.] These allegations include specific descriptions of how Jim used DTI and CTL:

- Under the direction of Jim, in November 2023, **DTI** applied for federal trademark registration of the trade name "Daws Trucking," which was sold to JDT in the Asset Purchase Agreement, based in part on the representation that **DTI** would use the trade name for "truck hauling," "truck transport," and the "hauling of agricultural products and construction materials and equipment." [*Id.* ¶ 32.]

4

- Jim is also currently operating a competing truck business or businesses, in violation of the noncompete, through **DTI**, trucks owned or financed through other entities he owns, and through the brokering of freight through **CTL**. [*Id.* ¶ 36.]

Based on these factual allegations, JDT's Complaint alleges that Jim, DTI, and CTL have unjustifiably and intentionally interfered with JDT's business relationships and expectancies, causing harm to JDT. [*Id.* ¶ 54–55.] In the Motion to Dismiss, Jim does not seek dismissal of the tortious interference claims against him. The only request for dismissal is of claims against companies Jim controls—DTI and CTL.

### III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, JDT's Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, JDT must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. *Id.* at 663–64 (citing *Twombly*, 550 U.S. 544, 556 (2007)). This standard does not require detailed factual allegations, but it demands more than "an unadorned accusation." *Id.* at 678. The facts alleged must raise a reasonable expectation that discovery will reveal evidence of wrongdoing. *Twombly*, 550 U.S. 544, 545 (2007).

In applying the common-sense standard referenced above, "it is unrealistic to expect Plaintiff to have access to details about alleged behind-the-scenes actions the Defendants took." *Strategic Energy Concepts, LLC v. Otoka Energy, LLC*, No. CV 16-463 (MJD/BRT), 2016 WL 7627040, at *12 (D. Minn. Nov. 18, 2016). Of course, all well pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the nonmoving party's favor. *Vigeant v. Meek*, 953 F.3d 1022, 1024 (8th Cir. 2020).

## IV. ARGUMENT

JDT agrees the elements a claim for tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Thompson v. Johnson*, 299 Neb. 819, 828, 910 N.W.2d 800, 806 (2018). However, JDT need not prove these elements at this stage. "[T]his case is at the pleading stage, not the proving stage." *Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1196 (D. Neb. 2015).

Defendants argue the Complaint "is devoid of any facts alleging that Daws Trucking, Inc. or CTL engaged in such tortious activity, nor that anyone terminated their business relationship with JDT because of any action taken by [DTI] or CTL." [Filing 15 at 4.]

6

A.  **JDT has alleged tortious interference by DTI and CTL.**

Defendants seek to minimize the allegations against DTI and CTL by reading them in isolation, counter to the rule that a complaint must be "read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citations omitted). Contrary to these arguments, the Complaint adequately alleges claims against both DTI and CTL.

1.  **Jim controls DTI and CTL.**

Jim is the prime mover in the scheme alleged in the Complaint. Not surprisingly, there is no motion to dismiss the claim that he tortiously interfered with JDT's business relationships. But the Complaint also alleges a direct connection between Jim, DTI, and CTL. Jim controls both DTI and CTL. [Filing 1 ¶¶ 5–7.] According to its own filings with the Nebraska Secretary of State, DTI operates an over-the-road flatbed trucking company—the same type of business (actually, the identical business)—Jim purported to sell JDT in the Asset Purchase Agreement. [*Id.* ¶ 5.] Defendants try to minimize the role of CTL, arguing that JDT, in paragraph 7 of the Complaint, "generally alleges that CTL is a Nebraska LLC that brokers freight." [Filing 15 at 4.] But Defendants omit what paragraph 7 also alleges—that CTL, which has the same principal place of business as Jim's other businesses in Milford, brokers freight for other companies owned or controlled by Jim, including JLD Truck Lines, LLC, J & L Enterprises, LLC, and Loyal Trucking, LLC. [Filing 1 ¶ 7.] In other words, DTI and CTL act under the control of Jim.

