IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JIM DAWS TRUCKING, LLC, | ) | CASE NO. 4:24-CV-3177 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DECLARATION OF JIM DAWS** |
| | ) | |
| DAWS, INC.; JAMES R. DAWS; LANA R. | ) | |
| DAWS; DAWS TRUCKING, INC.; and | ) | |
| COLUMBUS TRANSPORTATION & | ) | |
| LOGISTICS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

I, James R. Daws, hereby declare as follows:

1.      I am currently 70 years old and am competent to testify. I have personal knowledge of all facts set forth herein.

2.      I have a commercial drivers license and have been involved in the trucking industry since approximately 1976.

3.      I am the founder of Daws, Inc. From the inception of the company to the present, I have served as President of Daws, Inc.

4.      Over the course of my career, I also formed or acquired an ownership interest in other companies with my wife, Lana, including Daws Trucking, Inc., Columbus Transportation & Logistics, LLC and J&L Enterprises, LLC, and at various times have had an ownership interest in other companies, including Loyal Trucking, LLC and JLD Truck Lines, LLC with non-related partners who own and lease tractors and trailers to third parties.

1

**EXHIBIT**

**1**

5.      Rather than have separate e-mail addresses for each company I owned, I used my "jim@daws-trucking.com" email addresses to conduct business for all of my companies.

6.      During my ownership of my various companies, we never had an in-house IT department. However, a server was purchased.

7.      I have long used Julie Karavas and Tom Kranz of the law firm Karavas and Kranz, P.C. as both my personal attorneys and as attorneys for my companies.

8.      When Rick Fernandez approached me about purchasing the assets of Daws, Inc., I retained Karavas and Kranz, P.C. to provide me with legal advice regarding the transaction that eventually resulted in the May 4, 2022, asset purchase agreement (the "APA") with Jim Daws Trucking, LLC ("JDT").

9.      JDT did not buy Daws, Inc. in the APA. The stock in Daws, Inc. was not sold in the APA, likely because JDT did not want to be responsible for Daws, Inc.'s liabilities. After the APA, Daws, Inc. remained a separate corporation owned by me and my wife, and I remained President of Daws, Inc.

10.      One of the items that was sold in APA was Daws, Inc.'s server. In selling the server, I did not intend that I was selling all of the data contained on the server relating to my other companies or my personal communications, including communications with my attorneys prior to May 4, 2022—the effective date of the APA. Frankly, I'm not tech savvy and didn't have an understanding of whether or how e-mails and data are stored on a server.

11.     For as long as I can remember, and for years before APA, the only e-mail address I had was "jim@daws-trucking.com." I used my "jim@daws-trucking.com" email to communicate with my attorneys regarding the negotiation of the APA and I believed that those communications were confidential. I used this e-mail address for both business communications relating to all of my companies and for personal communications, including communications with my wife and personal attorneys about matters I expected to be confidential. I did not believe I was selling those communications as part of the APA.

12.     Other employees of my companies also had "@daws-trucking.com" e-mail addresses. Both before and after the APA, I was aware that employees would use their company e-mail addresses for personal communications. When I ran the companies it was not my practice to examine whether employees were using their "@daws-trucking.com" e-mail addresses for personal use or review, monitor, or audit their e-mail use, and no one ever monitored my e-mails.

13.     After the APA, Mr. Fernandez asked me to stay on and run JDT and train his son, Ricky, to eventually take over JDT. I agreed to do so and I became an employee of JDT. I did not have a written employment contract with JDT. Mr. Fernandez represented to me and Daws, Inc. employees who had also became JDT employees after the APA, that nothing would change from how the company was run before the APA.

14.     After the APA and becoming an employee of JDT, I never received a JDT employee handbook or a JDT e-mail use policy. After the APA, I continued to use my

"jim@daws-trucking.com" e-mail to communicate with my attorneys, about personal matters and matters relating to my other companies just as I had done before the APA.

15.    To the extent I communicated with JDT's attorneys about legal advice for JDT's business using my "jim@daws-trucking.com" e-mail account I do not claim that those communications are privileged. My attorney has notified JDT's attorneys that of the 667 electronic files their vendor identified as communications between me and attorneys, I am not claiming privilege over 239 of them, leaving 428 files that are privileged.

16.    With respect to the files that I am claiming are privileged, when I was communicating with my attorneys about personal matters or matters relating to my other companies I expected those communications to be confidential and privileged.

