| | |
|---|---|
| **From:** | Julie Karavas |
| **To:** | Andre R. Barry |
| **Cc:** | Karen Wall; Henry L. Wiedrich; Maddie C. Hasley |
| **Subject:** | RE: Lease & Emails |
| **Date:** | Wednesday, October 2, 2024 11:13:07 AM |
| **Attachments:** | image001.gif |

Andy,

We disagree with your analysis, and we anticipate the defendants will request a ruling on claims of privilege at the appropriate time in the underlying case. We can't be more specific, because, at a minimum, we anticipate the case being dismissed from federal court for lack of jurisdiction.

Julie M. Karavas
Karavas & Kranz, P.C.

---

**From:** Andre R. Barry <abarry@clinewilliams.com>
**Sent:** Wednesday, October 2, 2024 9:36 AM
**To:** Julie Karavas <Julie@jkklegal.com>
**Cc:** Karen Wall <karen@jkklegal.com>; Henry L. Wiedrich <hwiedrich@clinewilliams.com>; Maddie C. Hasley <MHasley@clinewilliams.com>
**Subject:** RE: Lease & Emails

Julie:

The position outlined in my email below is not, as you assert, a matter of opinion. The applicable legal rule, which I referenced in my email, is that for documents sent through email to be protected by attorney-client privilege, there must be a subjective expectation of confidentiality that is found to be objectively reasonable. *Doe 1 v. George Washington University*, 480 F. Supp. 3d 224, 226 (D.D.C. 2020). As the party seeking to claim the privilege, Jim (or, if he was communicating on behalf of another entity, that entity) has the burden of showing it has not been waived. *Id.*

As reflected in case law, including *Doe*, your statement that an email not determined to be confidential may nonetheless be privileged is wrong as a matter of law.

Jim can't make a showing that he had any expectation of confidentiality, let alone one that was objectively reasonable.

The relevant employee handbook is the one purchased by JDT, along with all the other assets of the business. As you and I discussed earlier this week, Jim must have approved this handbook, which you presumably wrote. It remained in effect after the sale. Even if the employee handbook did not exist, Jim was not an ordinary employee. He knew he had sold the tangible

EXHIBIT A

and intangible assets of the business to Rick. As you acknowledge, the server was a tangible asset. The emails are clearly intangible assets of the business. It makes no sense to suggest the email accounts were intangible assets of the business, but the emails contained in those accounts were not. The employee handbook said they were company property. Despite this, Rick never asked for emails to be destroyed and returned to him. He simply continued to use his JDT email account as if he owned the company, which he clearly did not, in the same way he used other assets of the company for his personal benefit. To the extent Jim was using email to facilitate breaches of fiduciary duty, the emails are also not protected by privilege under the crime-fraud exception in Neb. Rev. Stat. 27-503(4)(a).

We decline your request to destroy emails. We will retain them as evidence. Now that we have filed suit in federal court, you may request a ruling on any claims of privilege from the court. That is the approach that was followed in *Doe*. Please let us know if you intend to seek such direction and, if so, when you intend to do so. If you do intend to litigate these issues, we will ask the vendor to generate a log of all emails exchanged between Jim and your firm, with date, author, recipients, and subject, which can be shared with both sides and the court, so any claims of privilege can be fully vetted.

For the sake of clarity, we disagree with your assertions that any emails between Jim and your firm are privileged. Because we are unsure whether Jim and other employees retained all emails, we reiterate JDT's request for all communications and other records in your file for any of the matters on which your firm received payment from JDT. This would include communications internal to your firm or with persons other than Jim.

We are in the process of changing the registered agent for Jim Daws Trucking, LLC, with the Secretary of State, and expect that to be completed today. We will let you know when it is done.



**ANDY BARRY** | Partner
**CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, L.L.P.**
233 South 13th Street | 1900 US Bank Bldg. | Lincoln, NE 68508
Direct: 402.479.7143 | Main: 402.474.6900 | www.clinewilliams.com
Lincoln | Omaha | Aurora | Fort Collins | Holyoke

---

**From:** Julie Karavas <Julie@jkklegal.com>
**Sent:** Tuesday, October 1, 2024 11:52 AM
**To:** Andre R. Barry <abarry@clinewilliams.com>
**Cc:** Karen Wall <karen@jkklegal.com>
**Subject:** RE: Lease & Emails

Andy,

This email is in response to the email portion of your email.  First, regardless of relevance,

we are unaware of any employee handbook issued by Jim Daws Trucking, LLC ("LLC"). Any handbook used by any of the entities of which Jim was an owner are irrelevant. To the extent that you are relying on provisions of an employee handbook issued by the LLC, we request a copy, along with the signed receipt of the handbook by Jim.

We are responding to your email of personal opinion, void of legal citations, with our position. Until his resignation, Jim oversaw operations and management of the LLC, not only with Rick's approval, but at Rick's insistence. Jim was not merely an employee, as evidenced by the name Rick chose for the LLC, and consented to by Jim, evidence of his goodwill.

