IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JIM DAWS TRUCKING, LLC, | ) | CASE NO. 4:24-CV-3177 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S ANSWERS TO** |
| v. | ) | **DEFENDANTS' FIRST SET OF** |
| | ) | **INTERROGATORIES** |
| DAWS, INC.; JAMES R. DAWS; LANA R. DAWS; DAWS TRUCKING, INC.; and COLUMBUS TRANSPORTATION & LOGISTICS, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Jim Daws Trucking, LLC, pursuant to the Federal Rules of Civil Procedure, hereby submits its Answers to Defendants' First Set of Interrogatories, as set forth below.

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify the names, addresses, and telephone numbers of each employee whom you contend resigned from their employment with JDT since August 23, 2024, and for each identify their last day of employment with JDT.

**ANSWER:** Names, addresses, and dates of resignation are set forth below. JDT objects to providing telephone numbers, because the individuals are either currently employed by or otherwise aligned with Defendants, and Defendants have their telephone numbers.

| **Employee** | **Date of Resignation** | **Last Day** |
|---|---|---|
| JoAnn Roth | 9/24/2024 | 9/27/2024 |
| Jaisa Douty | 9/24/2024 | 9/27/2024 |

| Mattie Hans | 9/24/2024 | 9/27/2024 |
|---|---|---|
| Caitlin Super | 9/24/2024 | 9/27/2024 |
| Tony Glenn | 9/24/2024 | 9/27/2024 |
| RaNae Muencrath | 9/24/2024 | 9/27/2024 |
| Kathy Temme | 9/24/2024 | 9/27/2024 |
| Corey Stull | 9/25/2024 | 9/27/2024 |
| Jeff Keeler | 9/24/2024 | 9/27/2024 |
| Jim Daws | 9/17/2024 | 9/30/2024 |

**INTERROGATORY NO. 2:** With respect to the more than 80 drivers JDT claims it had before September 30, 2024, as referenced in Paragraph 35 of the October 29, 2024, declaration of Rick Fernandez (Filing 19-1), identify the name, address, and telephone number of each, and state whether each was (a) an employee or (b) independent contractor of JDT as of August 23, 2024, and (c) for each said driver who JDT claims left JDT since August 23, 2024, state when each driver left JDT and (d) identify all reasons given by each driver to JDT, if any, for leaving JDT.

**ANSWER:** The name, telephone number, type of employee, employment status (whether they quit or remain with JDT), are set forth in the table below. For drivers who quit, there were no specific dates of resignation; they simply stopped hauling loads. No driver gave a reason for leaving JDT. Of the drivers who left, most hauled their last loads in the last week of September or the first week of October. The dates drivers hauled their last loads can be ascertained from settlement statements. Driver addresses can be ascertained by documents produced by JDT. Current drivers of JDT should be contacted only through counsel for JDT.

2

| Name | Phone | Status | Quit? |
|---|---|---|---|
| Barfuss, Jacob | 801.540.1161 | 1099 | Yes |
| Best, Brian | 828.650.6410 | W2 | Yes |
| Bond, Marvin | 580.747.2668 | 1099 | Yes |
| Booth, David | 440.867.1010 | W2 | Yes |
| Brown, Ryan | 402.710.1041 | 1099 | Yes |
| Buehler, Kristopher | 402.587.0275 | W2 | Yes |
| Crawford, Tom | 785.643.7971 | W2 | Yes |
| Cyphers, Jeff | 785.614.2552 | W2 | Yes |
| Daws, Jim | 402.641.5432 | W2 | Yes |
| DeMerell, Zach | 785.738.8858 | 1099 | Yes |
| DeNino, Adam | 402.770.7170 | W2 | Yes |
| Downs, Craig | 402.9336.1690 | W2 | Yes |
| Eierman, Courtney | 402.860.3499 | W2 | Yes |
| Eubank, Craig | 620.388.3996 | W2 | Yes |
| Geilhart, Austin | 307.409.3407 | W2 | Yes |
| Harris, Jeff | 402.587.0798 | 1099 | Yes |
| Hasenauer, Noah | 308.520.8171 | W2 | Yes |
| Hernandez, Jason | 520.310.9448 | 1099 | Yes |
| Hingle, David | 601.215.4686 | 1099 | Yes |
| Krumme, Brandon | 402.446.0093 | W2 | Yes |
| Landoll, Ron | 402.629.3877 | W2 | Yes |

