IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JIM DAWS TRUCKING, LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>DAWS, INC., JAMES R. DAWS, LANA R. DAWS, DAWS TRUCKING, INC., and COLUMBUS TRANSPORTATION & LOGISTICS, LLC,<br><br>  Defendants. | Case No. 4:24-cv-03177 |

**PLAINTIFF JDT'S BRIEF IN SUPPORT OF
MOTION FOR CONTEMPT SANCTIONS**

Prepared and submitted by:

Andre R. Barry #22505
Henry L. Wiedrich #23696
Madeline C. Hasley #27870
CLINE WILLIAMS WRIGH
JOHNSON & OLDFATHER, L.L.P.
233 South 13th Street
1900 US Bank Building
Lincoln, NE 68508
(402) 479-6900
abarry@clinewilliams.com
hwiedrich@clinewilliams.com
mhasley@clinewilliams.com

February 11, 2025

Plaintiff Jim Daws Trucking, LLC ("Plaintiff" or "JDT" or "Daws Trucking") submits this Brief in support of its Motion for Contempt Sanctions against Defendants James R. Daws ("Jim").

## INTRODUCTION

On October 29, 2024, JDT filed its Motion for Temporary Restraining Order and Preliminary Injunction to prohibit Jim from engaging in the business of trucking in the continental United States, in violation of his noncompete obligations and duty of loyalty to JDT. [Filing 17.] In response to the motion, Jim stated, in a Declaration [Filing 22-1] and through counsel, that he was not engaged in the business of trucking and did not plan to be, other than solely to lease trucks through his entities, Loyal Trucking, LLC ("Loyal Trucking") and JLD Truck Lines, LLC ("JLD Truck Lines"), and to lease real estate through his entity, J&L Enterprises, LLC ("J&L"). Evidence produced in discovery since then has shown these statements to the Court were false and omitted material facts. Based at least in part on Jim's false statements and omissions of fact, the Court entered a TRO that was more limited than JDT sought, but which nonetheless provided that Jim, and anyone acting on his behalf or in concert with him, "shall not engage in the business of trucking in the continental United States of America, which includes the venture described in Jeremy Becker's emails to Jim on July 23, 2024 and October 22, 2024," and that "Jim Daws also may not provide any other company advice as to how to operate a trucking company." [Filing 25.] Documents produced in discovery show that Jim has continued to participate in that same venture in violation of the TRO.

2

## LEGAL STANDARD

Every court has inherent power to punish contempt. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *Ex parte Robinson*, 19 Wall. 505, 510 (1874)). A court may assess attorney's fees if it finds a party has acted in bad faith or practiced a fraud upon the court. *Id.* at 46 (citations omitted). A court's inherent power extends to violation of court orders. "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re Reed*, 888 F.3d 930, 936 (8th Cir. 2018).

"The party moving for contempt sanctions bears the burden of proving facts warranting a civil contempt order by clear and convincing evidence." *Chicago Truck Drivers*, 207 F.3d at 504 (citing *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917 (8th Cir. 1998)). "If the moving party does so, the burden shifts to the nonmoving party to show an inability to comply." *Farm Credit Servs. of Am., FLCA v. Mens*, 456 F. Supp. 3d 1173, 1189 (D. Neb. 2020) (citing *Chicago Truck Drivers*, 207 F.3d at 504). The party must (1) explain in detail and why categorically it could not comply, (2) show that its inability to comply was not self-induced, and (3) show it made good faith, reasonable efforts to comply. *Chicago Truck Drivers*, 207 F.3d at 506.

