IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JIM DAWS TRUCKING, LLC, | ) CASE NO. 4:24-CV-3177 |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS** |
| DAWS, INC.; JAMES R. DAWS; LANA R. DAWS; DAWS TRUCKING, INC.; and COLUMBUS TRANSPORTATION & LOGISTICS, LLC, | ) |
| Defendants. | ) |

# INTRODUCTION

Plaintiff Jim Daws Trucking, LLC ("JDT") has taken the extraordinary step of filing a motion seeking to hold Jim Daws ("Jim") in contempt of court. JDT takes this overly aggressive step at this early stage of the litigation, without ever deposing Jim. JDT alleges Jim omitted information from a declaration in opposition to JDT's motion for a Temporary Restraining Order ("TRO"), made false statements in that declaration, and violated this Court's TRO.

Almost all of JDT's arguments relate to activities occurring *before* the TRO was issued on October 31, 2024. Jim could not have violated an order that was not yet entered. With respect to actions Jim allegedly took after the TRO relating to Loyal Trucking, LLC ("Loyal"), JDT ignores the fact that this Court expressly held that Jim could continue to operate Loyal. This Court ordered:

> Jim Daws may, however, continue to operate his other companies that were in existence at the time the Asset Purchase Agreement was executed, **which include**: Columbus Transportation & Logistics, LLC; **Loyal Trucking, LLC**; JLD Truck Lines, LLC; and J&L Trucking LLC.

([Filing 25 at p. 2](#)) (emphasis added). That JDT asks this Court to hold Jim in contempt for violating the TRO, but does not even cite this portion of the TRO in its brief, shows the frivolous nature of JDT's motion.

Jim did not make false statements to the Court nor material omissions of fact in a declaration submitted in opposition to JDT's motion for a TRO. JDT's motion should be denied, and Jim should be awarded his reasonable attorney fees for having to respond to this frivolous motion.

## RELEVANT PROCEDURAL BACKGROUND

JDT filed this lawsuit on October 2, 2024. ([Filing 1](#)). On October 29, 2024, at or around 10:47 am, Plaintiff filed a motion for a TRO. ([Filing 17](#)). JDT's motion was supported by the declaration of Ricardo Fernandez ("Rick"). ([Filing 19-1](#)). Later that afternoon, this Court set a hearing on JDT's motion for the next day at 2pm. (*See* Filing 21) (Text Order setting TRO hearing, entered at or about 4:55 pm on October 29, 2024).

With very short notice, defense counsel worked late into the night on October 29, 2024, to prepare the declaration of Jim Daws to respond to the misstatements, false allegations, and unsupported speculation in Rick's declaration, including Rick's bogus allegations that Jim orchestrated a mass walkout of office employees and drivers. Jim's declaration was filed on October 30, 2024. ([Filing 22-1](#)). Jim's declaration was accurate and truthful. The TRO hearing took place on the afternoon of October 30, 2024. (Filing 24).

2

On the morning of October 31, 2024, this Court entered a memorandum and order on JDT's motion for TRO, granting it in part and denying it in part. (Filing 25). JDT deposited its bond later that afternoon (Filing 26), at which point this Court's TRO became effective. *See* Fed. R. Civ. P. 65(c). Since that time, the Parties have been diligently engaging in expedited discovery and preparing for the upcoming three-day hearing on JDT's motion for a preliminary injunction.

## STANDARD OF REVIEW

"Contempt is a knowing and willful violation of a court order." *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 (8th Cir. 1987). "A contempt order must be based on a party's failure to comply with a 'clear and specific' underlying order." *United States v. Nebraska Beef, Ltd.*, No. 8:15CV370, 2017 WL 5953160, at *2 (D. Neb. July 13, 2017) (quoting *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 293 F.3d 409, 418 (8th Cir. 2002)). "Before a party can be held in contempt for violating a court order, [the party] must have actual knowledge of the order and the order must be sufficiently specific to be enforceable." *Hazen v. Reagan,* 16 F.3d 921, 924 (8th Cir. 1994).

