## INDEPENDENT CONTRACTOR AGREEMENT

THIS AGREEMENT, made this 3rd day of November, 2021 at Milford, NE, between DAWS TRUCKING INC., a Nebraska corporation, residing in Milford, NE (hereafter referred to as CARRIER) and LOYAL TRUCKING LLC, residing in 758 280th Road, Milford, NE 68405. (hereafter referred to as INDEPENDENT CONTRACTOR).

WHEREAS, CARRIER being a for-hire motor carrier, operating under authority granted by the Federal Motor Carrier Safety Administration (FMCSA) and comparable state and/or provincial commissions, undertakes to augment and supplement its fleet of equipment through lease agreements with independent contractors owning tractor trailer equipment.

WHEREAS, CONTRACTOR is engaged in the business of transporting freight all kinds (FAK) by truck pursuant to agreements with for-hire motor carriers and shippers; and

WHEREAS, CARRIER AND CONTRACTOR desire to enter into an Agreement to carry out the foregoing; therefore, in consideration of the mutual covenants and agreements contained herein, the parties mutually agree as follows:

1. TERM.
   a. The parties agree that the term of this Agreement shall be for a period expiring one year from the date first written above.

   b. In the event either party violates any provision of this Agreement, the other shall have the right to immediately terminate or indefinitely suspend this Agreement, including CARRIER shall have the right to terminate or suspend without prior notice if it has factual information or knowledge or belief that the safety of the public or property of the public is being endangered or unlawful operations are being conducted by CONTRACTOR. Provided, however, CONTRACTOR may not terminate until CONTRACTOR has completed any unfinished trip CONTRACTOR has undertaken at the time, unless authorized to do so by CARRIER.

   c. This Agreement terminates either (1) upon issuance by CARRIER of written or telegraphic confirmation of termination, regardless of which party initiated the termination; or (2) upon expiration of the term referenced in subparagraph 1.a. above, whichever occurs first, and is effective whether or not CONTRACTOR has removed all signs, placards, licenses and permits relating thereto. Upon termination, CONTRACTOR is to immediately remove the aforereferenced items and deliver same to CARRIER and agrees to indemnify and hold harmless CARRIER regarding all claims and costs which arise from CONTRACTOR'S actions and operations after the date of termination.

   d. CONTRACTOR further agrees that operations of the subparagraph 3.a. equipment beyond the scope and authority of this Agreement or in violation of the law and regulations and without both the knowledge and authority of CARRIER voids this Agreement immediately and constitutes operations solely of CONTRACTOR; and CONTRACTOR agrees to hold harmless CARRIER for all claims and costs which may arise from such unauthorized CONTRACTOR'S actions and operations.

Case
4:24cv3177

Exhibit
136

JDT_00233648

2.   NON-COMPETE.   CONTRACTOR acknowledges that in performing CONTRACTOR's obligations under this Agreement, CONTRACTOR will necessarily become aware of the identities and will unavoidably be in direct contact with many of CARRIER's customers, and that in these circumstances a reasonable restriction against competition by CONTRACTOR with CARRIER is necessary to the protection of CARRIER's legitimate business interests. Therefore, in consideration of the furnishing of shipments of freight by CARRIER to CONTRACTOR for transportation pursuant to this Agreement, CONTRACTOR covenants with CARRIER that throughout the term of this Agreement and during the period of one (1) year next following the date of termination hereof, neither CONTRACTOR nor any of CONTRACTOR's shareholders, officers, directors, members or partners or any other persons having a financial interest in CONTRACTOR will solicit the business of or accept shipments of freight from any customer of CARRIER with whom it or they come into contact or become aware of as a result of any shipment tendered to CONTRACTOR by CARRIER pursuant to this Agreement. In the event of any breach of the provisions of this covenant, CARRIER shall be entitled to receive and CONTRACTOR will pay CARRIER a commission in an amount equal to 15% of all revenue derived by CONTRACTOR as the result of such breach by CONTRACTOR.

