IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JIM DAWS TRUCKING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DAWS, INC.; JAMES R. DAWS; LANA R. DAWS; DAWS TRUCKING, INC.; and COLUMBUS TRANSPORTATION & LOGISTICS, LLC,<br><br>Defendants. | ) | CASE NO. 4:24-CV-3177<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO INCREASE SURETY BOND AND VACATE ORDER REQUIRING TRANSFER OF THE FUNDS IN THE ANB ACCOUNT** |

## INTRODUCTION

In its Preliminary Injunction Order, this Court set the bond at $480,000. The court stated "However, this amount may be raised or lowered as the case progresses upon appropriate motion filed by the parties." (Filing 113 at ECF p. 16). It is apparent that the breadth of this Court's injunction warrants a bond far greater than $480,000. Defendants request that to adequately protect the parties enjoined that the bond be increased as set forth below.

In addition, this Court ordered Jim Daws ("Jim") to transfer all funds in the ANB account to JDT subject to all liens. As of April 7, 2025, the balance of that account is $517,888.55. This amount alone is more than the bond set by the Court which is further evidence that the existing bond is inadequate.

Moreover, ordering the transfer of money in a bank account is improper because (1) JDT's complaint never requested this relief; (2) JDT's motion for preliminary injunction never requested this relief; (3) JDT has an adequate remedy

at law for the return of money damages, making injunctive relief unavailable; and (4) the injunction does not maintain the status quo but rather fundamentally changes Daws, Inc.'s rights under the UCC. That portion of the Court's injunction requiring transfer of the funds in the ANB account should be vacated.

## ARGUMENT

### I. THE AMOUNT OF THE BOND SHOULD BE INCREASED BECAUSE IT IS INADEQUATE TO PROTECT THE PARTIES WHO ARE ENJOINED IN THE EVENT THE PRELIMINARY INJUNCTION IS FOUND TO HAVE BEEN IMPROPERLY GRANTED.

Before a preliminary injunction becomes effective, Rule 65 requires a court to order a party to post a bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (explaining the court may issue a preliminary injunction "only if the movant gives security"). A district court has discretion in establishing the amount of the bond, but must "require an adequate bond," and must "make the necessary findings in support of its determinations." *Hill v. Xyquad,* Inc., 939 F.2d 627, 632 (8th Cir. 1991); *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th 1989) (holding a district court abused its discretion in failing to require an adequate bond and requiring the district court to "substantially increase the bond").

The U.S. Supreme Court has explained the reason why a bond must be adequate to protect the enjoined party, "A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 770 n. 14

(1983) ). As the Fifth Circuit has stated: "The bond can thus be viewed as a contract in which the court and plaintiff 'agree' to the bond amount as the 'price' of a wrongful injunction." *Continuum Co., Inc. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989).

In calculating the amount of the bond, this Court relied solely on JLD's monthly income. "In this case, the court finds the appropriate bond amount to be $480,000 which is 12 times $40,000 of estimated income that JLD was bringing in per month." (Filing 113 and ECF p. 16). This finding is inadequate to protect Daws, Inc., Jim, Loyal, and other non-parties, because it does not factor in any damage that such persons and entities could sustain as a result of an improperly issued injunction. Accordingly, the bond should be increased as discussed below.

**A. The existing bond is inadequate to protect Loyal.**

This Court's bond does not adequately take into account the damage that could befall Loyal Trucking from the injunction. In footnote 6, the Court states: "If Loyal wants to operate, it must pay Jim the full amount owed to him under its redemption agreement. Until such time as these funds are paid, Loyal may not operate due to Jim's financial interest in the company." (Filing 113 at ECF p. 15, n.6). The evidence at the hearing shows that Loyal owes Jim a balance of $656,667. (Filing 113 at ECF p. 6)(Filing 104 at ECF p. 150)(Filing 61-11).

If Loyal is unable to immediately pay off the amount owed to Jim, the Court's order will prevent Loyal from operating and it will suffer ongoing losses. Those losses will extend to Loyal's drivers who will be put out of work.

