IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JIM DAWS TRUCKING, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DAWS, INC., JAMES R. DAWS, LANA R. DAWS, DAWS TRUCKING, INC., and COLUMBUS TRANSPORTATION & LOGISTICS, LLC,<br><br>　　　　Defendants. | Case No. 4:24-cv-03177 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO INCREASE SURETY BOND AND TO RECONSIDER SCOPE OF INJUNCTION**

　　　　　　　　　　　　　　　　　　Prepared and submitted by:

　　　　　　　　　　　　　　　　　　Andre R. Barry #22505
　　　　　　　　　　　　　　　　　　Henry L. Wiedrich #23696
　　　　　　　　　　　　　　　　　　Madeline C. Hasley #27870
　　　　　　　　　　　　　　　　　　CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, L.L.P.
　　　　　　　　　　　　　　　　　　233 South 13th Street
　　　　　　　　　　　　　　　　　　1900 US Bank Building
　　　　　　　　　　　　　　　　　　Lincoln, NE 68508
　　　　　　　　　　　　　　　　　　(402) 479-6900
　　　　　　　　　　　　　　　　　　abarry@clinewilliams.com
　　　　　　　　　　　　　　　　　　hwiedrich@clinewilliams.com
　　　　　　　　　　　　　　　　　　mhasley@clinewilliams.com

April 17, 2025

Plaintiff Jim Daws Trucking, LLC ("JDT" or "Daws Trucking") submits this Brief in opposition to Defendants' Motion to Increase Surety Bond and Reconsider Scope of Preliminary Injunction.

## INTRODUCTION

On February 26, February 27, February 28, and March 12, 2025, a Preliminary Injunction Hearing was held in this matter. On April 8, 2025, after each party had a full opportunity to present evidence and argument, the Court granted Plaintiff's Motion for Preliminary Injunction and set a bond in the amount of $480,000 (the "Order"). [Filing No. 113.] JDT posted bond on April 11, 2025. [Filing No. 117.]

Defendants have filed a Motion to Increase Surety Bond and Reconsider Scope of Preliminary Injunction [Filing No. 118], seeking to raise the required security higher than it is currently set and to avoid the obligation to transfer funds which Jim admits belong to JDT. Defendants' arguments are too little, too late. Their new arguments in support of an increased bond could have been raised at the preliminary injunction hearing and were not. Defendants are foreclosed from raising those arguments now. Even if Defendants were not foreclosed, the evidence the offer does not come close to supporting their request for an increased surety bond. Defendants likewise ask the Court to reconsider its ruling requiring them to restore the funds in the ANB account belonging to JDT. Defendants argue Daws, Inc. has a security interest in those funds under a Pledge Agreement signed not by JDT but by Rick and Ricky Fernandez. The Court has already correctly rejected this argument.

2

Yesterday a Loyal truck and trailer were observed hauling freight from Loyal's location in Milford, in violation of the Order. It is currently unknown to what extent other Loyal trucks were operating after JDT posted security last Friday. Today, Defendants and Loyal have claimed Loyal has secured alternate financing, that it fully paid Jim under the redemption agreement today,[1] and that it has resumed operations. According to Jim's declaration filed with the Court, the final payment to Jim was made today. Defendants and Loyal have not provided complete documents or details regarding this transaction, and JDT does not concede this it cures the ongoing violations of the noncompete and preliminary injunction. However, while Loyal is operating, there is no basis to increase the bond to account for any alleged harm to it.

## ARGUMENT

**A.     Defendants provide no basis to increase the security required.**

"The amount of the bond rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion." *Stockslager v. Carroll Elec. Co-op. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976). Indeed, the court may require security in a nominal amount where the plaintiff has shown a strong likelihood of success on the merits and the risk of harm to the enjoined party is thus remote. *Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 520–21 (W.D.N.C. 1999). Here, of course, the Court has already required more than a nominal bond.

---

[1] In Defendants' Brief, they claim Jim was paid yesterday, but Jim admits payment was not made in full until today, which impacts whether Loyal was violating the injunction on April 16.

