IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JIM DAWS TRUCKING, LLC, | ) | CASE NO. 4:24-CV-3177 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' REPLY BRIEF** |
| | ) | **IN SUPPORT OF MOTION TO** |
| DAWS, INC.; JAMES R. DAWS; LANA R. | ) | **INCREASE SURETY BOND** |
| DAWS; DAWS TRUCKING, INC.; and | ) | **AND VACATE ORDER** |
| COLUMBUS TRANSPORTATION & | ) | **REQUIRING TRANSFER** |
| LOGISTICS, LLC, | ) | **OF THE FUNDS IN THE** |
| | ) | **ANB ACCOUNT** |
| Defendants. | ) | |

## INTRODUCTION

In setting the bond in this case at $480,000, this Court relied solely on the damages that JLD would incur if it were prevented from operating. But the injunction does not just affect JLD. It prohibits Jim Daws ("Jim") from even driving a truck and requires Daws, Inc. to transfer over half a million dollars to JDT. The existing bond does not adequately protect Defendants from these potential damages.

JDT does not argue that the amount of the existing bond is adequate. Rather, it claims that Defendants should have raised these issues at the hearing. But JDT does not dispute that it did not request the transfer of funds from the ANB account until it made its closing statement, springing this new request for relief on Defendants at the last minute. Moreover, in its closing argument Defendants suggested that the sweeping injunction JDT requested that would put multiple companies out of business warranted a multi-million dollar bond. Defendants are on

record at the time of the hearing that $480,000 would be an inadequate amount to secure the injunction.

Finally, JDT does not claim that it lacks an adequate remedy at law with respect to the injunction's order that Defendants transfer money to JDT—clearly a legal remedy. Again, JDT simply claims that Defendants should have raised this issue at the hearing, when JDT sprung this requested relief on Defendants for the first time in its closing statement. Defendants opposed this request for relief at the hearing and did not waive any arguments.

## ARGUMENT

I. **THAT THE EXISTING BOND DOES NOT ADEQUATELY PROTECT THE ENJOINED PARTIES IS A GOOD REASON TO INCREASE THE AMOUNT OF THE BOND.**

JDT claims that a preliminary injunction may only be modified where there is a change in circumstances. (Filing 124 at ECF p. 4). There is contrary authority in the Eighth Circuit that rejects this strict standard. "In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, **or for any other good reason**." *Movie Systems, Inc. v. MAD Minneapolis Audio Distributors, a Div. of Smoliak & Sons, Inc.*, 717 F.2d 427, 430 (8th Cir. 1983) (emphasis added). Indeed a District Court has inherent authority to modify its own interlocutory orders. *See, e.g., Vosdingh v. Qwest Dex, Inc.*, No. 03-4284, 2005 WL 1323007, at *1 (D.Minn., June 2, 2005) ("Since this Court owes no deference to itself and knows it makes

2

mistakes, motions to reconsider will be granted and a change made when convinced an error has been made, manifest or not.")

A bond must be adequate to protect parties enjoined by a preliminary injunction. "Although we allow the district court much discretion in setting bond, we will reverse its order if it abuses that discretion due to some improper purpose, or otherwise fails to require an adequate bond or to make the necessary findings in support of its determinations." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991). The bond in this case is inadequate.

### A.  The existing bond does not adequately protect Jim from his loss of income from driving.

The evidence in the preliminary injunction hearing established that Jim could earn between $800-$900 per day from driving a truck, and that he turned down jobs hauling seed corn in a dry van earning this amount because of fear that JDT would take further action against him under the non-compete. (Filing 104 245:13-246:25).

JDT claims that "The $1,000 bond JDT already posted in connection with the TRO is more than adequate to cover any potential harm to Jim personally." (Filing 124 at ECF p. 7). But $1,000 would essentially only cover one day's revenue which Jim has testified he has already foregone. It does not take into account any future lost revenue from driving. A $1,000 bond is clearly inadequate.