7

### 2. Under Jim's direction, DTI and CTL have tortiously interfered with the business of JDT.

The Complaint also alleges that, under the direction of Jim, DTI and CTL have both taken actions to harm JDT in violation of Jim's duty of loyalty and noncompete obligations. Specifically, DTI has applied for federal registration of the trade name that JDT purchased from Daws, Inc., ostensibly to be used in the business of trucking. [Filing 1 ¶ 32.] In addition, DTI is currently being used in the business of trucking in violation of the noncompete, and CTL is being used to broker freight to other companies owned by Jim, also in violation of the noncompete. [*Id.* ¶ 36.] In the context of the scheme alleged in the Complaint, and viewed in the light of common sense, these specific allegations provide more than enough facts to plausibly support an inference that DTI and CTL have tortiously interfered with the business of JDT.

It is Defendants, rather, who rely on arguments that are implausible. They argue "the complaint lacks factual allegation that JDT had a particular business relationship or expectancy with any business that CTL knew about." [Filing 15 at 4.] But Jim sold his business to JDT, worked for JDT, and ***owns and controls*** CTL. Any knowledge Jim has is imputed to CTL. What is implausible is the argument Defendants attempt to advance: That DTI and CTL, companies owned and controlled by Jim, lack knowledge of the business relationships which Jim sold to JDT, which Jim worked on as a JDT employee, and which Jim is now exploiting in violation of the noncompete obligations he undertook in exchange for over $10,000,000.

8

### 3. JDT has adequately alleged harm.

JDT has also adequately alleged that it has been damaged as the result of this interference. As noted above, the law does not require the Cout to set aside its common sense. The Complaint alleges that Jim has sowed discontent with drivers, encouraged mass defection of drivers, has encouraged customers to curtail, alter, or sever their relationships with JDT, and has encouraged drivers to stop working for JDT. [Filing 1 ¶¶ 33–37.] Thus, as summarized in JDT's claim for tortious interference, "[t]he interference with JDT's business relationships and expectancies has caused, and continues to cause, harm to JDT." [*Id.* ¶ 55.]

These facts are essentially identical to those which were found to state a claim in *Infogroup*. That case involved a counterclaim that that the counter-defendant left false reviews on the counter-claimant's website to damage its reputation. *Infogroup*, 95 F. Supp. 3d at 1196. There, as here, the counter-defendant sought dismissal on the grounds that the counterclaimant identified specific customers who read the reviews and declined to purchase plaintiff's products as the result of false statements. *Id.* While this Court wrote the law "may require proof of a relationship with a particular party, or at least a class of parties," it noted that the case was "at the pleading stage, not the proving stage," and held that the counter-claimant had sufficiently alleged "the existence of a group of potential customers who may have been diverted from doing business with it by a wrongful act of the [counter-defendant]." *Id.* Accordingly, the Court denied the motion to dismiss. *Id.*

9

The holding in *Infogroup* governs here. JDT has alleged that DTI and CTL, acting in concert with Jim, are harming JDT's business relationships with three distinct groups—customers, employees, and drivers. JDT has expressly alleged that it has been harmed by these actions, and that Jim, assisted by DTL and CTI, has already engineered a mass resignation of employees and drivers, is encouraging drivers to stop driving for JDT, and has encouraged customers to leave JDT. Common sense supports the conclusion that these actions have harmed JDT, particularly at this early stage when the full scope of Defendants' actions and their consequences are concealed from JDT. Moreover, even if JDT manages to salvage some of these relationships, the damage to the goodwill it purchased in the Asset Purchase Agreement will remain.

In contrast, none of the cases cited by Defendants supports dismissal of the tortious interference claims against DTI and CTL:

- Unlike the plaintiff in *Kubat Pharmacy, LLC v. Smart-Fill Management Group, Inc.*, No. 8:20cv505, 2021 WL 2188554, at *4 (D. Neb. Apr. 16, 2021), JDT has asserted specific factual allegations against DTI and CTL.