17.    Before the APA, I used my "jim@daws-trucking" e-mail address to communicate with my attorney, Julie Karavas, who was representing me in the negotiation of the sale to JDT. It was my understanding that Mr. Fernandez, and JDT, were represented by their own attorneys from Chicago. I expected my communications with my attorneys regarding this transaction would remain confidential and subject to the attorney-client privilege.

18.    In 2022, after the APA, Rick approached me about transferring Daws Trucking, Inc.'s DOT number to JDT. I engaged Julie Karavas to provide legal advice to me regarding this issue. It was my understanding that Rick and JDT were separately represented by a law firm out of Chicago relating to the negotiations

4

relating to the transfer of the DOT number. I used my "jim@daws-trucking.com" e-mail account for these communications with my attorney, Julie Karavas, and I expected that those communications would remain confidential and subject to the attorney-client privilege.

19.     In 2024, Mr. Fernandez approached me about potentially selling JDT's assets back to me. I engaged Julie Karavas to provide legal advice to me in these negotiations. It was my understanding that Mr. Fernandez and JDT were separately represented by a law firm out of Chicago. I used my "jim@daws-trucking.com" e-mail account to communicate with my attorney, Julie Karavas, and I expected that those communications would remain confidential and subject to the attorney-client privilege.

20.     The negotiations dragged on for many months. Ultimately, we were not able to reach an agreement and in August 2024 I informed Rick that I intended to resign from JDT effective September 30, 2024.

21.     After I announced my resignation from JDT, I continued my practice of communicating with my lawyers using my "jim@daws-trucking.com" e-mail address just as I had done for years before. I fully expected that those communications with my attorneys were confidential and privileged.

22.     In September 2024, Mr. Fernandez threatened to sue me and I corresponded with Ms. Karavas regarding these threats using my "jim@daws-trucking.com" e-mail address believing that my communications with my attorney were confidential and privileged.

5

23.     At no time during my employment with JDT did JDT notify me that it could monitor my private e-mail communications with my lawyers. To my knowledge, at no time during my employment with JDT did JDT have an e-mail use policy in place as none was communicated to me. At no time during my employment with JDT was I aware that JDT had monitored my e-mail communications or the e-mail communications of any other JDT employee.

24.     It was only on September 30, 2024, my last day of employment at JDT, that JDT's attorneys first informed my attorney, Julie Karavas, that JDT was taking the position that I had waived all privilege relating to communications with my lawyers by communicating with them using my "jim@daws-trucking.com" e-mail account, and that JDT intended to read my communications with my attorneys. My attorney disputed JDT's position.

25.     Attached as Exhibit A is a true and correct copy of an e-mail string between JDT's attorneys and my attorney regarding this privilege issue.

26.     Attached as Exhibit B is a true and correct copy of the Daws, Inc. employee handbook.

27.     The Daws, Inc. handbook did not apply to JDT employees.

28.     The Daws, Inc. handbook provides: "Daws Inc. will follow and enforce these policies as closely as possible, knowing in some instances interpretations will be required, which will be made by the President of the Company at its sole discretion." As the President of Daws, Inc. I used my discretion to not monitor e-mails of Daws, Inc.'s employees and I interpreted the handbook to not apply to me as

President of Daws, Inc. I did not believe in spying on my employee's e-mails. As President of Daws, Inc. I never claimed that an employee who communicated with their attorney using their company e-mail had waived the attorney-client privilege. I respected my employees and their privacy and would want and expect to be treated the same way.

29.     Had I known that JDT would claim that any communication I made using my "jim@daws-trucking.com" e-mail address was property of JDT and that JDT could read my communications with my personal attorney I would not have communicated with my attorneys using that e-mail address. At all times, my expectation was that my e-mails with my attorneys using my jim@daws-trucking.com e-mail address were privileged and confidential. After September 30, 2024, I did not send any additional e-mails to my lawyers using my "jim@daws-trucking.com" e-mail account.

30.     There are only two e-mails from after September 30, 2024, one on October 1, 2024, and one on October 9, 2024, that I claim are privileged. Both are e-mails from my attorney who inadvertently e-mailed me using my old "jim@daws-trucking.com" email address which had been my e-mail address for years.

I declare, under penalty of perjury, that the foregoing declaration, executed on the 22nd day of November, 2024, at Seward, Nebraska, is true and correct.

James R. Daws

3314375

7