Your use of the word confidential is not synonymous with the word privileged. Even if the emails may be determined to not be confidential, to the extent they meet the legal definition of privileged, the communication will be privileged. At a minimum, we remind you:

1. All email communication existing on the server prior to the closing on May 4, 2022, need to be destroyed or delivered to us. Past emails are not part of the assets being sold in an asset transaction, unless specifically identified in the APA, which here, they were not. You are correct that the server itself (tangible) and the domain (intangible) were purchased;
2. All email communication between Jim and our office from September 10, 2024, the date you contacted me on behalf of Rick threatening litigation, thru September 27, 2024, are privileged;
3. All email communication between Jim and our office for purposes of seeking legal advice for himself and/or another business he owns and/or manages is privileged regardless of the date of the email(s);
4. Jim's email history since the May 2022 closing likely includes communication regarding his interests, separate and apart from LLC business, and not in conflict or competition with the LLC business. For example, Jim may have communication regarding his personal estate planning. Jim's employer, the LLC, is not prohibited from monitoring his email exchanges, <u>provided there is a valid business purpose</u> for doing so. Rick's desire to simply snoop in all of Jim's communication is not a valid business purpose.
5. Rick now has all the communications and work product (including drafts) we ever shared with LLC personnel that are covered by the invoices you identified and inquired about last week, which apparently the LLC paid for and, if related to LLC business <u>after</u> May 4, 2022, we agree would not be privileged. Accordingly, we consider your request satisfied.

Lastly, while I have you, Rick needs to change the Registered Agent of the LLC from us to anyone else. Please have him do so by the close of business tomorrow, Wednesday, October 2, 2024.


Julie M. Karavas
Karavas & Kranz, P.C.

---

**From:** Andre R. Barry <abarry@clinewilliams.com>

**Sent:** Monday, September 30, 2024 2:00 PM
**To:** Julie Karavas <Julie@jkklegal.com>
**Cc:** Karen Wall <karen@jkklegal.com>
**Subject:** Lease & Emails

Julie:

I'm writing to follow up on our conversation earlier today related to JDT LLC's lease and the emails on its server.

**Lease**

We agree with you that there's no written lease. As a result, the lease is month-to-month. JDT will pay the rent of $7250 to J & L (through Jim) today or tomorrow. If J & L wishes to terminate the lease, it will need to provide at least 30 days' notice. It's my understanding that Rick intends to find a new place for the operations of JDT and would like to do so within 30 days. As a specific plan develops, including a plan for the buildings JDT purchased, we'll let you know.

**Emails**

As I stated on the phone, JDT retains possession of all emails on its email server. We have reviewed the Asset Purchase Agreement, the Employee Handbook used at JDT, and the payment records showing JDT has been paying your firm for legal work and have concluded that no emails between Jim and your firm are protected by the attorney client privilege.

JDT purchased the entire business of Daws Inc., including the server and all intangible assets, in the Asset Purchase Agreement you drafted. These intangible assets included the firm's email accounts. The Employee Handbook also warned that computer data is owned by the company and may be viewed by the company, and that company computers should not be used for personal business:

> <u>Computers</u> - **All data entered on the Company's computers is considered the property of the Company.** No employees should knowingly enter false or misleading information in the Company's computer system or destroy any data, which the Company needs to conduct its business. **Please realize that for various reasons, the Company will access your equipment. As a result, your computer should not be used for personal business even during nonworking time if you don't want the Company to see your personal documents.** Unauthorized access to any computer, computer system, computer software or computer program is specifically prohibited. Violators will be prosecuted to the fullest extent allowed by civil or criminal law.
>
> <u>Electronic Mail</u> - Electronic mail (E-mail) is to be used primarily for

> business purposes and only for personal reasons during nonworking time. **Like your computer, the Company may need to access your E-mail for various reasons. You should be aware that such messages are not entirely confidential.** They can be forwarded to others without the original sender's knowledge. E-mail can be viewed by others who may improperly use a password to breach the security of the system. In addition, disclosure of E-mail messages may be required in lawsuits against the Company. As a rule of thumb, nothing should be sent by E-mail that you would not put in a formal memo or that you would not like to become public knowledge. Do not use derogatory, offensive or insulting language in any E-mail message.

Jim's use of email to communicate with you adverse to Rick and JDT was personal to him; it was not use for the benefit of JDT. In addition, Jim knew he had sold the servers and the entire business to JDT, and by extension, to Rick and Ricky. Knowing that, Jim still chose to send emails to you on a computer system owned by JDT, despite warnings that all data on that system is property of JDT, that his computer would be accessed by JDT, and that he should not use his computer for personal business. If Jim actually believed JDT would not access his emails, such a belief was not objectively reasonable, particularly when was using JDT's email server to conduct a campaign against JDT and its owners, and JDT was paying not only for the server and internet support, but was paying your legal bills for work performed for the benefit if Jim adverse to JDT. Under these circumstances, the emails Jim sent and received using JDT's server are not confidential. No privilege attaches to Jim's email communications with you, and if any privilege did attach, it has been waived.

If you disagree with this conclusion, please let us know by 5 p.m. tomorrow and provide the basis for your disagreement.



**ANDY BARRY** | Partner
**CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, L.L.P.**
233 South 13th Street | 1900 US Bank Bldg. | Lincoln, NE 68508
Direct: 402.479.7143 | Main: 402.474.6900 | www.clinewilliams.com
Lincoln | Omaha | Aurora | Fort Collins | Holyoke