| | | | |
|---|---|---|---|
| Lawrence, Darron | 979.307.8033 | W2 | Yes |
| Madsen, Max | 806.672.1025 | 1099 | Yes |
| Marlowe, Michel | 386.281.7354 | 1099 | Yes |
| McCullough, Harold | 402.641.8156 | W2 | Yes |
| McGalliard, Mike | 402.703.5070 | 1099 | Yes |
| Mitchell, Scott | 620.617.5935 | 1099 | Yes |
| Nichols, Jeremy | 720.725.0065 | W2 | Yes |
| Parkinson, Brandon | 702.540.4742 | W2 | Yes |
| Parry, Darl | 330.317.1464 | 1099 | Yes |
| Pinnell, Cory | 785.738.8858 | W2 | Yes |
| Price, Johnathon | 573.768.9929 | 1099 | Yes |
| Proctor, John | 540.621.2727 | 1099 | Yes |
| Reed, Dan | 859.753.6306 | W2 | Yes |
| Schmitz, Steve | 214.460.8535 | W2 | Yes |
| Tidyman, Jered | 308.350.2592 | W2 | Yes |
| Turner, Milton | 318.233.6202 | 1099 | Yes |
| Vance, John | 662.739.7040 | 1099 | Yes |
| Warnsing, Douglas | 402.806.2221 | 1099 | Yes |
| Weaver, Chuck | 308.672.0785 | W2 | Yes |
| Evans, Larry | | W2 | No |
| Godsey, Lee | | W2 | No |
| Hall, Travis | | W2 | No |

| | | | |
|---|---|---|---|
| Hinsch, Dana | | W2 | No |
| Hudson, Matt | | W2 | No |
| King, Terry | | W2 | No |
| DeAnda, Gus | | W2 | Yes, but returned |
| Mau, Preston | | W2 | No |
| McCloud, Spencer | | W2 | No |
| McGee, Tommy | | W2 | No |
| Roach, Matthew | | W2 | No |
| Schulte, Conrad | | W2 | No |
| Walker, Ed | | W2 | No |
| Anderson, Jerry | | 1099 | No |
| Brenneman, Rollin | | 1099 | No |
| Buttjer, Mike | | 1099 | No |
| Green, Steve | | 1099 | No |
| Haley, Bill | | 1099 | No |
| Hall, Tony | | 1099 | No |
| Haney, Bobby | | 1099 | No |
| Hemenway, Robert | | 1099 | No |
| Hill, Michael | | 1099 | No |
| Laws, Matt | | 1099 | No |
| May, Joshua | | 1099 | No |
| McCann, Mickey | | 1099 | No |

| | | | |
|---|---|---|---|
| McLeod, Curtis | | 1099 | No |
| Miller, Kendall | | 1099 | No |
| Pooler, Joshua | | 1099 | No |
| Saliba, Jonathan | | 1099 | No |
| Swett, Tim | | 1099 | No |
| VanBuskirk, Scott | | 1099 | No |
| Williams, Otho | | 1099 | No |
| Wiltrout, George | | 1099 | No |
| Witt, Joe | | 1099 | No |

**INTERROGATORY NO. 3:** Identify the names of the "fewer than 30" drivers JDT has left as referenced in Paragraph 35 of the October 29, 2024, declaration of Rick Fernandez (Filing 19-1).

**ANSWER:** See the Answer to Interrogatory No. 2, above.

**INTERROGATORY NO. 4:** Identify the names of the two employees who you contend deleted e-mails as referenced in Paragraph 37 the October 29, 2024, declaration of Rick Fernandez (Filing 19-1).