"If the Court finds clear and convincing evidence of civil contempt, it may impose sanctions 'either to coerce the [contemnor] into compliance with a court order or to compensate the complainant for losses sustained, or both.'" *Grove v. Meltech, Inc.*, No. 8:20CV193, 2021 WL 6884495, at *1 (D. Neb. Jan. 29, 2021) (quoting *Chicago Truck Drivers*, 207 F.3d at 505). "A court's sanctions for coercive contempt may include incarceration or fine; compensatory contempt allows a court to compensate the complainant for losses incurred." *United States v. Nebraska Beef, Ltd.*, No. 8:15CV370, 2017 WL 5953160, at *2 (D. Neb. July 13, 2017) (citing *Chicago Truck Drivers*, 207 F.3d at 505); *see also Josephs v. Marzan*, Civ. No. 21-749 (JRT/DTS), 2024 WL 3904646 at *3 (D. Minn. Aug. 22, 2024) ("Civil contempt involves imprisonment or monetary sanctions that are designed to coerce the contemnor to comply with a court order or to compensate a litigant for damages caused by the contemnor's noncompliance."). The Court may also require the contemnor "to pay the complainant's reasonable attorney fees and costs" arising from the non-compliance. *Grove*, 2021 WL 6884495, at *1.

To remedy Jim's blatant disregard for the TRO, and to rectify the fraud orchestrated on the Court by Jim, JDT respectfully requests that Jim be held in contempt of court.

**FACTS ESTABLISHING VIOLATION OF THE ORDER**

Many of the key facts are set forth in JDT's Brief in Support of its Motion for Temporary Restraining Order [Filing 18], Brief in Support of Motion for Preliminary Injunction [Filing 53], and Reply Brief in Support of Motion for Preliminary Injunction [Filing 74]. Further evidence in support of this Motion will

4

be offered at the Preliminary Injunction Hearing. Although JDT will not restate all such facts, a synopsis of the facts most relevant to this motion are as follows:

1. In response to JDT's request for a TRO, Jim stated in his Declaration that he was a "co-owner of companies with other non-related partners who **own and lease** tractors and trailers to third parties. For example, I own one third of the membership shares in Loyal Trucking, LLC and 50% of the membership interests in JLD Truck Lines, LLC." [Filing 22-1 at ¶ 6 (emphasis added).] Jim's lawyer confessed to his limited understanding but stated: "my understanding from Mr. Daws's affidavit or his declaration is, yes, they own tractors and trailers and they would lease it to third parties. That's it." [Filing 73, Tr. at 33:20–22 (emphasis added).] However, the truth is that Jim formulated and was deeply engaged in a plan to "activate" Loyal Trucking, which had its own DOT and MC Numbers, so that it could actively ship freight. [Filing 54-19 at 2.]

2. Through documents produced pursuant to subpoena, a more complete picture has emerged. On October 29, 2024, the day before Jim executed his Declaration, his wife and co-defendant Lana, submitted a business plan for Loyal Trucking to an insurance broker for his review. [Filing 75-2; 75-3.] Lana said that after she had Larry's thoughts, "I would have Corey send it to you 'officially.'" [*Id.*] The business plan said Loyal Trucking "will provide over the road flatbed trucking for all 48 continental United States," that it "will operate thirty (30) plus tractors," that it had an "[e]stablished customer list," "[e]xperienced drivers," and "[e]xperienced shop personnel." [*Id.*] All these relationships, of course, came from JDT. Jim told none of this to the Court.

5

3. Thus, at the time Jim submitted his Declaration, he was engaged in "activating" Loyal Trucking's DOT Number so that it could serve as the hub of a continued trucking enterprise using the same "established customer base," "experienced drivers," and experienced staff and shop personnel Jim took with him from JDT.

4. Jim also misled the Court about J&L Enterprises ("J&L"). Jim admitted "an ownership interest with my wife, Lana, in J&L, LLC, which owns real estate where the shop and office out of which Daws, Inc. operated." [Filing 22-1 ¶ 7.] His Declaration said nothing about J&L owning trucks. However, a*fter* the TRO Hearing, J&L filed a lawsuit alleging that it owns not just real estate, but eighteen semi-tractors as well. [Filing 75-14.] Not only does J&L still own those semi-tractors, but it is also using them in the venture with Loyal Trucking which is actively shipping freight for customers it took from JDT. Documents produced by Jim's CFO, Tony Glenn, show that J&L's tractors are now being leased to Loyal Trucking and that J&L also paid an additional $50,000 to Loyal Trucking, which Jim later instructed Tony to characterize as covering the upfront cost of physical damage insurance on J&L's trucks, which it never did for JDT.