"The party moving for contempt sanctions bears the burden of proving facts warranting a civil contempt order by clear and convincing evidence." *Chicago Truck Drivers v. Bhd. Lab. Leasing,* 207 F.3d 500, 504 (8th Cir. 2000). Clear and convincing evidence is "evidence which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear

3

conviction, without hesitancy, of the truth of the precise facts in issue.'" *Cornell v. Nix,* 119 F.3d 1329, 1335 (8th Cir.1997) (internal citations omitted). If the moving party meets its burden showing a knowing and willful violation of the Court's order, "the burden shifts to the nonmoving party to show an inability to comply." *Farm Credit Servs. of Am., FLCA v. Mens,* 456 F. Supp. 3d 1173, 1189 (D. Neb. 2020).

## ARGUMENT

### I. JDT's Motion is procedurally improper.

"Contempt of court is a serious matter, even civil contempt." *Imageware, Inc. v. U.S. West Communications,* 219 F.3d 793, 797 (8th Cir. 2000). JDT's motion, brief, and evidence fail to rise to the serious nature of the allegations JDT has asserted. JDT did not submit an index of evidence in support of its motion. It cites to limited evidence from prior filings, and then alleges "[f]urther evidence in support of this Motion will be offered at the Preliminary Injunction Hearing." (Filing 79). That's not how motion practice works in this district. *See* NECivR 7.1(a)(2) (explaining the moving party, "*when* filing the supporting brief . . . *must* also file and serve supporting evidentiary materials not previously filed."). Presenting evidence at the time a brief is filed is not optional, it is mandatory. *Id.* As another judge in this district cautioned, "[t]hese rules are not rules of form, but relate to the substance of motions," and accordingly, refused to consider evidence in that case that was not submitted in accordance with local rules. *PW Eagle, Inc. v. Schnase*, 376 F. Supp. 2d 945, 946 (D. Neb. 2005). Because JDT failed to attach an index of evidence or otherwise support the majority of its assertions with evidence already filed, JDT's evidence should be

4

limited to that evidence which it specifically cites in its brief. That evidence is woefully insufficient to warrant a contempt order.

In addition, "[a]ny request for…an evidentiary hearing by a moving party must be included in the motion or else presented by a separate motion filed no later than the deadline for filing a reply brief….In general the court does not allow oral argument or evidentiary hearings on motions." NECivR 7.1(e). JDT didn't request a hearing in its motion. It is fundamentally unfair for JDT to spring a contempt motion on Jim, forcing him to spend time and resources responding to this motion when Defendants are preparing for a three-day preliminary injunction hearing demanded by JDT.

Nor is it fair on such a serious issue as a motion for contempt for JDT to attempt, on a blanket-wide basis, to incorporate unidentified and uncited facts from multiple previous briefs it filed. ([Filing 79 at ECF p.4](#)). *See [Harbison v. Cnty. of Sarpy, No. 8:20cv245, 2024 WL 1604031, at *1 (D.Neb., Apr. 12, 2024)](#)* (recognizing that incorporating facts from prior briefs does not give the responding party a "meaningful opportunity to respond"). In a contempt motion where one potential sanction is incarceration, due process requires more than JDT simply referencing its earlier-filed briefs *generally* and putting the onus on Defendants and the Court to sift through potentially relevant arguments and evidence to this motion.

II. **JDT'S MOTION SHOULD BE DENIED BECAUSE JIM HAS NOT VIOLATED THE TRO.**

Not only is JDT's motion fundamentally unfair, JDT's evidence and argument falls far short of its burden to establish by clear and convincing evidence that Jim is

5

in civil contempt of this Court's TRO. *Chicago Truck Drivers,* 207 F.3d at 504 (burden is on the moving party to show violation of a court order by clear and convincing evidence). A cursory examination of JDT's arguments show that its motion is frivolous.

Though it is not clear from JDT's brief, JDT seems to argue that Jim violated the TRO with respect to purported involvement with Loyal. JDT's arguments fail because (1) the TRO expressly exempts Loyal's operations, and (2) the complained-of actions in JDT's brief occurred *before* the TRO was entered. JDT's other allegations are just that—allegations, unsupported by evidence. JDT's motion should be denied.