3.   CONTRACT PAY
   a.  CARRIER agrees:
   I.   For the full and proper performance of this agreement by CONTRACTOR, to pay CONTRACTOR per Appendix A attached to this lease. Any exceptions or modifications will be agreed to between CARRIER and CONTRACTOR on a per trip basis. In the event of changes, all changes must be noted on said trip sheet.

   II.  That for CONTRACTOR pay purposes, all miles will be computed and paid by the current computer mileage program in use. All Intrastate movements will be governed by that State which loads are moved in. CONTRACTOR has the right to pick any route of his choice, but pay miles will remain calculated through the Household Goods Bureau Mileage Guide.

   b.  CARRIER is required to furnish CONTRACTOR and the Internal Revenue Service with an annual report showing the total amount of contract pay per year to CONTRACTOR. CARRIER has no obligation to pay or withhold state or federal taxes, or to provide workers compensation or unemployment insurance. It is CONTRACTOR'S obligation to pay self-employment taxes.

   c.  CONTRACTOR has the right to examine copies of CARRIER'S tariff, schedule or contracts, provided that only those portions of a contract containing the same information that would appear on a rated freight bill will be disclosed. When the revenue in Appendix A is based on a percentage of gross revenue, CARRIER shall provide at CONTRACTOR"S request a copy of the freight bill. If a freight bill is provided, CONTRACTOR may, during normal business hours, review any documents underlying the actual freight bill. CARRIER at its option may delete the names of shippers and or consignees from all freight bills or other documentation.

4.  EQUIPMENT CONTRACTOR agrees to and warrants:
   a.  To furnish all fuel, oil, tires, and repairs and other items necessary to the safe and effective operation of the said equipment furnished in Appendix B, which is attached hereto.



JDT_00233649

CONTRACTOR will operate said equipment in compliance with the rules and regulations of the FMCSA, the U.S. Department of Transportation and any other State regulatory bodied having jurisdiction of the operation of said equipment.

b.   All costs of empty mileage will be at CONTRACTOR'S expense, unless agreed upon by both CONTRACTOR and CARRIER and CARRIER offers compensation.

c.   That pursuant to law, all equipment furnished hereunder shall be subject to the inspection and approval of CARRIER so as to be in accordance with the requirements of the federal government and the appropriate states and provinces. CONTRACTOR agrees to maintain said equipment in proper operating condition so as to satisfy any federal, state, province or CARRIER safety inspection at any time, to have such equipment inspected monthly at CARRIER'S home terminal, and to make any such repairs as may be found necessary. All such CARRIER inspections are solely to insure compliance with government-mandated standards. It is understood that vehicles and drivers will at all times be in compliance with federal, state, and provincial regulations as presently in force or enacted in the future, and that vehicles and drivers will operate to perform the individual transportation service requested by CARRIER in compliance with federal, state, and provincial regulations and this Agreement. The choice of location and persons to perform any necessary maintenance or repairs is vested exclusively in CONTRACTOR. CONTRACTOR shall provide CARRIER with legible copies of all repairing and maintenance performed on the equipment at the time such work is completed. CONTRACTOR shall forward all maintenance records covering the equipment required by the provisions and regulations of the U.S. Department of Transportation and any other applicable governmental agency to CARRIER at the end of each calendar month during which this Agreement remains in effect. If such records are not delivered to CARRIER within ten days following the end of each month, or are incomplete, CARRIER may terminate this Agreement or suspend operation until complete records are supplied. CONTRACTOR further agrees that CARRIER will have no obligation or responsibility for repair of damage to the equipment.

d.   That on the date of execution of this Agreement, the above described equipment has been inspected and found to be in compliance with the U.S. Department of Transportation Federal Motor Carrier Safety Regulations.