The Court noted that "there is very little evidence in the record regarding Loyal's income…" (Filing 113 at ECF p. 16). The Declaration of RaNae Muenchrath establishes that since starting up in January 2025, Loyal's monthly billings have grown from $203,431.80 (partial month of January) to $401,762.34 in March. (Filing 119-2). Therefore, conservatively estimating that Loyal's billings will stay the *same* as its actual billings in March 2025 going forward, Loyal can expect in excess of $4.8 million in billings over the next twelve months. Using the same methodology this Court used to calculate the original bond, this is income Loyal will be deprived of if it is prevented from operating in the next twelve months due to the injunction.

| | Projected Amounts Invoiced to Customers by Month |
|---|---:|
| March (Actual) | $401,762.34 |
| April | $401,762.34 |
| May | $401,762.34 |
| June | $401,762.34 |
| July | $401,762.34 |
| August | $401,762.34 |
| September | $401,762.34 |
| October | $401,762.34 |
| November | $401,762.34 |
| December | $401,762.34 |
| January | $401,762.34 |
| February | $401,762.34 |
| **Total** | **$4,821,148.08** |

(Filing 119-2).

Of course, if Loyal is prevented from operating until a trial is held, it is very likely it will be put out of business as it will be unable to service its debt, its customers will go elsewhere, and its drivers will lose their jobs and incomes. This

makes the posting of an adequate bond all the more important. To adequately protect Loyal's and its driver's interests, who are not a party to this lawsuit, the bond should be increased by $4,821,148.08.

**B. The bond set by the Court does not factor in the damage to Daws, Inc. as a result of transferring the funds in the American National Bank ("ANB") account.**

The Court's Preliminary Injunction orders that "the funds in the ANB bank account need to be turned over to JDT, subject to any valid liens." (Filing 113 at ECF p. 15). The evidence at the hearing established that as of January 9, 2025, the Daws, Inc. account at ANB had a balance of $435,742.13. (Filing 88-10). That amount has since grown. The balance as of April 7, 2025 in that account is $517,888.55. (Filing 119-1) The current bond does not adequately protect Daws, Inc. if this aspect of the injunction is found to be wrongful.

For example, both Union Bank and Trust ("UBT") and Daws, Inc. have security interests in the funds in the ANB account. Daws, Inc. has a secured interest in the funds in the ANB account through a UCC filing it made on October 17, 2024 (Filing 119-1 at ECF p. 3). Further, as a possessor in control of the funds, Daws, Inc. also has a secured interest in the funds pursuant to the UCC. *See* Neb. U.C.C. § 9-312(b)(1) ("[A] security interest in a deposit account may be perfected only by control under section 9-314); Neb. Rev. Stat. § 9-314(b) ("A security interest in deposit accounts…is perfected by control under section 7-106, 9-104, 9-105, or 9-107 when the secured party obtains control and remains perfected

by control only while the secured party retains control."). As the saying goes, possession is nine-tenths of the law.

Relevant to the present motion, the Court's injunction fails to take into account the damage that Daws, Inc. will suffer if it is ordered to turn over the funds in the ANB account. To be clear, the ANB account at issue is held in the name of Daws, Inc. (Filing 88-9). Requiring Jim to turn over the funds to JDT and/or UBT, or even depositing them into the Court, would affect Daws, Inc.'s perfected security interest as possessor and controller of the funds in a deposit account under the UCC. Neb. Rev. Stat. § 9-314(b). Thus, the injunction does not maintain the status quo. It significantly affects Daws, Inc.'s legal rights to the sole benefit of JDT before the legal issue of who has the rights to the funds in the ANB account has been litigated. This order could ultimately prevent Daws, Inc. from collecting the amounts JDT owes under the Promissory Note, as UBT may claim Daws, Inc. lost its perfected interest once the money leaves Daws, Inc.'s possession.