After a four-day hearing, this Court carefully considered the evidence presented by both parties and set the bond at $480,000. Defendants had months to prepare and present a calculation of bond it thought would be appropriate. They largely failed to do so. As the Court observed in setting the bond, there was "very little evidence in the record regarding Loyal's income or the amount of income Jim's other businesses generate from supporting Loyal's operations." [Filing No. 113 at 16.] Defendants could easily have offered such evidence if they had wished. On the last day of the hearing, March 12, 2025, when the Court asked Defendants for their position on bond, Defendants did not suggest any specific figure or figures. After failing to present evidence to support a bond or a clear request for security in a specific amount, Defendants now ask the Court to consider new evidence and arguments not raised before.

### 1. There are no changed circumstances to support an increase.

"Modifying or dissolving a preliminary injunction 'is proper only when there has been a change of circumstances … that would render the continuance of the injunction in its original form inequitable.'" *Ahmad v. City of St. Louis*, 995 F.3d 635, 640 (8th Cir. 2021) (*citing Favia v. Indiana Univ. of Pennsylvania*, 7 F.3d 332, 337 (3d Cir. 1993)).

This Court has refused to grant the relief Defendants seek here—to increase the amount of a bond after the issuance of an injunction, based on evidence and arguments that could have been raised before the injunction issued. In *Lite-Netics, LLC v. Nu Tsai Cap., LLC*, Judge Buescher noted that the request to increase the bond was essentially a motion for reconsideration:

4

> Lite-Netics failed to challenge the amount of the bond after the TRO issued, in the subsequent briefing of the Motion for Preliminary Injunction, or during the hearing on the Motion for Preliminary Injunction. It is simply too late for Lite-Netics to reconsideration of the bond amount now in the guise of a motion for a stay pending appeal.

*Lite-Netics, LLC v. Nu Tsai Cap. LLC*, No. 8:22CV314, 2022 WL 18106436, at *8 (D. Neb. Nov. 10, 2022). Other courts have likewise rejected attempts to offer new evidence and arguments after the issuance of an injunction. *Hi-Tech Pharms., Inc. v. Nutrition Res. Servs., Inc.*, No. 1:23-CV-5536-TCB, 2024 WL 2158708, at *6 (N.D. Ga. Apr. 12, 2024) ("Both parties had the opportunity to discuss their arguments at the preliminary injunction hearing, and it is not the Court's fault that Hi-Tech did not argue for a specific bond amount.")

The Order provides the amount of the bond "may be raised or lowered as the case progresses upon an appropriate motion filed by the parties." [Filing No. 113 at 16.] This language, however, does not change the legal standard for seeking modification of a bond. Under *Ahmad*, there must be a "change of circumstances" which "would render the continuance of the injunction in is original form inequitable." *Ahmad*, 995 F.3d at 640. Defendants do not claim, and have not shown, that circumstances have changed in any material way since the injunction issued.

2.  **There is no basis to support additional security for Loyal.**

Loyal based its request for an increase in its bond on an alleged loss of revenue that would be caused by complying with the injunction. As Defendants concede, there is no basis to increase the security for Loyal.

5

That said, despite requests from JDT, Loyal has not provided any details or documentation to show who provided the financing to Loyal. If it turns out Jim was involved in the effort to secure alternate financing, it may well show an additional violation of Jim's noncompete and the injunction. Similarly, if JLD's assets are being used in Loyal's operation, without full payment under its redemption agreement, or with financing brokered by Jim, that would involve additional violations of the noncompete and preliminary injunction. And by the same token, if JLD's assets are being used in this way, it would support a reduction of the existing security.

3.  **There is no evidence to support additional bond for Jim.**

With respect to Jim, Defendants request a bond in the amount of $200,000, based on the assumptions that he would otherwise be driving a trucking, making $800 to $900 per day, five days a week, for 52 weeks. This request flies in the face of Jim's own testimony. Jim testified multiple he intended to retire if he could not buy back JDT. "If I couldn't get it bought back, I was going to retire." [Filing No. 109 at 61:19.] "That I was going to retire October." [*Id.* at 61:2.] "Well, I was just going to be retiring." [*Id.* at 71:7.] For her part, Lana also testified that she and Jim were "getting to the age where we wanted to be able to exit for retirement purpose—to start enjoying life, things that we worked hard for both of our careers. It was just—we just felt it was time." [Filing No. 110 at 532:1–7.] If the Court credited Jim's statement that he would like to a truck "on occasion" [Filing No. 22-1 at 13], it does not come close to showing

that he would drive five days a week for fifty weeks a year as his attorneys now claim.