JDT also suggests that $1,000 is adequate because Jim was only going to drive a truck occasionally. That significantly understates the evidence. Jim is a trucker at heart. He didn't sit in his office and run spreadsheets on his laptop.

3

When he owned Daws Trucking he would drive about 50,000 miles per year. (Filing 104 201:24-25). When he was CEO of JDT, he continued to drive approximately 100 days per year, earning $2.75/mile in addition to his salary. (Filing 105 303:18-20). Driving 50,000 miles at $2.75/mile equals $137,500 in revenue. It's reasonable to conclude that Jim would continue his practice of driving now that he no longer has the burden of running a trucking company.

Jim testified that since leaving JDT he has turned down opportunities hauling seed corn in a dry van, a business JDT does not compete in. (Filing 104 246:5-9). He testified he had the opportunity to drive earning $800 to $900 per day as much as he wanted in a year. (Filing 104 246:21-25) Because of JDT's aggressive litigiousness over the non-compete, Jim turned down these opportunities out of fear that taking these jobs would get him in "trouble." (Filing 104 245:24-18).

Regardless of whether Jim would drive five days a week for 50 weeks a year, given his history, it's reasonable to conclude that he would drive more than one day per year. Thus, $1,000 is clearly inadequate to protect Jim in the event the injunction is determined to have been wrongfully issued. A conservative course would be to increase the bond to $137,500 to match the 50,000 miles Jim historically drove while also juggling his responsibilities as the owner of Daws Trucking. Wanting to retire from the day-to-day management of Daws Trucking doesn't mean that Jim wanted to retire from driving a truck which the Court's injunction now prohibits him from doing.

## B. The bond should be increased to cover the amount of money transferred from the ANB account.

The existing bond provides absolutely no security for that portion of the order that requires Defendants to transfer over half a million dollars to JDT. The math here is simple. If the Court is going to order Defendants to pay $517,888.55 in cash to JDT, JDT should be ordered to post bond in that amount.

JDT does not dispute that it did not request that these funds be transferred until it first made that ask in its closing statements. It claims it didn't have the relevant evidence to raise the issue until January 9, 2025. (Filing 124 at ECF p. 9). This is not credible considering that JDT's own evidence shows the parties were discussing the ANB account in September 2024. (Filing 75-1). Clearly, JDT knew that the funds in the ANB account were in dispute long before January 2025. JDT is asking this Court to believe that between October 2024 and January 2025, it had no idea that Daws, Inc. was claiming a security interest in the funds in the ANB account due to JDT's default on its promissory note, while also claiming that Daws, Inc. was preventing JDT from using the funds in the account during that same timeframe. Had JDT paid off the Note, this would be a completely different situation.

Citing to *Lite-Netics, LLC v. Nu Tsai Capital LLC*, No. 8:22cv314, 2022 WL 18106436, at *8 (D.Neb. Nov. 10, 2022), JDT argues that it is too late to reconsider the amount of the bond. But the facts and procedure of *Lite-Netics* are distinguishable.

5

*Lite-Netics* involved a motion to stay enforcement of an injunction pending appeal which the court treated as "in essence seeking reconsideration of the amount of the bond." *Id.* at *8. The Court set a $1,000 bond after a TRO was issued. But at no time before the preliminary injunction was issued, did the enjoined party challenge the amount of the bond or argue for a competing amount. The Court held it was too late to raise these arguments for the first time under the guise of a motion to stay pending appeal.

> Lite-Netics failed to challenge the amount of the bond after the TRO issued, in the subsequent briefing of the Motion for Preliminary Injunction, or during the hearing on the Motion for Preliminary Injunction. It is simply too late for Lite-Netics to reconsideration of the bond amount now in the guise of a motion for a stay pending appeal.