- Unlike the plaintiff in *Crabar/GBF, Inc. v. Wright*, No. 8:16-CV-537, 2019 WL 4016122, at *15 (D. Neb. Aug. 26, 2019), JDT has not failed to allege "the existence of any business relationship that was potentially impacted." While JDT has not identified specific customers, employees, and drivers by name in its Complaint, the law does not require it to do so. *See Infogroup*, 95 F. Supp. 3d at 1196.

10

- Unlike *ACI Worldwide Corp. v. MasterCard Techs., LLC*, No. 8:14CV31, 2014 WL 7409750, at *8 (D. Neb. Dec. 31, 2014), in which the plaintiff failed to allege that it lost any customers, JDT has alleged damage to its relationships with customers, employees, and drivers, including a mass resignation of employees and drivers.

- Unlike *MSSI, Inc. v. J.E. Dunn Constr. Co.*, No. 8:23CV45, 2023 WL 4705902, at *3 (D. Neb. July 24, 2023), where the plaintiff failed to allege "an affirmative act of unjustified interference," JDT has alleged affirmative acts of unjustified interference with its relationships with customers, drivers, and employees, including DTI's actions to take the trade name JDT purchased from Daws, Inc., and DTI and CTL's ongoing participation in efforts to operate a trucking business in violation of the noncompete.

In short, the allegations in JDT's Complaint are more than sufficient to set forth a claim that DTI and CTL tortiously interfered with JDT's relationships with customers, employees, and drivers.

**B.     If there is a dismissal it should be without prejudice.**

As explained above, JDT has more than adequately pled its claims for tortious interference. If the Court disagrees, however, JDT can address any deficiencies the Court may find in an amended pleading. Thus, any dismissal of the tortious interference claim against DTI and CTL should be without prejudice. *See United States ex rel. Louderback v. Sunovion Pharms., Inc.*, 703 F. Supp. 3d 961, 980 (D. Minn. 2023) (dismissal should be without prejudice when claims "might conceivably be repleaded with success").

### C. The motion to strike JDT's prayer for attorney's fees should be denied.

Defendants as a group have moved to dismiss the request for attorney's fees contained in JDT's prayer for relief. As this Court noted in *Infogroup*, motions to strike are often considered "time wasters" and are disfavored. *Infogroup*, 95 F. Supp. at 1194. While attorney fees are not generally available under Nebraska law, they may be appropriate, depending upon the facts and the conduct of litigation, and a motion to strike the request for fees from the prayer for relief is thus premature. *See Valley Boys, Inc. v. State Farm Ins. Co.*, No. 8:14CV159, 2015 WL 11027600, at *1 (D. Neb. June 15, 2015) ("Although both parties argue the merits of the applicability of the attorney's fees statute, the court finds the motion to strike is premature.) Defendants' Motion to Strike should thus be denied.

## V. CONCLUSION

For the reasons stated above, Jim Daws Trucking, LLC, respectfully requests that Defendants' Motion to Dismiss or Strike be denied.

Dated November 14, 2024

JIM DAWS TRUCKING, LLC, Plaintiff

By   s/ Andre R. Barry
Andre R. Barry #22505
Henry L. Wiedrich #23696
Madeline C. Hasley #27870
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
233 South 13th Street
1900 US Bank Building
Lincoln, NE 68508
(402) 474-6900
abarry@clinewilliams.com
hwiedrich@clinewilliams.com
mhasley@clinewilliams.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the word count of this brief complies with local rule NECivR 7.1(d). The word-count function of Microsoft Word M365, states that this brief, inclusive of all text, contains 3,022 words.

s/ Andre R. Barry
Andre R. Barry

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2024, the foregoing was filed with the Clerk of Court using the CM/ECF system, which will effectuate service on all counsel of record.

s/ Andre R. Barry
Andre R. Barry

4892-0207-5642, v. 2