**ANSWER:** The two employees who attempted to delete emails referred to in paragraph 37 of the Declaration of Rick Fernandez dated October 29, 2024, were Tony Glenn and Jaisa Douty. Since the execution of that Declaration, JDT has confirmed not only that Tony and Jaisa tried to delete emails on their way out the door, but that Ranae Muencrath, Kathy Temme, and Jim Daws tried to do the same thing at the same time.

**INTERROGATORY NO. 5:** Identify all facts, including the names of witnesses who have knowledge and the names of each such employee and driver, supporting your allegation that Jim Daws encouraged "employees and drivers to

6

quit working for JDT and to work for him" as stated in Paragraph 50 the October 29, 2024, declaration of Rick Fernandez (Filing 19-1).

**ANSWER:** JDT objects to this Interrogatory on grounds of proportionality to the extent it seeks the identification of "all" facts, on the grounds that discovery is still in its initial stages, and on the grounds that much of the responsive information is in the possession of Defendants and third parties. Subject to and without waiving these objections, JDT states that the principal facts supporting the listed allegation available to it as this time are as follows:

1. Even after he sold Daws Trucking to JDT, Jim considered himself to be in "total control" and emailed that to Rick. Witnesses to this communication are Rick, Jim, and Lana Daws.

2. On August 23, 2024, Rick was working at JDT's offices in Milford, Nebraska. He planned to talk to Jim about what he understood to be Jim's upcoming retirement. Jim refused to meet with Rick for most of the day on August 23. Instead, Jim met with other employees of JDT behind a closed door or otherwise out of Rick's presence. Toward the end of the day, Jim told Rick he was leaving JDT, and everyone would be leaving with him. Rick said he wanted to speak to employees. Jim said it wouldn't make a difference. Witnesses to these communications are Rick and Jim.

3. Jim emailed Julie Karavas concerning his plans to encourage drivers and/or employees to quit JDT. Witnesses to this communication are Jim and Julie Karavas.

4. On September 17, 2024, Jim informed Rick of his intent to leave the company at the end of the month. On September 24, 2024, Rick met with

7

Jim in Milford to discuss plans for a transition. Rick and Jim can testify to both conversations.

5. On September 24, 2024, the employees listed in the Answer to Interrogatory No. 1 resigned as a group, some within minutes of each other, and many attempted to delete emails on their way out the door. Those individuals will be able to testify to these circumstances.

6. After the mass resignation, most drivers stopped calling to get new loads and/or declined to continue to haul loads for JDT. Witnesses with knowledge of these facts are Rick, Ricky, and the drivers listed as having quit in the Answer to Interrogatory No. 2.

7. Jim advised one JDT employee, Dennis Broadwell, to file for unemployment at the time of the mass resignation. Jim and Dennis both have knowledge of this communication.

8. Several drivers who stayed with JDT know that Jim, Jeff Keeler, or Jaisa Douty called them to disparage Rick and JDT at the time of the mass resignation or in the month following. These drivers include Terry King, Matt Roach, and Otho Williams.

9. One driver, Marvin Bond, indicated that Jim put him in a bad situation, that he was told to record all conversations with Rick and Ricky, and he "was led [sic] to believe that Jim Daws owned the company."

**INTERROGATORY NO. 6:** Identify each corporate opportunity belonging to JDT that you contend Jim Daws took from JDT, including the names of all witnesses and the individuals who have knowledge of these facts.

8

**ANSWER:** At this time, JDT is aware of one specific corporate opportunity Jim attempted to misappropriate: the opportunity discussed in emails with Jeremy Becker on July 23, 2024, and October 22, 2024. Jim, Jeremy, Wayne Schmeeckle, and Lukas Schmeeckle all appear to have knowledge concerning this opportunity. In addition, Jim appears to have been purchasing flatbed trailers through another company he owned, J&L, while still employed by JDT and governed by his noncompete agreement. Jim and Tony presumably have knowledge about this purchase and what Jim planned to do with the flatbed trailers. JDT's investigation continues, and JDT reserves the right to amend its Answer to this Interrogatory based on new information.