5. In opposition to the motion for TRO, Jim also said, "Other than my work performed as an employee of JDT for JDT, at no time since the APA have I directly or indirectly carried on, engaged in as an owner, part owner, manager, operator, employee, agent, or other participant in the business of trucking in the continental United States of America in which JDT carried on a like business in such area." [Filing 22-1 ¶ 27.]

6

6. Documents produced in discovery, by Jim and by third parties, show this statement was also false. Jim spent the month of October working to establish a continuation of his former trucking business as a venture in competition with JDT, competing for the same customer base, with many of the same drivers and employees.

7. The TRO entered by the Court prohibited Jim and anyone acting on his behalf or in concert with him from engaging "in the business of trucking in the continental United States of America, including the venture described in Jeremy Becker's emails dated July 23, 2024, and October 22, 2024." [Filing 25.] The Order further provided that Jim "may not provide any other company advice as to how to operate a trucking company . . . ." [*Id.*]

8. At the TRO hearing, the Court further explained its ruling: "So as to the location and that property, lease it to whoever he wants, but that's all that can be done. He cannot participate, give advice, even if he's not getting paid for it, to whoever's going to be there, if that makes sense." [Filing 73, Tr. at 43:25–44:4.] Neither Jim nor his counsel raised any questions about what the Court meant.

9. As detailed in JDT's Brief and Reply Brief in Support of its Motion for Preliminary Injunction, and as will be further shown at the Preliminary Injunction Hearing, Jim continued to participate in the same venture described in the emails with Jeremy Becker by contributing goodwill, over $1 million in capital investments, $50,000 in cash from J&L, trucks from J&L, and regular communication with drivers and employees.

10. Jim has attempted to anoint himself "with the power to adjudge the validity of orders to which they are subject." *See Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000).

11. The evidence clearly shows Jim made false statements and omissions of fact to the Court about his establishment of a competing trucking venture, his engagement in it, and his plans to continue in it. Jim cannot show he categorically could not comply with the TRO, that any alleged inability to comply was not self-induced, or that he made good faith efforts to comply.

12. The legal standards governing contempt of court thus support sanctioning Jim for false statements and omissions of material fact and his clear violation of the TRO. At a minimum, Jim should be required to compensate JDT for all amounts the trucking enterprise has been paid by customers or former customers of JDT since the TRO was granted and to pay JDT the reasonable attorney's fees it has expended in connection with its Motion for Temporary Restraining Order and Preliminary Injunction, and this Motion.

**CONCLUSION**

For the foregoing reasons, JDT respectfully requests that the Court grant its Motion for Contempt of Court and order sanctions to include (1) an order for Jim to compensate JDT for all amounts the trucking enterprise has been paid by customers or former customers of JDT since the TRO was granted; (2) to pay JDT the reasonable attorney's fees it has expended in connection with its Motion for Temporary Restraining Order and Preliminary Injunction and this Motion; and (3) such other relief as the Court deems appropriate.

Dated February 11, 2025

                            JIM DAWS TRUCKING, LLC,
                            Plaintiff

By: *s/ Andre R. Barry*
     Andre R. Barry #22505
     Henry L. Wiedrich #23696
     Madeline C. Hasley #27870
     CLINE WILLIAMS WRIGHT
     JOHNSON & OLDFATHER, L.L.P.
     233 South 13th Street
     1900 US Bank Building
     Lincoln, NE 68508
     (402) 479-6900
     abarry@clinewilliams.com
     hwiedrich@clinewilliams.com
     mhasley@clinewilliams.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the word count of this brief complies with local rule NECivR 7.1(d). The word-count function of Microsoft Word M365, states that this brief, inclusive of all text, contains 2,101 words. No generative artificial intelligence program was used in drafting this brief.

                            *s/ Andre R. Barry*
                            Andre R. Barry

## CERTIFICATE OF SERVICE

I, Andre R. Barry, hereby certify that on February 11, 2025, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Nebraska using the CM/ECF system, which sent notification of such filing to all registered case participants.

                            *s/ Andre R. Barry*
                            Andre R. Barry