First, the bulk of JDT's brief (Filing 79) consists of speculation surrounding Jim's purported involvement in Loyal. JDT asserts such actions violated the TRO. It is odd that JDT seeks to hold Jim in contempt for violating the TRO based on his actions with respect to Loyal, but JDT does not even bother to quote a key portion of the Memorandum and Order. That may be because the TRO expressly exempts Loyal's operations:

> Jim Daws may, however, continue to operate his other companies that were in existence at the time the Asset Purchase Agreement was executed, which include: Columbus Transportation & Logistics, LLC; **Loyal Trucking, LLC**; JLD Truck Lines, LLC; and J&L Trucking LLC.

(Filing 25 at p. 2) (emphasis added). Based on the express terms of the TRO, Jim was *not* prohibited from continuing to operate Loyal. JDT's argument that Jim violated the TRO by operating Loyal, something the Order expressly authorized him to do, is

frivolous. Defendants should be awarded its attorney fees for having to respond to this frivolous motion.

Second, JDT argues Jim "spent the month of October working to establish a continuation of his former trucking business." (Filing 79 at ECF p. 7). JDT argues Jim was engaged in plan to "activate" Loyal Trucking (Filing 79 at ECF p. 5), that Lana Daws drafted its business plan, and allegedly contributed "goodwill, over $1 million in capital investments, $50,000 in cash from J&L, trucks from J&L, and regular communications with drivers and employees." (Filing 79 at ECF p. 5-7). JDT's arguments do not make sense, both from a timing perspective and in factual reality. Jim could not have violated the TRO by taking actions in "the month of October," because the TRO was not entered until October 31, 2024---after those alleged actions occurred.

JDT's limited evidence cited in its brief shows as much. In support of its argument that Jim planned to "activate" Loyal, JDT cites to a text message dated October 29, 2024—two days before the TRO went into effect. (*Compare* Filing 54-19 at p. 2, *with* Filing 25). Similarly, JDT cites to an email (Filings 75-2, 75-3) sent on October 29, 2024—also before the TRO went into effect. Neither of these actions could possibly have violated the Court's entry of a TRO because the TRO did not exist.

Next, JDT faults Jim for paying Loyal $50,000 towards J&L's share of property damage insurance, (Filing 75-13), and JDT claims Jim supposedly made a $1 million capital investment in "the same venture described in the emails with Jeremy Becker." It is unclear what JDT is referring to. JDT cites no evidence to support this allegation.

7

(*See* Filing 79 at ECF p. 7). The evidence shows that the "venture" described in the emails with Jeremy Becker was that if Jim were able to buy JDT, he planned to have Mr. Becker join JDT as an employee and that Mr. Becker, Ranae Muenchrath, and Corey Stull would run JDT. (Filing 65-5, ¶¶ 4-5). Buying JDT is not competing with JDT. Jim wasn't able to buy JDT, and Mr. Becker was never hired. Mr. Becker hasn't been involved in any business with Jim. (Filing 65-5, ¶ 3).

With respect to JDT's unsupported, and false claim that Jim has made over one million dollars in capital investments in prior filings, JDT argued Jim sold all of his interest in Loyal and JLD for over $1 million, but those sales occurred on October 29, 2024—before the TRO was entered. (Filing 61-10 and 61-11). To the extent that is what JDT is referring to, JDT has a twisted view of the facts. It is hard to fathom how Jim selling his ownership interest in companies that JDT claims are competing with JDT violates the non-compete agreement, much less this Court's TRO. In no world is Jim selling his ownership interest in Loyal and JLD a "capital investment" in those companies. It is a debt the companies owe to Jim—a liability, not an asset.

JDT's argument highlights the "heads I win, tails you lose" position JDT has taken in this litigation. For example, JDT wanted to stop Jim from being involved in Loyal. To avoid having Loyal dragged into this case, Jim sold his minority interest in Loyal effective November 1, 2024. Now, JDT apparently argues that it was improper for Jim to sell his interest in Loyal. What was Jim supposed to do with his pre-existing ownership interest in Loyal? Does JDT really take the position that Jim should have given away his interest in Loyal for free?