e.   To affix to equipment furnished to Carrier the identification provided by CARRIER required by federal, state, and provincial agencies and further agrees that such identification shall be removed immediately and returned to CARRIER upon termination of this Agreement. In the event such identification cannot be removed but has to be painted over, CONTRACTOR shall immediately cause to have such repainting done, and shall provide Carrier with a photograph of each repainted door, and in each photograph the front page of a current newspaper will be included as evidence of the date.

f.   That CONTRACTOR holds legal title or that CONTRACTOR or CONTRACTOR'S driver(s) has the legal right to exercise full control over the above described equipment.

g.   In the event CARRIER supplies the trailer equipment to be pulled by CONTRACTOR, CARRIER will maintain the trailer and accessorial equipment furnished and the cost of the fuel for the operation of such accessorial equipment. CONTRACTOR shall be responsible



JDT_00233650

and liable for all loss of or damage to any said trailer and accessorial equipment occurring while in the possession or custody of CONTRACTOR, excepting such loss or damage as CARRIER is compensated for under any applicable insurance or otherwise; and CONTRACTOR will indemnify CARRIER against any loss or account thereof. In the event CONTRACTOR supplies the trailer equipment under this agreement, the CONTRACTOR shall be responsible as provided for herein for the maintenance of the trailer and accessorial equipment furnished by CONTRACTOR and shall also be responsible for the cost of the fuel and the operation of the accessorial equipment.

5. PERSONNEL CONTRACTOR agrees:
   a. To furnish drivers and all necessary labor to perform all of the work necessary for:

      I.   The transportation of such commodities as CARRIER provides for in its tariffs, schedules and contracts; and

      II.  The loading, unloading, securing, or tarping of such commodities as Carrier provides for in its tariffs, schedules and contracts.

   b. That CONTRACTOR is not entitled to compensation for loading or unloading or securing and tarping beyond that specified in Appendix A.

   c. CONTRACTOR and all driver personnel furnished by CONTRACTOR will meet and satisfy the driver qualifications of the U.S. Department of Transportation and the appropriate states and provinces and those of CARRIER. This specifically includes the regulations referenced in paragraph 19 below. CONTRACTOR certifies, represents and warrants that all drivers of the equipment covered by this Agreement have been examined by a duly qualified physician prior to the date of execution of this Agreement as required by the regulations of the U.S. Department of Transportation or of any other regulatory body and agrees to furnish a copy of said physician's examination certificate to CARRIER. Only such qualified personnel may operate the equipment furnished CARRIER under this Agreement.

   d. That CONTRACTOR and all personnel furnished or used by CONTRACTOR, including drivers, driver's helpers and laborers, are the employees or agents of CONTRACTOR and not the employees or agents of CARRIER and as such, CONTRACTOR will be solely and totally responsible for:

      I.   The payment of all such personnel, including drivers, drivers helpers, and laborers;

      II.  Such deductions as may be required by governmental regulations;

      III. Such contributions as may be required by appropriate governmental agencies;

      IV.  The provisions in I., II., III. shall include, but not be limited to self employment taxes, withholding taxes, FICA taxes, unemployment compensation taxes, workers' compensation insurance and any other such taxes or obligations;



JDT_00233651

    V.    The direction and control of CONTRACTOR'S employees, including selecting, hiring, firing, supervising, directing, training, setting wages, hours and working conditions, and paying and adjusting grievances of CONTRACTOR'S employees; and

    VI.    The driver(s) of the equipment shall be exclusively CONTRACTOR or CONTRACTOR's employees. CONTRACTOR, and only CONTRACTOR, shall be the employer of CONTRACTOR's and such additional drivers with the meaning of the Internal Revenue Code 3401(d). CARRIER shall have no control over any funds it pays to CONTRACTOR and such funds shall not be considered wages with in the meaning of 3401(a) of the Internal Revenue Code.

e. To indemnify and hold harmless CARRIER from any liability and claims by others, including governments, arising from CONTRACTOR'S relationship with CONTRACTOR'S employees, whether under industrial accident laws, workers' compensation laws or any other state, federal, provincial or common law or precedent applicable to the relationship between employers and employees.

f. No passengers are permitted in equipment furnished by CONTRACTOR under this Agreement without prior written approval of each passenger by both CONTRACTOR and CARRIER.

g. To make all drivers available for training mandated by government regulations.