Daws, Inc. contends that the money in the ANB account is money JDT owes Daws, Inc. as a result of JDT's default on the $4 million promissory note. While Defendants strongly disagree that an injunction is an available remedy because JDT has an adequate remedy at law to recover any funds allegedly wrongfully withheld, to adequately protect Daws, Inc.'s perfected security interest in these funds, JDT must be ordered to post a bond equal to the balance of the ANB account that the Court has ordered to be transferred—$517,888.55. That way, Daws, Inc. will have ready funds available to collect should JDT be found in breach of the

promissory note. The Court's failure to require JDT to post $517,888.55 in security to secure the imminent transfer of $517,888.55 in funds makes the Court's current bond requirement inadequate.

**C. The bond does not adequately account for Jim's damages.**

Jim testified that because of the non-compete's prohibition on him being engaged in the business of trucking, he has turned down jobs driving trucks carrying seed corn in a dry vans. Because he owns trucks through his companies, Jim testified he could personally earn between $800 and $900 per day doing this work. (Filing 104 246:19-25). Using the lower number as a conservative measure, this equates to $4,000 per week assuming a five-day workweek. Assuming he worked 50 weeks, he could earn $200,000 driving truck over the course of a year. Thus, the bond should be increased to $200,000 to protect Jim from this damage in the event it is found the injunction were improperly issued.

Because of the preliminary nature of a preliminary injunction, and the significant harm that can result from them, to protect parties from the damage resulting from a wrongfully issued injunction, Rule 65 mandates that a party post an adequate surety. In the present case, this Court's injunction has temporarily, and could permanently, put two companies, JLD and Loyal, out of business (Filing 106, 670:21-671:1; 723:10-14), it would imminently require Daws, Inc. to pay $517,888.55 to JDT which would jeopardize is perfected security interest in those funds, and would prevent Jim Daws, personally, from earning a living driving a truck. By setting the bond at $480,000, the Court's current bond only takes into

account the harm that might befall JLD. To adequately protect the interest of these other parties and non-parties, the bond should be set as follows:

| JLD | $480,000.00 |
|---|---|
| Daws, Inc. | $517,888.55 |
| Loyal | $4,821,148.08 |
| Jim Daws | $200,000.00 |
| **Total** | **$6,019,036.63** |

## II. THE COURT SHOULD RECONSIDER AND VACATE ITS ORDER TO THE EXTENT IT REQUIRES JIM TO TRANSFER THE FUNDS IN THE ANB ACCOUNT TO JDT SUBJECT TO LIENS.

In its order, the Court ordered Jim to transfer the funds in the ANB account to JDT subject to all valid liens. (Filing 113 at ECF p. 15). This portion of the order is improper for multiple reasons. First, JDT's complaint never sought this relief. Second, JDT's motion for preliminary injunction did not seek this relief. Third, JDT has an adequate remedy at law for damages, if any, making injunctive relief unavailable. Further, the injunction does not maintain the status quo, but fundamentally alters Daws, Inc.'s rights to its perfected security interest under the UCC before a hearing is held that adjudicates the rights of the respective lienholders. Accordingly, this Court should vacate that portion of its order that requires Jim to transfer the funds held in the ANB account to JDT.

### A. In its complaint, JDT did not seek relief of an order to transfer the money in the ANB Account to JDT.

At a minimum, a preliminary injunction must be based on the claims pled in the complaint. "To be clear, the elements of a permanent injunction and the claim upon which the injunction rests must both be pled sufficiently to survive a Rule

12(b)(6) motion." *CRST Expedited, Inc. v. Swift Transportation Company of Arizona, LLC*, No. 17-CV-25-CJW, 2018 WL 2016275, at *6 (N.D.Iowa, Feb. 13, 2018) (unpublished). Nowhere in JDT's complaint does it allege that Daws, Inc. was wrongfully withholding money in the ANB account. (Filing 1). Without citing to any underlying claim alleged in the complaint that would entitle JDT to the relief it seeks, the Court merely stated that it found that ordering the return of the money was a "reasonable request." (Filing 113 at ECF p. 15). But the relief granted has to be tied to a claim. There is no tie here, let alone a request in the complaint for the transfer of funds held in the ANB account. The Court exceeded its authority by failing to tie its injunction to any claim alleged by JDT in its complaint. This lack of notice of a claim violates due process.