Jim cannot now claim that he intended to continue driving a truck five days a week. Indeed, he hasn't: Jim offers no declaration or other admissible evidence that he plans to drive a truck five days a week for an entire year and relies instead on the arguments of his attorney.

Any request for a bond from Jim should also be discounted by his acknowledgement that he believed the noncompete was enforceable when he signed it. [Filing No. 109 at 27:17.] As the Court has already held, "any harm to Defendants is a monster of their own creation." [Filing No. 113.] "The fact that they may lose some opportunity because of an injunction's issuance, due to their own previous misconduct, is not a relevant harm." *Brightview Grp., LP v. Teeters, 441 F. Supp. 3d 115, 145 (D. Md. 2020)*. The $1,000 bond JDT already posted in connection with the TRO is more than adequate to cover any potential harm to Jim personally.

### 4. No additional security is required for the ANB account.

There is also no basis to require JDT to pay a bond for the funds required to be restored to it. Under Rule 65(c), security must be posted "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In this case, no bond is required, because Daws, Inc. has failed to show it has any right to the funds in the ANB account, and thus it could not suffer harm as the result of an injunction.

The Tenth Circuit considered this issue in *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009), in which the trial court ordered the transfer of title to various oil and gas properties on a motion for preliminary injunction. On appeal, the defendant argued that the court erred in failing to require the plaintiff to post bond upon issuance of the injunction. *Id.* at 1215. The Tenth Circuit rejected that argument, finding that the magistrate judge properly based his decision on the lack of proof that the defendant had any interest in the properties. *Id.*

The same analysis applies here. As the Court has ruled, the funds in the ANB account belong to JDT, not to Jim. As Jim's lawyer stated, "Jim agrees all the funds in the ANB account belong to the LLC; none of the funds are due to Jim or any other entity." [Filing No. 75-1.] Defendants now argue that Daws, Inc. has an interest in the funds under a Pledge Agreement that was signed by Rick and Ricky. But in that agreement, Rick and Ricky pledged their membership interests in JDT. They could not pledge the money in the ANB account, because it did not belong to them. It belonged (and belongs) to JDT. While they are members of JDT, they did not sign on behalf of JDT. They signed individually. Because Daws, Inc. has no interest in the ANB funds that Defendants have wrongfully withheld, there is no requirement for JDT to post security for the injunction requiring their return.

**B.  Defendants provide no basis for the Court to reconsider its ruling as to the funds in the ANB account.**

This Court addressed motions for reconsideration in *Lite-Netics*, *supra*, noting the governing law in the Eighth Circuit:

8

> "A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015). Nor may a motion for reconsideration serve to introduce evidence that the movant could have produced before the district court decided the prior motion. *Id.* at 922; *see also Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (stating that motions for reconsideration cannot be used to introduce new evidence or legal theories that "could have been adduced during pendency of the summary judgment motion" (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987))). A district court does not abuse its discretion in denying a motion for reconsideration used for such an "impermissible purpose." *Julianello*, 791 F.3d at 923.

*Lite-Netics*, 2022 WL 18106436, at *8. All the substantive and procedural arguments Defendants make in support of their Motion for Reconsideration were available to them at the preliminary injunction hearing. The motion should be denied for this reason alone.

Defendants' argument that they were not on notice of the ANB account issue rings particularly hollow. Defendants complain JDT did not include allegations regarding the ANB account in its Complaint filed on October 4, 2024. But JDT did not have the relevant evidence until ANB responded to a subpoena on January 9, 2025. JDT described Jim's ongoing control of the funds in that account as a breach of his noncompete in its Brief in Support of its Motion for Preliminary Injunction filed the next day. [Filing No. 53 at 22.] Defendants were obviously aware of the issues raised by the ANB account, because they included the Pledge Agreement with which they try to justify Jim's control over the account with their evidence and addressed the ANB account in their opposing brief. [Filing No. 68 at 13.]