*Id*. In contrast, Defendants here have challenged the amount of the bond at every stage of the proceedings requesting that if an injunction were issued that would effectively shut down multiple companies causing drivers and others to lose their jobs that a multi-million dollar bond would be warranted. *See, e.g.,* (Filing 73) 24:11-25:5)(requesting$150,000 bond for the issuance of the TRO which should be increased significantly if a preliminary injunction is issued).

JDT argues that "no bond is required because Daws, Inc. has failed to show it has any right to the funds in the ANB account and thus it could not suffer harm as the result of an injunction." (Filing 124 at ECF p. 7). But the evidence shows that there is a dispute as to whether the funds in the ANB account are owed to Daws, Inc. and whether Daws, Inc. is properly holding them. For example, JDT cites to an e-mail from Jim's lawyer dated September 25, 2024, in which she acknowledged that the money in the Daws, Inc. ANB account belongs to JDT. (Filing 75-1). But

that e-mail was written *before* October 1, 2024, when JDT stopped paying amounts due on its promissory note to Daws, Inc. thereby defaulting on its obligations under the Note. (Filing 119-1 at ECF p.16) Upon JDT's default, whether Daws, Inc. has a perfected security interest in the funds already possessed by Daws, Inc. in a Daws, Inc. bank account is a legal dispute that is not the proper subject of injunctive relief.

JDT argues that the Pledge Agreement doesn't give Daws, Inc. a security interest because the pledge is signed by Rick and Ricky and not JDT. (Filing 124 at ECF p. 12). But Rick and Ricky are the sole members of JDT and they agreed in the Pledge Agreement that they were assigning to, and granting to Daws, Inc., "a lien on and security interest in" the "Pledged Collateral" which included "all of the membership interest in Jim Daws Trucking, LLC, together with all profit distributions, **cash**, instruments, and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Collateral." (Filing 62-12)(emphasis added). The Pledge Agreement expressly provides that Daws, Inc. has a lien on and security interest in JDT's cash. This was Rick's understanding when he wrote that under the pledge agreement, Daws, Inc. would control JDT's cash until JDT paid off the promissory note. (Filing 63-5) ("Membership interest pledge Ricky and I as (Jim Daws Trucking LLC) lets (Daws Inc.) Jim Daws personally control the money.")

For example, suppose JDT had continued to pay its monthly Note installments to Daws, Inc. by paying the amounts due into the Daws, Inc. ANB account. Daws, Inc. would have a right to keep those funds as a completed loan

7

payment. When JDT defaulted on its Note on October 1, 2024, Daws, Inc. declared a default of the Note, and accelerated the full amount of the debt. Daws, Inc. perfected its interest in the funds in the account as the possessor and controller of the deposit account.

Defendants strongly disagree that the Court can order the transfer of money held in an account as injunctive relief. But at a minimum, before ordering the transfer of a half a million dollars in cash based on a preliminary injunction, adequate surety must be posted by JDT to protect Daws, Inc.'s interest in those funds. The amount of the bond should be the same as the amount transferred—$517,888.55.

## II. THIS COURT SHOULD RECONSIDER ITS ORDER THAT THE FUNDS IN THE ANB ACCOUNT BE TRANSFERRED.

JDT agrees that whether a party has an adequate remedy at law "is fundamental to the concept of injunctive relief." (Filing 124 at ECF p. 12). As previewed above, JDT has an adequate remedy at law with respect to recovering the funds held in the ANB account, making this aspect of the Court's order ineligible for the equitable relief granted. "When there is an adequate remedy at law, a preliminary injunction is not appropriate." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Without seriously challenging the substance of the conclusion that ordering the transfer of money is a legal, not equitable remedy, JDT claims that whether it has an adequate remedy at law is a "new argument" that was not raised at the hearing. But again, JDT first requested the relief of transferring the funds in the

8

ANB account in its closing statement. Springing this request at the last minute did not give Defendants fair notice of the relief JDT was seeking. Regardless, Defendants objected to this relief being granted at the hearing and did waive any arguments.