**INTERROGATORY NO. 7:** Identify all facts, including the names of witnesses who have knowledge, supporting the allegation in Paragraph 23 of your complaint that "Jim [Daws] refused to take such direction and refused to assist in the transition of the business, including relationships with customers, employees, and drivers, in the direction of employees in the accounting, shop, and dispatching operations, and in the control of JDT's finances and bank account."

**ANSWER:** JDT objects to this Interrogatory on grounds of proportionality to the extent it seeks the identification of "all" facts, on the grounds that discovery is still in its initial stages, and on the grounds that much of the responsive information is in the possession of Defendants and third parties. Subject to and without waiving these objections, JDT states that the principal facts supporting the listed allegation available to it as this time are as follows:

1. Jim underscored his knowledge of the value of smooth transition in an email he sent to company employees on May 4, 2022. Jim has knowledge of this email.

9

2.     Notwithstanding his knowledge that a smooth transition was important, Jim repeatedly questioned Rick's ability to operate the business and actively discouraged him from doing so, and told Rick all he needed to do was to find drivers. Jim and Rick have knowledge of these communications.

3.     When Rick and Ricky pointed out that the 80% payout to owner operators (which included owner-operators leasing trucks from companies Jim owned) was moving JDT in the direction of a $300,000 loss, Jim initially resisted making any change. After Jim finally agreed to change the payout to 76%, with a resulting increase in revenue to JDT, Tony directed JDT to make payments which depleted the additional revenue created by this change, including the purchase of $300,000 in tires in the first quarter of 2024. Rick, Ricky, Jim, and Tony have knowledge concerning these facts.

4.     When Rick hired Chuck Rhyand to recruit drivers, Jim insisted he needed to "vet" the new employee, which led to his email about being in "total control" of the business. Jim shared drafts of this email with his wife, Lana. Rick, Jim, and Lana have knowledge concerning these facts.

5.     Jim ran the financial operations of JDT and his other businesses through Tony. While Tony was employed by and drew a salary from JDT, Tony performed work not only for JDT, but also Jim's businesses. Using JDT's facilities, including its office, computer hardware, and software, Tony kept meticulous records of the financial affairs of the assets,

10

liabilities, income, and expenses of JDT and Jim's businesses, including intercompany transfers. At Jim's direction, Tony provided complete information to Jim, but only incomplete information to Rick and Ricky. This system in fact placed Jim in near total control of the overall operations of JDT and the businesses he continued to own. Jim and Tony have knowledge concerning these facts.

6. The party held in July of 2024 was an opportunity to build goodwill with employees, drivers, and customers. But Rick was disinvited from the party, and the party became a celebration of Jim. Jim, Lana, Rick, and those who attended the party have knowledge concerning these facts.

7. Jim and Tony refused to assist in the transition of JDT's account at American National Bank, which they personally controlled, to an account Rick controlled at Union Bank. Jim, Tony, and Rick have knowledge concerning these facts.

8. Jim encouraged employees and drivers to quit JDT and made sure to speak to them before Rick had an opportunity to do so. The employees listed in the Answer to Interrogatory No. 1 and the drivers listed as having quit in the Answer to Interrogatory No. 2 have knowledge concerning these facts.

**INTERROGATORY NO. 8:** Identify all facts, including the names of witnesses who have knowledge, supporting your allegation in Paragraph 25(c) of your complaint that Jim Daws directed JDT to sell trucks owned by JDT to drivers affiliated with Jim Daws or other companies he owned, including the identity of the truck, to whom they were sold and when, the total price received for each sale, and what JDT contends the fair market value of the truck was at the time of the each sale.

11

**ANSWER:** On or about September 27, 2022, Jim appears to have directed Tony Glenn to execute a Truck Sales Contract between JDT and John Vance. Tony signed the Truck Sales Contract as "Tony Glenn for James Daws" under "President's Signature." That is not something Tony would have done without Jim's direction or approval. Despite Tony's representation concerning his signature, Jim Daws was not president of JDT, and Tony Glenn did not have the authority to bind JDT on such matters.