JDT's unsupported allegations must be ignored. It is unfair and improper for JDT to make naked assertions that are not supported by citations to evidence, expecting Defendants to blindly defend against them. *See* NECivR 7.1. JDT's argument cites only to events that occurred before the TRO was entered. Jim could not have violated the TRO by taking actions *before* it was entered. JDT's motion is frivolous and a clear attempt to waste Defendants' precious time and resources before a scheduled three-day preliminary injunction hearing. JDT has failed to demonstrate by "clear and convincing evidence" that Jim violated the TRO. *Chicago Truck Drivers,* 207 F.3d at 504. Accordingly, there is no basis to find Jim in contempt of Court, and JDT's motion should be denied.

### III. JIM DID NOT MAKE MATERIAL OMISSIONS OR FALSE STATEMENTS IN HIS DECLARATION BEFORE THE TRO WAS ENTERED.

JDT also claims that Jim and his counsel made misrepresentations to the Court relating to the TRO hearing. At the outset, JDT fails to argue or cite to any case explaining how an omission or misstatement somehow equates to a violation of the Court's Order, sufficient to meet the standard for civil contempt. *See Laughlin v. Stuart,* No. 19-cv-25472020, WL 4747665, at *3 (D.Minn., Aug. 17, 2020) (A court "will not resort to the contempt sanction" for "a minor or inadvertent omission.").

Federal courts have inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id*. "Moreover, the inherent authority to sanction a party

9

requires a showing of 'bad faith.' *See, e.g.,* Schlafly v. Eagle Forum, 970 F.3d 924, 937 (8th Cir. 2020)." *Petrone v. Werner Enterprises, Inc.,* No. 8:11CV401, 2023 WL 2955935, at *10 (D.Neb., Apr. 14, 2023). "[W]hen there is bad faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Chambers, 501 U.S. at 50.

JDT has failed to make a showing of bad faith. Often such motions arise under Rules 11 or 37. Federal Rules of Civil Procedure 11 and 37 permit a court to order a party to pay attorney fees for certain discovery misconduct "directly resulting from" misrepresentations. But JDT did not file its motion under, nor raise any arguments under, Rules 11 or 37 and has not shown how those rules are not "up to the task" in this case.

Critically, and as set forth below, JDT drastically overstates the materiality of any omissions or so-called misstatements, especially in light of the time constraints and preliminary nature of a TRO proceeding.

### A. Jim told the Court that his companies leased tractors to third parties.

JDT argues "Jim misled the Court about J&L Enterprises" because Jim's "Declaration said nothing about J&L owning trucks." (Filing 79 at ECF p.6). A witness is not required to discuss everything under the sun in a declaration, especially one prepared on very short notice before a TRO hearing. Further, Jim has always been upfront with this Court, and JDT, that he owned other companies that

leased tractors to third parties. (Filing 22-1, p. 13). Paragraph's 6 and 7 of his declaration stated:

> 6. I am also a co-owner of companies with other non-related partners who own and lease tractors and trailers to third parties. For example, I own one third of the membership shares in Loyal Trucking, LLC and 50% of the membership interests in JLD Truck Lines, LLC.
> 7. I also have an ownership interest with my wife, Lana, in J&L Trucking, LLC which owns real estate where the shop and office out of which Daws, Inc. operated.

(Filing 22-1).

JDT concedes that "Jim stated in his Declaration that he was a 'co-owner of companies with other non-related partners who own or lease tractors and trailers to third parties.'" (Filing 79 at ECF p. 2). There's clearly no misrepresentation about this fact. That Jim didn't specifically state that J&L was one of those companies that owned and leased trucks is immaterial, and certainly wasn't meant to mislead the Court, and is not bad faith. Read in context, his declaration highlighted that J&L was different from those other companies because it alone owned and leased real estate.

The material fact is Jim owned companies that owned and leased trucks to third parties which was fully disclosed. The identity of which company did so is immaterial considering that it appears to be JDT's position that Jim could not own or lease trucks through *any* company. There was never any intent to mislead the Court as to this issue.