6. TRAFFIC CARRIER agrees to make reasonable efforts to furnish CONTRACTOR freight during the term of this Agreement; however, this is not to be construed as an agreement by CARRIER to furnish any specific number of loads or pounds of freight for transport by CONTRACTOR at any particular time or any particular place. There is no guarantee by CARRIER to CONTRACTOR of any minimum number of miles or loads available under this Agreement.

7. CONTRACT PAYMENT. CARRIER shall make payment to CONTRACTOR after the completion of each trip or trips, those amounts and payment provisions specified in Appendix A after the submission by CONTRACTOR by mail by express courier, by electronic means or in person of:

    a. The log books required by the U.S. Department of Transportation;

    b. Those fully executed documents necessary for CARRIER to secure payment on the shipment, which consists of delivery receipts or receipted bills of lading or loading manifests, and weight tickets where required, all of which must be properly completed and signed by the appropriate representatives of the consignor and consignee; and

    c. In addition, upon termination of this Agreement as a condition precedent to settlement, the CONTRACTOR shall follow the procedure set forth in paragraph 3.e. above. Until this removal and return requirement is complied with, final settlement will be withheld, and the payment provision in Appendix A will not apply CONTRACTOR will deliver to CARRIER any and all bills of lading and other forms, advertising materials and literature obtained by CONTRACTOR through or furnished by CARRIER, and licenses, registration plates,

JDT_00233652

identifying insignia, cards or papers obtained by or on behalf of CARRIER in furtherance of the operation of the equipment in the business of CARRIER.

8. TAXES and LICENSES

a. It is agreed and understood that CONTRACTOR shall be responsible for all plates, base plates, licenses or permits of all types, highway use taxes and all other levies or assessments based upon the operation of the vehicle, subject to the exceptions noted in Appendix A attached hereto.

b. If CARRIER is authorized to receive a refund or a credit for base plates purchased by CONTRACTOR from, and issued in the name of, CARRIER, or if the base plates are authorized to be sold by CARRIER to another contractor, CARRIER shall refund to CONTRACTOR on whose behalf the base plate was first obtained a prorated share of the amount received.

9. INSURANCE

a. Pursuant to the FMCSA and comparable state and provincial regulations, CARRIER shall maintain public liability and property damage insurance coverage.

b. CONTRACTOR agrees:

I. That CONTRACTOR is responsible for providing collision, fire and theft insurance coverage for CONTRACTOR'S equipment.

II. To furnish proper evidence of worker's compensation insurance coverage within 24 hours of the execution of this Agreement and to maintain such insurance in force at all times, with all such policies providing CARRIER 20 days written notice of cancellation or reduction of limits of such insurance, but any such cancellation or reduction shall not effect the obligations of CONTRACTOR to maintain said insurance.

10. FINES and ASSESSMENTS.

a. CONTRACTOR shall be financially responsible for all fines or other assessments arising from operation of said equipment, including all penalties, tolls, ferry costs, detention and accessorial taxes and other obligations that are incurred by reason of the route over which CONTRACTOR's vehicle is operated and further including any penalties assessed against CARRIER by FMCSA by reason of the failure of CONTRACTOR or CONTRACTOR's drivers to fully comply with provisions of the Federal Motor Carrier Safety Regulations in their performance of this Agreement.

b. CONTRACTOR is responsible for ensuring that each load is legal from all standpoints, including those of weight of size, before commencing each trip and during the conduct thereof. If CONTRACTOR fails to so ensure, or transports it without the express approval of CARRIER to exceed a limitation brought to the attention of CARRIER by CONTRACTOR, then CONTRACTOR is responsible for any subsequent fines.

c. Except when the violation results from the acts or omissions of CONTRACTOR, CARRIER shall assume risks and costs of fines for overweight and oversize trailers when the trailers are pre-loaded, sealed or the load is containerized, or when the trailer or lading is otherwise outside of CONTRACTOR'S control, and for improperly permitted over-dimension



JDT_00233653

and overweight loads, and shall reimburse CONTRACTOR for any fines paid by CONTRACTOR which are the obligation of CARRIER under this provision.