**B. JDT did not raise the return of the money in its motion.**

Not only did JDT fail to plead a claim that would entitle it to a return of the money held in the ANB account, it failed to seek this relief in its motion for preliminary injunction. JDT's motion for TRO/Preliminary Injunction did not ask the Court to order the return of the money in the ANB account. (Filing 17). JDT's opening briefs in support of its motion for a TRO (Filing 18) and Motion for a preliminary injunction (Filing 53) also did not ask the Court to order the return of the money held in the ANB account. In its brief in support of its motion for preliminary injunction, in a single paragraph JDT claimed that Jim was "wrongfully maintaining control of ANB's funds" but did not ask the Court to order Daws, Inc. to return the funds. (Filing 53 at ECF p. 22).

In its reply brief, JDT asked this Court to "prohibit Jim for further interfering with JDT's use of its funds in the ANB account to pay bills in the ordinary course, and to the extent necessary, to complete the paperwork needed for ANB to recognize Rick has having signature authority to replace former employees who left with Jim." (Filing 74 at ECF p. 20). Thus, even in its reply brief, JDT did not ask this Court to order Jim to actually transfer the funds in the ANB account to JDT. Even so, raising issues for the first time in a reply brief is too late. "Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time ... in a reply brief." *Foley Industries, Inc. v. Nelson*, 619 F.Supp.3d 920, 926 (W.D.Mo., 2022) (citing *Mahaney v. Warren County*, 206 F.3d 770, 771 n.2 (8th Cir. 2000)); *see also* *U.S. v. Vincent*, 167 F.3d 428, 432 (8th Cir. 1999) ("The argument is raised for the first time in Vincent's reply brief, so we need not consider it."); *Herd v. American Security Ins. Co.*, No. 06-4284, 2007 WL 603084, at *1 (W.D.Mo., Feb. 22, 2007)(unpublished) ("Ordinarily, Courts do not consider issues raised for the first time in a reply brief.").

The first time JDT requested that the Court order Jim to transfer the funds in the ANB account was during closing statements at the preliminary injunction hearing. By that time, the parties had already extensively briefed the issues that were before the Court, of which this was not one, and submitted their exhibit lists per this Court's order. Springing this request on Defendants for the first time during closing statements at the hearing did not give Defendants sufficient notice of this new claim so that Defendants could adequately respond. "The Federal Rules

seek to prevent trial by ambush…" *McGuire v. Cooper*, No. 8:16cv4, 2018 WL 3935053, at *2 (D.Neb., Aug. 16, 2018)(unpublished) (Bataillon, J.). Because JDT failed to properly raise this issue in a timely manner, the Court erred in granting this never-before requested relief.

**C. Injunctive relief is not appropriate to order the transfer of money because JDT has an adequate remedy at law and would fundamentally alter the status quo.**

Had JDT timely sought an order transferring the funds in the ANB account, Defendants could have addressed the request for relief which clearly runs afoul of established law. To the extent the Court's order requires the transfer of money from the ANB account to JDT, it is contrary to well-established, binding U.S. Supreme Court and Eighth Circuit precedent regarding preliminary injunctions. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07 (1959). "When there is an adequate remedy at law, a preliminary injunction is not appropriate." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *see also Dice Communications, LLC v. Zappolo*, 8:23cv155, 2023 WL 3847082, at *4 (D.Neb. June 23, 2023) (unpublished) (Bataillon, J.) ("Because there is an adequate remedy at law, Dice has not shown that the extraordinary relief of a preliminary injunction is necessary. The harm allegedly suffered by the plaintiff can be adequately compensated through an award of monetary damages."). "An inadequate remedy at law exists only where the injuries cannot be fully compensated through an award of monetary damages." *Liotta v. Rapid Link, Inc.*, No. 8:09cv411, 2010 WL 323897, at