9

In its Reply Brief, JDT also listed evidence showing that the funds in the ANB account belong to it, not Jim or any of his entities, and the ongoing, irreparable harm that Jim is causing JDT by wrongfully holding that money—depriving JDT of the operating capital it needs to remain in business. [Filing No. 74 at 18.] In that brief, JDT also asked the Court to "prohibit Jim from further interfering with JDT's use of its funds in the ANB account to pay bills in the ordinary course, and to the extent necessary, to complete the paperwork needed for ANB to recognize Rick has having signature authority to replace former employees who left with Jim." [*Id.* at 20.]

Defendants complain that this request came in a Reply Brief, but the request was made almost three weeks before the preliminary injunction hearing began and over a month before it concluded. Defendants also complain that the request in the Reply Brief—for Rick to be given control over the ANB account—was different from transferring the funds to UBT. This change came about largely to satisfy the concern raised during the hearing about UBT's prior security interest in the funds. For present purposes, it is a distinction without a difference: transferring the funds to UBT gives JDT what it sought going into the hearing—the ability to use the funds in the ANB account to pay its bills in the ordinary course, as those funds were used before Jim left JDT. The distinction between these requests has no bearing on what Defendants really want—to keep control of the funds and ensure that JDT cannot use them to pay its bills.

10

### C. The Court correctly ordered Daws, Inc. to restore the funds to JDT.

If the Court does consider the additional evidence offered by Defendants, *i.e.*, the UCC Filing Statement, it will see it provides no basis to reconsider the Court's ruling.

In trying to hold onto the money in the ANB account, Defendants ignore the testimony of Jim and the written admissions of his attorney, Julie Karavas. Jim testified that all the funds in the ANB account belong to JDT, and that none of the funds are due to Jim or any other entity. [Filing No. 109 at 90:2–11.] He also testified that the ANB account was used to pay expenses in the ordinary course and the money that came into that account came from customers who were paying JDT. [Filing No. 110 at 331:16–21.] Jim also admitted none of the money in the ANB account was earmarked for a profit distribution to Rick or Ricky. [*Id.* at 332:20–23.] He also admitted he knew that, by instructing ANB to put a hold on the account, he was hurting JDT and its ability to pay bills. [*Id.* at 333:1–8.]

As they did at the hearing, Defendants try to overcome these admissions by pointing to the Pledge Agreement. They also now add evidence and arguments regarding a UCC Filing Statement. These are recycled arguments that the Court properly rejected in its Order.

Contrary to Defendants' arguments, the Pledge Agreement does not give Daws, Inc. a security interest in JDT's funds. The "Background" of the Pledge Agreement makes its purpose clear: "to grant to the Secured Party a continuing lien on and security interest in all of the **membership interest** in Jim Daws

11

Trucking, LLC." [Filing No. 62-12 at 1 (emphasis added).] The Pledge Agreement does not cover cash owned by JDT. [*Id.*] Even if it did, it was not signed by JDT. It was signed by Rick and Ricky in their individual capacities. Defendants have not produced any document signed by JDT giving Daws, Inc., Jim, or any person associated with Jim as security interest in JDT's operating funds.

The UCC Filing Statement Defendants have now produced—which they could have offered at the preliminary injunction hearing—does not establish any broader security interest. A security interest is created by a security agreement, which must include among other things, the debtor's signature. Neb. UCC § 9-203. The UCC Filing Statement offered by Defendants also was not signed by JDT. [Filing No. 119-1 at 3.] Thus, the Filing Statement did not create and does not provide evidence of any security interest in funds owned by JDT.

Defendants now argue that JDT has an adequate remedy at law via a claim for conversion. A motion for reconsideration is not available to raise new arguments that could have been raised earlier. Defendants' argument that their capable counsel was somehow unable to raise issues relating to an adequate remedy at law, which is fundamental to the concept of injunctive relief, is not persuasive, particularly when the issue of the ANB account funds was raised in both of JDT's prehearing briefs and repeatedly in evidence at the hearing.