JDT's claims that it has no adequate remedy at law because holding the money JDT owes Daws, Inc. under the Note is "starving JDT of the cash it needs to operate its business" (Filing 124 at ECF p. 13). But that is true of any legal dispute in which damages are an issue. For example, if a party refuses to pay what is owed on a contract, that starves the other party of money. Under JDT's argument, Daws, Inc. could seek an injunction against JDT for failing the pay Daws, Inc. the $2.5 million JDT owes under the Note because JDT's refusal to pay is starving Daws, Inc. of money it is entitled to receive. This would expand injunctive relief far beyond its legal constraints.

Citing to *Transamerica Ins. Finance Corp. v. North American Trucking Ass'n, Inc.*, 937 F.Supp. 630, 635 (W.D.Ky.,1996), JDT argues the irreparable harm it faces is being starved of cash needed to operate its business suggesting that it cannot survive without a preliminary injunction. (Filing No. 124 at ECF 13). This argument rings hollow when considering that JDT was able to post a $480,000 *cash* bond in short order after the injunction was issued. If JDT truly needed cash to survive, one would suspect its priority would be to use its cash to operate its business, not post a bond. Given it was able to post almost a half a million dollar

9

cash bond, JDT can't show its business cannot survive absent a preliminary injunction.

### III. JDT'S EVIDENCE REGARDING LOYAL IS IRRELEVANT TO THE PRESENT MOTION.

In its order, this Court stated that "If Loyal wants to operate, it must pay Jim the full amount owed to him under its redemption agreement. Until such time as these funds are paid, Loyal may not operate due to Jim's financial interest in the company." (Filing 113 at ECF p. 15, n.6). As of April 17, 2025, the full payment Jim was owed by Loyal under the redemption agreement was deposited into his account. (Filing 122-1). Because Jim has now received the full amount due under the redemption agreement, Defendants have withdrawn their request for additional security relating to Loyal because there is nothing currently restraining Loyal from operating. (Filing 123).

JDT argues that one seeking equity must do equity. (Filing 124 at ECF p. 13), Because Defendants do not seek any additional security relating to Loyal, JDT's claim that Loyal violated the Court's order on April 16, 2025 is irrelevant to the present motion. Jim sold his interest in Loyal effective November 1, 2024. He has been fully paid, and had nothing to do with Loyal's alleged operations on April 16, 2025. If JDT wants to litigate the timing of the payments made by Loyal and Loyal's operations, that is an issue between JDT and Loyal, not Defendants.

## CONCLUSION

If the Court does not reconsider its order requiring the transfer of $517,888.55, then the bond should be increased as follows:

| | |
|---|---|
| JLD | $ 480,000.00 |
| Daws, Inc. | $ 517,888.55 |
| Jim Daws | $ 200,000.00 |
| **Total** | **$ 1,197,888.55** |

If the Court does vacate that part of its order relating to the ANB account, then the $517,888.55 amount can be removed from the bond. However, in either event the bond should be increased to account for the prohibition on Jim driving a truck which evidence was presented at the hearing.

DATED this 18th day of April, 2025.

        DAWS, INC., JAMES R. DAWS,
        LANA R. DAWS, DAWS TRUCKING, INC.
        and COLUMBUS TRANSPORTATION &
        LOGISTICS, LLC, Defendants

BY:  /s/ Timothy J. Thalken
      David C. Mullin, #21985
      Timothy J. Thalken, #22173
      Kristin M. Nalbach, #27125
      FRASER STRYKER PC LLO
      500 Energy Plaza
      409 South 17th Street
      Omaha, NE 68102-2663
      (402) 341-6000
      (402) 341-8290 - fax
      dmullin@fraserstryker.com
      tthalken@fraserstryker.com
      knalbach@fraserstryker.com
      ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d), counsel certifies that this brief contains 2,956 words including all text, captions, headings, footnotes, and quotations according to the word count function of Microsoft Word 365.

/s/ Timothy J. Thalken

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of April, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ Timothy J. Thalken

3389617