In this contract, Tony and Jim transferred a 2022 Peterbilt 389, VIN 1XPXDP9X4ND783883, valued at $180,000.00, and listed in the Asset Purchase Agreement between JDT and Daws, Inc., to John Vance for $0. John Vance, with Jeff Keeler as witness, then executed a Promissory Note for payments to be directed to J & L Enterprises, LLC. Jim, Tony, and John Vance have knowledge of these facts. JDT's investigation continues, and it reserves the right to amend its Answer this Interrogatory based on new information.

**INTERROGATORY NO. 9:** Identify all facts, including the names of witnesses who have knowledge, supporting the allegation in Paragraph 25(d) of your complaint that Jim Daws directed JDT dispatchers to favor trucks owned, in whole or in part, by Jim or companies he owned or controlled, as opposed to trucks owned by JDT, including the specific instances where you contend this occurred.

**ANSWER:** JDT objects to this Interrogatory on grounds of proportionality to the extent it seeks the identification of "all" facts, on the grounds that discovery is still in its initial stages, and on the grounds that much of the responsive information is in the possession of Defendants and third parties. Subject to and without waiving these objections, JDT states that the principal facts supporting the listed allegation available to it as this time are as follows:

1. JDT's dispatchers were Ranae Muencrath and Jeff Keeler, both of whom were affiliated with and loyal to Jim. Jim also personally dispatched trucks. Rick, Jim, Ranae, and Jeff have knowledge concerning these facts.

2. The most valuable account JDT had while Jim was employed by JDT was Concrete Industries, for a project known as Sustainable Beef. Rick, Jim, and Tony have knowledge concerning this fact.

3. Although most of the trucks that drove for JDT were owned by JDT, most of the trucks dispatched to haul loads for Concrete Industries belonged to companies owned by Jim. JDT invoices with Concrete Industries make up less than one-third of total invoices, as compared to Jim's other companies.

**INTERROGATORY NO. 10:** Identify all facts, including the names of witnesses who have knowledge, supporting the allegation in Paragraph 25(e) of your complaint that Jim Daws directed "JDT's shop to prioritize trucks owned, in whole or in part, by Jim or companies he owned or controlled, as opposed to trucks owned by JDT" including the specific instances where you contend this occurred.

**ANSWER:** JDT objects to this Interrogatory on grounds of proportionality to the extent it seeks the identification of "all" facts, on the grounds that discovery is still in its initial stages, and on the grounds that much of the responsive information is in the possession of Defendants and third parties. Subject to and without waiving these objections, JDT states that the principal facts supporting the listed allegation available to it as this time are as follows:

JDT's shop was managed by Corey Stull, who was affiliated with and loyal to Jim. As of September 30, 2024, approximately fifteen of JDT's trucks were sitting idle, purportedly because they needed to be repaired, while Jim's trucks

13

remained in operation. With respect to most of the trucks it turned out no repairs or minimal repairs were required. Corey Stull, Adonis Guzman-Rodriguez, Gus DeAnda, and Matthew Roach have knowledge concerning these facts.

**INTERROGATORY NO. 11:** Identify all facts, including the names of witnesses who have knowledge, supporting the allegation in Paragraph 31 of your complaint that Jim Daws has engaged in activities "poisoning the well with customers, drivers, and employees, and to compete directly with JDT by soliciting, serving, and hiring the same customers, drivers and employees" including identifying specific evidence of such activities with each identified group.

**ANSWER:** JDT objects to the request for "all" facts on the grounds of proportionality and that discovery is still in its initial stages, with relevant evidence still in the possession of Defendants and third-party witnesses. Subject to and without waiving these objections, see the Answers to Interrogatory Nos. 5 and 7, above.

**INTERROGATORY NO. 12:** Identify the name of each employee or driver who you contend Jim Daws met with in August and September of 2024 to encourage them to quit working with JDT as alleged in Paragraph 33 of your complaint.