Furthermore, as a September 17, 2024 letter confirms, long before the TRO hearing, JDT was aware that J&L owned and leased trucks because some of J&L's owned trucks were previously leased to JDT. (*See* Filing 54-2, p. 2). Jim's previous

11

lawyer wrote to JDT's current trial counsel: "Specifically, J & L Enterprises, LLC owns and leases 12 tractors." *Id*. It is ridiculous, and demonstrates the frivolous nature of JDT's motion, for JDT to claim that Jim was hiding the fact that J&L owned and leased trucks, when Jim's lawyer stated that in writing to JDT's counsel on September 17, 2024, that J&L owned and leased trucks.

JDT clearly knew at the TRO hearing that J&L owned and leased trucks. In its TRO brief JDT stated that "Jim continues to own and operate numerous trucking related businesses in addition to CTL, including…J&L Enterprises…." (Filing 18 at p. 11, ¶ 47). Rick was present at the TRO hearing, testified, and could easily have clarified that J&L also owned and leased trucks if he thought that fact was material. JDT's counsel, the recipient of the aforementioned letter, was also present, and didn't raise this alleged omission. They didn't raise this alleged omission at the time because it isn't material, and instead have now filed a frivolous motion to impose additional costs on Jim and distract defense counsel for preparing for the preliminary hearing.

Jim owned numerous companies and, candidly, at the early stage of the litigation at the TRO hearing, defense counsel had a limited understanding of which company owned what. (Filing 73, p. 33). But, there was never an intent by Jim or counsel to mislead the Court about J&L's operations. JDT's nitpicking about which entities owned and leased trucks is not a valid basis to hold Jim in contempt.

Further, JDT argues "Documents produced by Jim's CFO, Tony Glenn, show that J&L's tractors are now being leased to Loyal Trucking…." (Filing 79 at ECF p. 4). Of course, JDT doesn't cite to any such documents in its brief. An unsupported

12

allegation does not meet the threshold of "clear and convincing evidence." *Cornell, 119 F.3d at 1335* (explaining the clear and convincing standard, which is "so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."). JDT's misinterpretation of unidentified documents is not clear and convincing evidence.

### B. Jim's statement that he has not engaged in the business of trucking in which JDT carried on a like business was true.

Next, JDT argues that Jim should be held in contempt because he stated in his declaration that he was not engaged in the business of trucking in which JDT carried on a like business. (Filing 79 at ECF p. 6).

> 27. Other than my work performed as an employee of JDT for JDT, at no time since the APA have I directly or indirectly carried on, engaged in as an owner, part owner, manager, operator, employee, agent or other participant in the business of trucking in the continental United States of America in which JDT carried on a like business in such area.

(Filing 22-1) This statement is true. As Rick admitted at the TRO hearing, JDT is a specialized flatbed trucking company. (Filing 73, 28:6-7) ("So JDT is a flatbed trucking company as described"). When he signed his declaration, Jim was not operating any trucking company that hauled flatbed freight, and therefore, he was not engaged in the business of trucking in which JDT carried on a like business.

As discussed at the TRO hearing, there is a dispute as to the scope of the non-compete and what constitutes the business of trucking in competition with JDT. The business JDT was carrying on in the area was that of a specialty flatbed freight trucking company. Under the Asset Purchase Agreement, that's the only business JDT bought. *See* (Filing 1-1 describing the business Daws Inc. sold to JDT as "a

trucking company specializing in hauling over the road flatbed freight…") Jim's other businesses were not flatbed freight trucking companies. They brokered freight, owned and leased trucks to third parties, and owned and leased real estate. Jim cannot be held in contempt because his interpretation of the non-compete differs from JDT's overly broad, and unenforceable, interpretation.

JDT's so-called "support" for its argument involves Jim allegedly took realiting to Loyal—whose operations are expressly exempt from the TRO—and predate the entry of the TRO. JDT argues that on October 29, 2024, Jim's wife, Lana, submitted a business plan for RaNae Muenchrath, Corey Stull, and Jeremy Becker as owners of Loyal Trucking for an insurance broker to review. ([Filing 79 at ECF p. 5](...)). JDT also argues that in October generally, Jim had a plan to "activate" Loyal Trucking. (*Id.*). But on October 29, 2024, the day *before* he signed his declaration, Jim had signed a redemption agreement selling all his interest in Loyal back to Loyal effective November 1, 2024. ([Filing 61-11](...)). Jim clearly wasn't planning to engage in future Loyal operations considering he sold his interest in the company. JDT's evidence is woefully insufficient to establish by clear and convincing evidence that Jim lied to the Court in his declaration.