11. CLAIMS.

    a. CARRIER shall not be liable to CONTRACTOR for any loss of or damage to the equipment furnished by CONTRACTOR hereunder unless caused by the intentional or negligent acts of CARRIER'S employees while acting with the scope of the employment and in such latter event, CARRIER will be liable only to the extent CONTRACTOR is not compensated for such loss of damage by insurance or otherwise.

    b. CONTRACTOR assumes the risk of any injury or death to any person resulting from the performance of this Agreement, whether caused by CONTRACTOR'S own equipment or equipment furnished to it by CARRIER or by the employees or agents of CONTRACTOR or CARRIER, unless caused by the intentional or negligent acts of CARRIER'S employees while acting within the scope of their employment.

    c. In the event CARRIER incurs any liability, expense, costs or attorneys' fees resulting from CONTRACTOR'S failure to comply with provisions of this Agreement, or resulting from CONTRACTOR'S negligent or intentional performance under the provision of this Agreement CONTRACTOR agrees to indemnify and save harmless CARRIER from such liability, expense, costs or attorneys' fees.

    d. CONTRACTOR will collect and promptly remit to CARRIER all amounts paid to CONTRACTOR or its drivers by CARRIER'S consignors or consignees for transportation charges or otherwise under CARRIER'S shipping or billing documents. CONTRACTOR will be liable for any amounts which it fails to collect when so specified on the shipping or billing documents unless an officer or authorized employee of CARRIER gives CONTRACTOR written permission to deliver such a shipment without the collection of said charges.

    e. CONTRACTOR shall be responsible for 100% of the deductible amount of any and all accidents, damage or cargo claims regardless of the cause thereof, said 100% to include the expenses incurred by CARRIER in the settlement and/or investigation of all accidents, damage or cargo claims. On all cargo claims, CONTRACTOR will be held responsible for all costs incurred if; CONTRACTOR fails to notify CARRIER before leaving premises of said claim.

    f. In the event a fatality or bodily injury or damages occurs in any accident involving the equipment covered by this Agreement, CONTRACTOR shall give CARRIER immediate notice by telephone or in person of such accident. Such notice shall contain all available information relating to time, place and circumstances of the accident and the names and addresses of all witnesses. In addition, CONTRACTOR agrees to report promptly to CARRIER any claims, losses or damages of any kind whatsoever which involve the vehicles and cargo covered by this Agreement and furnish CARRIER with such written reports, affidavits and other assistance as may be necessary to investigate, settle or litigate any existing or potential claims against CARRIER. As provided for herein, CARRIER must provide CONTRACTOR with a written explanation and itemization of any deductions for cargo or property damage made from any compensation owed to CONTRACTOR and such

JDT_00233654



written explanation and itemization must be delivered to CONTRACTOR before any deductions are made.

12. TRIP INTERRUPTION. Because of the liability of CARRIER to shippers, pursuant to provisions of federal, state or provincial laws and regulations governing motor carriers, if in the opinion of CARRIER, CONTRACTOR violates this Agreement in such a manner as to fail to complete transportation of commodities in transit, abandons a shipment, has a breakdown, or otherwise interferes with the expeditious and safe delivery of commodities and thereby subjects CARRIER to liabilities, CONTRACTOR expressly agrees that CARRIER shall have the right to complete the trip involved in any manner CARRIER deems appropriate.  CONTRACTOR hereby waives any recourse against CARRIER for such action and agrees to reimburse CARRIER for any costs and expenses arising out of such completion of such trip, and additionally, to pay CARRIER any damages for which CARRIER may be liable to shipper arising out of such violation of this Agreement by CONTRACTOR. Upon completion of such trip, if equipment becomes separated from CONTRACTOR or CONTRACTOR'S driver or agent, said equipment shall be returned to CONTRACTOR at any one of CARRIER'S terminals or other location specified by CARRIER.