*2 (D.Neb. Jan. 20, 2010) (unpublished) (citing *General Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

To the extent that JDT claims that Daws, Inc. is wrongfully holding JDT's funds in the ANB account, it clearly has an adequate remedy at law—a common law legal claim for conversion seeking damages. "Tortious conversion is 'any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights.'" *Barelmann v. Fox*, 478 N.W.2d 548, 558, 239 Neb. 771, 786 (1992) (quoting *PWA Farms, Inc. v. North Platte State Bank*, 371 N.W.2d 102, 105, 220 Neb. 516, 519 (1985)). That JDT has not even pled a claim for conversion further supports the conclusion that JDT did not properly raise this issue, nor seek this relief, in its complaint.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Lackey v. Stinnie*, 145 S.Ct. 659, 662 (2025) (syllabus) ("The purpose of a preliminary injunction is to preserve the status quo until a trial can occur."). Here, by ordering that Jim transfer the funds in the ANB account to JDT subject to any liens, the Court is not maintaining the status quo. Rather, it is deciding an issue that has not been pled, and has not been litigated. Specifically, there is a legal dispute between JDT, UBT, and Daws, Inc. as to who has the right to the funds held in the ANB account. This legal dispute cannot properly be resolved through the equitable relief of an injunction. Until this dispute

is resolved, Daws, Inc. was holding the funds in the ANB account in trust pursuant to its obligations under the Subordination Agreement.

Both UBT and Daws, Inc. have security interests in the funds in the ANB account. UBT claims a right to the funds under a UCC filing statement (Filing 119-1 at ECF p. 5) and the Subordination Agreement (Filing 119-1 at ECF p. 18). Under Section 12 of the Subordination Agreement, Daws, Inc. is to hold the funds in trust. (Filing 119-1 at ECF p. 21).

Daws, Inc. has a right to the funds under the pledge agreement. (Filing 62-12). The Pledge Agreement provides:

> "In order to secure Pledgor's [JDT's] obligations under the Note (the 'Obligations') each Pledgor hereby assigns and pledges to Secured Party [Daws Inc.], **and grants Secured Party a lien on an security interest in and to the following** ('Pledged Collateral') (i) all of the membership interest in Jim Daws Trucking, LLC, together with all profit distributions, **cash**, instruments, and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Collateral.

(Filing 62-12)(emphasis added).

During the hearing, JDT's counsel argued that the pledge agreement only applied to cash from distributions made by JDT, and JDT hadn't made any distributions. But the clear text of the Pledge Agreement belies this argument. The Pledge Agreement granted Daws, Inc. a security interest in the Pledged Collateral which is defined to include JDT's "cash." JDT's owner, Rick Fernandez, admitted in writing that this pledge agreement gives Daws, Inc. control of the money in the ANB account to secure the $4 million JDT borrowed from Daws, Inc. (Filing 63-5).

In addition to the pledge agreement, Daws, Inc. also has a secured interest in the funds in the ANB account through a UCC filing it made on October 17, 2017 (Filing 119-1 at ECF p. 3).

Further, as a possessor in control of the funds, Daws, Inc. also has a secured interest in the funds in the ANB account pursuant to the UCC. *See* Neb. U.C.C. § 9-312(b)(1) ("a security interest in a deposit account may be perfected only by control under section 9-314); Neb. Rev. Stat. § 9-314(b) ("A security interest in deposit accounts…is perfected by control under section 7-106, 9-104, 9-105, or 9-107 when the secured party obtains control and remains perfected by control only while the secured party retains control."). As the saying goes, possession is 9/10ths of the law.