In any event, as the Court has already determined, JDT does not have an adequate remedy at law. The status quo, at the last time of relative peace between the parties, was that the funds in the ANB account were available to JDT to pay bills in the ordinary course. As this case has gone on, the funds in the ANB

account have not stayed the same but have increased as JDT has continued to provide services to customers and customers have continued to pay JDT's bills. Defendants' actions have disturbed the status quo by starving JDT of the cash it needs to operate its business. Without the funds to pay its bills, JDT faces the loss of its business before this litigation reaches its end, which appears to be the very goal of Defendants' actions. This constitutes irreparable harm. *See Transamerica Ins. Fin. Corp. v. N. Am. Trucking Ass'n, Inc.*, 937 F. Supp. 630, 635 (W.D. Ky. 1996) ("[I]rreparable injury may still exist where the moving party's business cannot survive absent a preliminary injunction."); *RoDa*, 552 F.3d at 1211 (holding that the ongoing interference with plaintiff's business interests caused by the defendant's wrongful appropriation of property constituted irreparable harm).

    **D.**    **No change to the Order should be made on behalf of Defendants until full details have been disclosed regarding the alleged buyout of Jim.**

It is a fundamental rule that "one seeking equitable relief must do equity and come into court with clean hands." *Primerica Life Ins. Co. v. Woodall*, 975 F.3d 697 (8th Cir. 2020) (citation omitted). The rule does not "demand that its suitors shall have led blameless lives, but it does require that they shall have acted fairly in the matters at hand." *Id.* (quoting *Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*, 324 U.S. 806 (1945)) (cleaned up). The Order binds not only Defendants but also anyone acting in concert with them, which at least up until Wednesday, April 16, included Loyal.

13

At the same time Defendants sought a modification of the Order for the benefit of the parties bound, Loyal and others were violating the same Order, by loading and shipping freight on flatbed trailers:





As shown in the Declaration of Robert Toovey, at least one Loyal truck pulling a Loyal trailer left Milford on Wednesday, April 16, fully loaded with metal poles or posts. The trailer was clearly outbound, headed away from the real estate Loyal leases from J&L, and turning east onto Interstate 80. [Declaration of Robert Toovey, Filing No. 125-1, ¶¶ 4–15, Ex. A, Ex. B.] In their Supplemental Brief, Defendants claim Loyal paid the full amount to Jim on Wednesday, April 16. [Filing No. 123 at 1.] But Jim's declaration shows Loyal did not pay him fully until April 17. [Filing No. 122-1 at 1.]

While Loyal claims it has now paid Jim in full, Defendants' statements as to their business dealings and operations in this case have omitted material information in the past. It remains unclear who loaned Loyal the money to buy Jim out, whether similar transactions occurred with respect to JLD, what role Jim played in arranging the financing, what many of the terms of the financing were, and what communications took place between Jim and Loyal, directly or through counsel, to make these arrangements. It is also unclear what role JLD's assets are playing in Loyal's resumed operations. No additional security should be required, or other change to the Order made, until there has been complete disclosure of all documents related to Loyal and JLD's operations, finances, and communications with Jim and his attorneys, since the issuance of the original TRO on October 30, 2024, and an opportunity to question all participants under oath.

## CONCLUSION

For the foregoing reasons, JDT respectfully requests that the Court deny Defendants' Motion to Increase Surety Bond and to Reconsider Scope of Injunction.

>                                    JIM DAWS TRUCKING, LLC,
>                                    Plaintiff
>
> By:   s/ Andre R. Barry
>       Andre R. Barry #22505
>       Henry L. Wiedrich #23696
>       Madeline C. Hasley #27870
>       CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, L.L.P.
>       233 South 13th Street
>       1900 US Bank Building
>       Lincoln, NE 68508
>       (402) 479-6900
>       abarry@clinewilliams.com
>       hwiedrich@clinewilliams.com
>       mhasley@clinewilliams.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the word count of this brief complies with local rule NECivR 7.1(d). The word-count function of Microsoft Word M365, states that this brief, inclusive of all text, contains 4,011 words. No generative artificial intelligence program was used in drafting this brief.

>                                    s/ Andre R. Barry
>                                    Andre R. Barry

## CERTIFICATE OF SERVICE

I, Andre R. Barry, hereby certify that on April 17, 2025, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Nebraska using the CM/ECF system, which sent notification of such filing to all registered case participants.

>                                    s/ Andre R. Barry
>                                    Andre R. Barry

4923-4344-0695, v. 1