**ANSWER:** JDT objects to this Interrogatory on grounds of proportionality to the extent it seeks the identification of "all" facts, on the grounds that discovery is still in its initial stages, and on the grounds that much of the responsive information is in the possession of Defendants and third parties. Subject to and without waiving these objections, see the employees identified in the Answer to Interrogatory No. 1. JDT is still investigating which specific drivers Jim spoke to and what exactly he told those drivers in August and September of 2024, including through a request for Jim's cell phone records. At this point, JDT identifies Marvin Bond, Terry King, Matt Roach, and Otho Williams.

14

**INTERROGATORY NO. 13:** Identify the names of all JDT employees who resigned from JDT effective September 27, 2024, as alleged in Paragraph 34 of your Complaint.

**ANSWER:** See the Answer to Interrogatory No. 1.

**INTERROGATORY NO. 14:** Identify the names of all JDT customers who you contend Jim Daws encouraged to curtail, alter, or sever their relationships with JDT including the names of each contact at each customer with whom you contend Jim Daws communicated with regarding this alleged encouragement and what you contend Jim Daws said to each, and when, to so encourage them.

**ANSWER:** JDT objects to this Interrogatory on the grounds that discovery is still in its initial stages and on the grounds that much of the responsive information is in the possession of Defendants and third parties. Subject to and without waiving these objections, JDT states that the principal customers were Concrete Industries, NuCor, Valmont, and C.H. Robinson. JDT is still investigating the specific conversations Jim or others affiliated with him had with these customers, or other customers, and what specifically was said. At a minimum, Jim's refusal to transfer the DOT number for Daws Trucking, as required under the Asset Purchase Agreement, led to being temporarily disqualified from hauling for these customers, which led to a corresponding loss in revenue to JDT. JDT's investigation continues, and JDT reserves the right to amend its Answer to this Interrogatory based on new information.

**INTERROGATORY NO. 15:** Identify the names and addresses of each customer, employee, and driver, you contend JDT had a business relationship or expectancy with whom you contend any Defendant tortiously interfered with and identify all actions taken by each Defendant to intentionally interfere with JDT's business relationship or expectance including the names of all witnesses with knowledge of these alleged facts.

**ANSWER:** The employees listed in the Answer to Interrogatory No. 1, above, other than Jim himself; the drivers listed in the Answer to Interrogatory

No. 2, above; and the customers listed in the Answer to Interrogatory No. 15, above. The actions with respect to each group which JDT is currently aware of are summarized in the Answer to each respective Interrogatory. Discovery is in its initial stages, with significant information in the sole possession of Defendants and third parties, and so JDT reserves the right to amend its Answer to this Interrogatory.

**INTERROGATORY NO. 16:** Identify the names and addresses of all individuals employed by JDT at any point from October 1, 2024, to the present.

**ANSWER:** JDT will provide a payroll report or reports reflecting this information.

Dated December 16, 2024

JIM DAWS TRUCKING, LLC, Plaintiff,

By:   s/Madeline C. Hasley
Andre R. Barry #22505
Henry L. Wiedrich #23696
Madeline C. Hasley #27870
Cline Williams Wright
   Johnson & Oldfather, L.L.P.
233 South 13th Street
1900 US Bank Building
Lincoln, NE 68508
Phone: (402) 474-6900
abarry@clinewilliams.com
hwiedrich@clinewilliams.com
mhasley@clinewilliams.com

## VERIFICATION

Ricardo ("Rick") Fernandez, under penalty of perjury of the laws of the United States, states that he is a member and agent of Plaintiff Jim Daws Trucking, LLC, that he has read the foregoing Answers to Interrogatories, that the information therein has come from various sources, and that the Answers are true to the best of his knowledge, information, and belief.

_____
Rick Fernandez

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served upon the following by electronic mail on December 16, 2024.

| | |
|---|---|
| Timothy J. Thalken | tthalken@fraserstryker.com |
| David C. Mullin | dmulling@fraserstryker.com |
| Eric W. Wells | ewells@fraserstryker.com |
| Kristin M. Nalbach | knalbach@fraserstryker.com |

s/Madeline C. Hasley
Madeline C. Hasley # 27870

4895-0212-6330, v. 6