It is ironic that JDT accuses Jim of misleading the Court when there are numerous factual inaccuracies in Rick's TRO declaration. For example, in his declaration Rick stated that JDT previously had over 80 drivers, but now had less than 30. ([Filing 19-1, p. 8](...)). But in JDT's interrogatory answers, verified under oath by Rick, JDT stated it previously had only 74 drivers, and that more than 30 of them

14

were still driving for JDT. (Filing 62-7, p. 2-6). Rick testified that Jim offered to buy back the company for only $500,000 while omitting that Jim also offered to assume the millions of dollars in debt JDT had accrued. (*Compare*, Filing 19-1, p. 3, *with*, Filing 63-2, p. 63-65). In a recent brief, JDT stated that it paid Jim $12 million for the business. (Filing 74, p. 2). It hasn't. JDT has admitted elsewhere it only paid $10 million of the $12 million owed. (Filing 53 at p. 17). In fact, JDT still owes Daws, Inc. almost $2.5 million on a promissory note which is the subject of a separate lawsuit. *See Daws, Inc. v. Ricardo Fernandez*, 4:24-cv-3221.

Under JDT's standard, Rick should be held in contempt for making false statements and omissions to the Court. Reasonable parties, like Defendants, recognize that witnesses, and counsel, are human and under the time constraints and pressures of litigation some mistakes may be made, and parties often have very different interpretations of the facts. Omissions, misstatements, mistakes, and differing interpretations are fodder for cross-examination, not motions for contempt. JDT apparently takes a different, unreasonable approach. Mistakes are different than a bad faith intent to mislead the Court necessary to find contempt. JDT has not met its high burden.

**IV. There is no basis to award sanctions.**

While no sanctions are warranted, once again, JDT leaves Jim, and the Court guessing as to what sanctions it seeks. JDT offers no evidence justifying an award of sanctions. JDT does not identify how Jim's October 30, 2024 declaration caused, if

15

any damage, nor how it has incurred any additional attorney fees or costs based on Jim's statements that it would not have incurred in otherwise litigating this case.

## CONCLUSION

JDT has failed to meet its burden to show by clear and convincing evidence that Jim or any Defendant violated the TRO necessary to warrant contempt. Jim did not make any material misrepresentations nor omissions. Sanctions are not warranted in this case for nonmaterial omissions, mistakes, or differing interpretations of the non-compete. JDT's motion is largely unsupported, and what little evidence it does cite to, predates the Court's TRO.

Defendants and their counsel take seriously their obligations to show candor to the tribunal. But disagreements over facts or interpretations in the adversarial process are not grounds for contempt or sanctions. Otherwise, this Court's docket will be filled with wasteful contempt motions, like the present one. Defendants respectfully request the Court deny JDT's motion, and award Defendants their reasonable attorney fees in having to respond to this frivolous motion.

DATED this 21st day of February, 2025.

        DAWS, INC., JAMES R. DAWS,
        LANA R. DAWS, DAWS TRUCKING, INC.
        and COLUMBUS TRANSPORTATION &
        LOGISTICS, LLC, Defendants

BY:   /s/ Timothy J. Thalken
       Timothy J. Thalken, #22173
       David C. Mullin, #21985
       Kristin M. Nalbach, #27125
       FRASER STRYKER PC LLO
       500 Energy Plaza
       409 South 17th Street

            Omaha, NE  68102-2663
            Telephone:  (402) 341-6000
            Facsimile:  (402) 341-8290
            tthalken@fraserstryker.com
            dmullin@fraserstryker.com
            knalbach@fraserstryker.com
            ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF COMPLIANCE

  Pursuant to NECivR 7.1(d), counsel certifies that this brief contains 4549 words including all text, captions, headings, footnotes, and quotations according to the word count function of Microsoft Word 365.

            /s/ *Timothy J. Thalken*

## CERTIFICATE OF SERVICE

  I hereby certify that on the 21st day of February, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

            /s/ Timothy J. Thalken

3356491v6