13. DEDUCTIONS.
    a. CARRIER may deduct from any amounts due CONTRACTOR all amounts to cover CONTRACTOR'S obligations under this Agreement and all amounts which may have been advanced by the CARRIER on behalf of CONTRACTOR, plus those fines, penalties, interest, taxes, fees and assessments levied on CARRIER as result of CONTRACTOR'S operations and not provided for herein.

    b. CARRIER will provide CONTRACTOR, upon request, those documents necessary to determine and compute such charges and deductions.

    c. CARRIER shall have sole discretion as to advances of money to CONTRACTOR or its drivers with the right to deduct same from CONTRACTOR'S settlements. Advances may be made to CONTRACTOR'S drivers by CARRIER unless CONTRACTOR, by signed addendum to this Agreement, directs that there shall be no advances.

    d. The term "advances" used in this Agreement shall include sums advanced pursuant to fuel card programs.

    e. CARRIER will provide CONTRACTOR written explanation and itemization prior to making any deductions for cargo or property claims and related reserves made subject to determinations per paragraph 10. Above.

14. RELATED AGREEMENTS.
    a. CONTRACTOR is not required to purchase or rent any products, equipment, insurance or services from CARRIER or CARRIER'S affiliates as a condition of this Agreement.

    b. All requests to CARRIER from CONTRACTOR or its drivers to furnish products, equipment, insurance or services will be complied with at the sole discretion of CARRIER, and CONTRACTOR agrees that CONTRACTOR will not assume any such




JDT_00233655

products, equipment, insurance or services have been furnished by CARRIER until CARRIER provides CONTRACTOR with written confirmation of such furnishing.

c.  Equipment purchase or rental agreements will be considered separated and distinct from this Agreement. All provisions therein relating to CONTRACTOR'S payment obligations and authorizing CARRIER to make deductions from any sums due CONTRACTOR must be in writing and signed and agreed to by CONTRACTOR.

15. CLEAN OPERATION.  CONTRACTOR agrees to conduct a "clean operation." Said "clean operation" shall include: check calls, on time loading, on time deliveries, no adverse safety reports, deliveries at correct destinations, all items required under safety procedure, no exceptions noted on delivery receipts and no discourteousness at loading or unloading points. If the mentioned items are not complied with, CARRIER has the right to terminate this Agreement for cause immediately without prior notice upon the occasion of any failure to comply with the Clean Operation requirement.

16. INDEPENDENT CONTRACTOR.
   a.  The parties intend to create by this Agreement between CARRIER and CONTRACTOR, the relationship of CARRIER and INDEPENDENT CONTRACTOR, and not an Employer and Employee relationship.

   b.  As provided for in 49 CFR Section 376.12(c)(4) of the regulations of the FMCSA, nothing in paragraph 16 below is intended to affect the status of CONTRACTOR as an independent contractor hereunder

   c.  CONTRACTOR shall determine the method, means and the manner of performing this Agreement and shall be responsible to CARRIER for the performance of this Agreement in accordance with the rules and regulations of appropriate regulatory agencies, as it is the intent of the parties that CARRIER does not have the right to and will not control the manner or prescribe the method of doing that portion of the operations which is contracted for in this Agreement, except such control as can reasonably be construed to be required by said rules and regulations.

   d.  CONTRACTOR shall have the right to reject any load assignment and further has the right to choose the route of travel of CONTRACTOR'S equipment and at what points drivers shall take rest stops and refuel said equipment, all of which shall be the obligation and responsibility of CONTRACTOR.

   e.  The parties hereto are not the agent of the other, and neither party shall have the right to bind the other by contract or otherwise, except as herein specifically provided. Specifically, CONTRACTOR shall not charge or obtain any article of property or other thing of value on credit, either direct or indirect, to CARRIER, nor in any manner attempt to do so without the express written authorization of CARRIER.

   f.  If requested by CARRIER, CONTRACTOR will cooperate in providing information and documents relating to the CONTRACTOR'S status.