Whether UBT's and Daws, Inc.'s secured interests are valid, and their relative priority, is a legal determination that has not yet been litigated. *See Allied Mut. Ins. Co. v. Midplains Waste Management, L.L.C.*, 612 N.W.2d 488, 495, 259 Neb. 808, 814 (Neb., 2000) (analyzing lien priority dispute as a question of law). For example, Section 15 of the Subordination Agreement provides that "This Agreement will terminate only after: (1) the Borrower has fully and indefeasibly paid the Senior Debt principal loan balance down to $3,500,000; and (ii) the Borrower has performed on all other debt, liabilities and obligations owed to Lender in a timely manner." (Filing 119-1 at ECF p. 21). Defendants have not had the opportunity to perform any discovery as to whether these conditions have been met such that the subordination agreement was terminated. The Court's injunction usurps the legal process by ordering Jim to turn money that is in Daws, Inc.'s possession and control

over to JDT. This order significantly impairs Daws, Inc.'s perfected security interest under the UCC as the possessor in control of the deposit accounts.

Under the Court's order, Jim is to transfer the funds in the ANB account subject to liens. But as set forth above, Daws, Inc. has a valid lien on the funds. Thus, to protect its lien, any check issued to transfer the funds would also have to be payable to UBT and Daws, Inc. to protect their respective liens. *See Midwest Neurosurgery, P.C. v. State Farm Ins. Companies*, 673 N.W.2d 228, 237, 12 Neb.App. 328, 339 (Neb.App. 2004) ("In issuing a check payable to both Lundin and Midwest, it did not impair Midwest's lien so as to incur liability under *West Neb. Gen. Hosp. v. Farmers Ins. Exch.,* 239 Neb. 281, 475 N.W.2d 901 (1991).")

Daws, Inc. has been holding the amounts in the ANB account in trust in accordance with the Subordination Agreement. (Filing 119-1 at ECF p. 21). Defendants respectfully request that to maintain the status quo that rather than order that the funds be transferred to JDT, or paid into the Court which may also significantly and irreversibly change Daws, Inc.'s perfected security interest as possessor and controller of the funds in a deposit account, that the Court order Defendants to continue to hold the funds in trust at ANB pending resolution of the legal issue of to whom the funds should be paid. That way, the assets are preserved, all lienholders are protected, and Daws, Inc. does not lose any rights under the UCC it currently has as the controller of the funds.

## CONCLUSION

On April 11, 2025, JDT posted a $480,000 bond (Filing 117), which has put a non-party company out of business and left its drivers out of work. The amount of the bond is clearly inadequate to protect the parties who are enjoined in the event the injunction is found to be wrongfully entered. The amount of the bond must be increased for the injunction to continue to be effective.

The Court's injunction requiring Defendants to turn over more than a half a million dollars to JDT by April 22, 2025, further demonstrates the inadequacy of the $480,000 bond. This relief was never sought in the complaint, JDT's motion, nor in its briefing.

Had this relief been timely requested before the hearing, Defendants could have alerted the Court to the fact that JDT has an adequate remedy at law through a legal claim for conversion making injunctive relief unavailable. Because JDT has an adequate remedy at law, injunctive relief is not appropriate. This Court should vacate that part of its order requiring Defendants to transfer the money held in the ANB account to JDT, and instead order Defendants to continue to hold the funds in trust at American National Bank, as it has for many months, until a trial on the merits can be held.

Because of the serious consequences the injunction has on non-parties, and the looming April 22, 2025 deadline to turn over the funds, Defendants request an expedited hearing on this motion.

DATED this 14th day of April, 2025.

DAWS, INC., JAMES R. DAWS,
LANA R. DAWS, DAWS TRUCKING, INC.
and COLUMBUS TRANSPORTATION &
LOGISTICS, LLC, Defendants

BY: /s/ Timothy J. Thalken
David C. Mullin, #21985
Timothy J. Thalken, #22173
Kristin M. Nalbach, #27125
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102-2663
(402) 341-6000
(402) 341-8290 - fax
dmullin@fraserstryker.com
tthalken@fraserstryker.com
knalbach@fraserstryker.com
ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF COMPLIANCE**

Pursuant to NECivR 7.1(d), counsel certifies that this brief contains 4,535 words including all text, captions, headings, footnotes, and quotations according to the word count function of Microsoft Word 365.

/s/ Timothy J. Thalken

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of April, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ Timothy J. Thalken

3385229.6