JDT_00233656

17. CONTROL. During the duration of this Agreement, while CONTRACTOR is in compliance with all provisions thereof and to the degree required by the FMCSA, the Department of Transportation, the various involved states and provinces and this Agreement, CARRIER shall have exclusive possession, control and use of the equipment. Such possession, control and use does not exist when CONTRACTOR operates contrary to and in violation of the law and/or any provision(s) to this Agreement, as CARRIER requires absolute compliance therewith and failure to adhere thereto evidences that CARRIER no longer has such possession, control and use.

18. TRIP LEASES. To insure CARRIER complies with its government mandated obligations, CONTRACTOR or CONTRACTOR'S drivers will be considered the owner of the equipment for the purpose of subleasing or trip leasing said equipment to other carriers only when such subleasing or trip leasing is authorized by CARRIER, otherwise CARRIER shall be considered the owner of the equipment for the purpose of subleasing it to other authorized carriers during the lease and only CARRIER can authorize such subleasing and trip leasing in CARRIER'S name. Should CONTRACTOR or CONTRACTOR'S driver or agent enter into an unauthorized sublease or trip lease, CONTRACTOR will be held to have immediately and unilaterally terminated this Agreement simultaneous with such entry and to have relieved CARRIER of all of CARRIER'S obligations under this Agreement.

19. UNAUTHORIZED MATERIAL. CONTRACTOR agrees that CONTRACTOR and CONTRACTOR'S drivers, personnel and agents will not place in or on, or carry onto any equipment owned by or under lease to CARRIER including the equipment specified in subparagraph 3.a., any alcohol, narcotics, nonprescription drugs, controlled substances, explosives or firearms. Any violation of this provision will permit CARRIER to terminate this Agreement immediately without 30 day's notice. If a violation of this provision subjects CARRIER to any expenditure, CONTRACTOR agrees to reimburse CARRIER for it.

20. ALCOHOL AND DRUG REGULATIONS. CONTRACTOR agrees that CONTRACTOR and all personnel employed or engaged by CONTRACTOR will comply with all governmental alcohol and drug regulations, including cooperating with all testing procedures.

21. GOVERNING LAW/CHOICE OF FORUM. This Agreement shall be governed by the laws of the State of Nebraska, both as to interpretation and performance. Recognizing the widespread area of CARRIER'S operation and in order to establish uniformity of application and interpretation, it is mutually agreed between the parties hereto that final execution of this Agreement shall be deemed to have taken place in Milford, Nebraska. A copy of this Agreement shall be kept on file at Milford, Nebraska, and notwithstanding any act to the contrary, all matters pertaining to any provisions contained in this Agreement shall be interpreted under the laws of the State of Nebraska. The courts of Seward County, Nebraska shall have exclusive original jurisdiction to enforce this Agreement and adjudicate disputes arising hereunder, and the parties hereby irrevocably consent to the jurisdiction of said courts.

22. WAIVER. Any waiver by CARRIER of any provision of this Agreement does not constitute a permanent waiver of that provision, nor does the forgiveness by CARRIER of a violation or breach of any provision of this Agreement constitute a forgiveness of any subsequent violation or breach.



JDT_00233657

23. **ENTIRE AGREEMENT AND SURVIVABILITY.** This Agreement and any appendix and addendum describing equipment, establishing compensation and any trip record used pursuant to said Agreement, constitutes the entire Agreement and understanding between the parties and shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties. If any section or sections or part or parts of sections of this Agreement shall be held invalid for any reason whatsoever, the provisions of this Agreement shall be void only as to such section or sections or part or parts of sections, and this Agreement shall remain otherwise binding between the parties hereto.

24. **AGREEMENT EFFECT.** This Agreement in no way constitutes a release or discharge of CONTRACTOR from its primary liability for payment and performance under any existing, financing, purchase, indenture of trust and lease agreements to which it is a party, and CONTRACTOR'S duties and obligations there under shall continue as if this Agreement did not exist.

25. **CERTIFICATION.** CONTRACTOR represents and warrants that CONTRACTOR has read this Agreement in full, is familiar with its terms and provisions, that no representations have been made either to or by CARRIER, either directly or indirectly, that are not incorporated herein.

26. **NOTICE.** Whenever notice is required or provided for by this Agreement, it shall be given by certified mail, return receipt requested, to CARRIER, addressed to Daws Trucking Inc., 758 280th Road, Unit #10, Milford, NE 68405 and to CONTRACTOR, Loyal Trucking LLC, 758 280th Road, Milford, NE 68405.

27. CONTRACTOR agrees to immediately notify CARRIER, in writing, of any change in CONTRACTOR'S mailing address.


IN WITNESS WHEREOF, the parties have executed two original copies of this Agreement effective the date and time set forth in the first paragraph on page one and the same be considered to commence and be effective immediately and to be binding upon both parties and shall remain in full force and effect unless and until cancelled according to the terms of this Agreement. Effective the same date and time CARRIER acknowledges receipt of that equipment identified in subparagraph 3.a. above. CARRIER shall retain one original of this Agreement, and one original copy shall remain with the vehicle during the period of this Agreement. When this Agreement covers more than one vehicle, the copies remaining with the other vehicles may be photocopies of the original.


CONTRACTOR

Corey Stull
LOYAL TRUCKING LLC

CARRIER

James Daws
DAWS TRUCKING INC.

JDT_00233658

# APPENDIX A

CARRIER WILL PAY:

80% OF REVENUE FOR FULL, PARTIAL AND OVERDIMENSIONAL LOADS
100% TARP, PICK-UP, STOP PAY AND FUEL SURCHARGE

PAY CONTRACTOR WEEKLY FOR LOADS DELIVERED THRU MONDAY WITH PAPERWORK RECEIVED IN THE OFFICE BY NOON ON WEDNESDAY

CONTRACTOR WILL PAY:

ALL FUEL TAXES
ANNUAL FORM 2290
ANNUAL LICENSING FEES
PHYSICAL DAMAGE INSURANCE
BOBTAIL INSURANCE
OCCUPATIONAL ACCIDENT INSURANCE
TOLLS, SCALES AND PREPASS IF DESIRED
ELECTRONIC DRIVER LOG SUBSCRIPTION FEE $35 PER MONTH

CONTRACTOR

Corey Stull
Loyal Trucking LLC

CARRIER

James Daws
Daws Trucking Inc

DATE

*Addendum to Lease Agreement for Owner/Operators*
*Confidential for Daws Trucking Inc.*

*November 2021*

JDT_00233659

# APPENDIX B

Unit #
76

Year & Make
2020 Kenworth

VIN #
1XKWD49X2LR292745

The equipment listed above is exclusively leased to Daws Trucking Inc.

Corey Stull
LOYAL TRUCKING LLC

James Daws
DAWS TRUCKING INC.

DATE

## TERMINATION OF LEASE AGREEMENT

Effective_____, I hereby terminate my lease agreement with Daws Trucking Inc.

Corey Stull
LOYAL TRUCKING LLC

James R. Daws
DAWS TRUCKING INC.

*Addendum to Lease Agreement for Owner/Operators*
*Confidential for Daws Trucking Inc.*

*November 2021*

JDT_00233660