IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JIM DAWS TRUCKING, LLC, | Case No. 4:24-cv-03177 |
| Plaintiff, | |
| vs. | |
| DAWS, INC., JAMES R. DAWS, LANA R. DAWS, DAWS TRUCKING, INC., and COLUMBUS TRANSPORTATION & LOGISTICS, LLC, | |
| Defendants. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Prepared and submitted by:

Andre R. Barry #22505
Henry L. Wiedrich #23696
Madeline C. Hasley #27870
CLINE WILLIAMS WRIGHT
  JOHNSON & OLDFATHER, L.L.P.
233 South 13th Street
1900 US Bank Building
Lincoln, NE 68508
(402) 479-6900
abarry@clinewilliams.com
hwiedrich@clinewilliams.com
mhasley@clinewilliams.com

October 21, 2025

Plaintiff Jim Daws Trucking, LLC (JDT) submits this Brief in Opposition to Defendants' Objections to Magistrate Judge's Order (the Order) dated September 23, 2025. [Filing No. 147.]

## I. BACKGROUND

JDT restates and incorporates its arguments and Statement of Facts, as set forth in its Brief in Opposition to Defendants' Motion for Protective Order and Destruction of Privileged Documents in Plaintiff's Possession. [Filing No. 40.] On November 22, 2024, Defendants filed a Motion for Protective Order [Filing No. 34] and corresponding Brief [Filing No. 37]. On September 23, 2025, Magistrate Judge Nelson issued an Order, correctly denying Defendants' Motion for Protective Order. [Filing No. 147.]

## II. MAGISTRATE JUDGE NELSON'S DECISION

Defendants sought a protective order prohibiting JDT from using emails on a computer server JDT purchased from Defendant Daws, Inc., as part of an asset purchase on May 4, 2022. The emails were sent to and from Karavas & Kranz, P.C., a law firm that concurrently represented Defendants and JDT without any consent to joint representation or conflict waiver. [Filing No. 41-1 at 7 ¶ 24; Filing No. 147 at 4.] Defendants' motion addressed three categories of emails. Magistrate Judge Nelson found privilege was waived as to all three:

- Magistrate Judge Nelson found Defendant Jim Daws (Jim) waived privilege with respect to emails that were on the server when he sold the assets of Daws, Inc., including the server, to JDT, citing *In-Store Advertising Securities Litigation,* 163 F.R.D. 452 (S.D.N.Y. 1995). [Filing No. 147 at 8–9.]

2

- With respect to emails Jim sent to and received from Karavas & Kranz after the sale, Judge Nelson applied the four-part test articulated in *Asia Global Crossing, Ltd.*, 322 B.R. 247 (S.D.N.Y. Bankr. 2005). [Filing No. 147 at 9–13.] Defendants advocated for this test below [Filing No. 37 at 8; Filing No. 43 at 2–3], but do not mention it in their Brief in Support of their Objection [Filing No. 153]. Applying this test, Magistrate Judge Nelson found that the employee handbook which Daws, Inc. used before its sale of its business to JDT "as a going concern" continued to apply after the sale, and that Jim thus had no reasonable expectation of privacy in emails he sent and received using the server after the sale.

- Magistrate Judge Nelson found Defendants failed to produce evidence to support a claim that two emails Julie Karavas sent Jim at his JDT email address on October 1 and 9, 2024, were inadvertently disclosed. Defendants provided no evidence of steps taken to prevent inadvertent disclosure or to rectify the error after learning of it. [Filing No. 147 at 13–14.]

### III. STANDARD OF REVIEW

"The standard of review applicable to an appeal of a magistrate judge's order on nondispositive pretrial matters is extremely deferential." *Midgett v. Werner Enterprises, Inc.*, No. 8:18CV238, 2020 WL 6779149, at *1 (D. Neb. Nov. 18, 2020) (citing *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007)). Under Fed. R. Civ. P. 72(a), the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

3

"'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Chase v. C.I.R.*, 926 F.2d 737, 740 (8th Cir. 1991) (quoting *United States v. Unites States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is contrary to law if it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1043 (S.D. Iowa 2010) (quoting *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008)).

It is well-established that raising arguments which were not previously raised before a magistrate judge "is tantamount to those in which a claimant raises on appeal an argument not presented to the district court." *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000). As the Eighth Circuit has explained, the "'purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court.'" *Id.* (*quoting Reciprocal Exch. v. Noland*, 542 F.2d 462, 464 (8th Cir. 1976)). "To hold otherwise would allow a claimant to raise new claims to the district court and thus effectively have two opportunities for judicial review." *Id.* at 470.

## IV. ARGUMENT

Judge Nelson correctly applied the governing legal standards to the facts. Not only were his factual findings not clearly erroneous, they were also clearly correct.

**A.     Jim waived attorney-client privilege when he sold the server on which those communications were stored.**

In Defendants' opening brief in support of their Motion for Protective Order, Jim did not address the consequence of his sale of the server to JDT. [Filing No. 37.] In contrast, JDT argued that the sale of all assets of Daws, Inc.'s business, including its server, operated as a waiver. [Filing No. 40 at 21–24.] In support of this argument, JDT cited Neb. Rev. Stat. § 27-511 and numerous cases, including *In-Store Advertising Securities Litigation,* 163 F.R.D. 452 (S.D.N.Y. 1995), upon which Judge Nelson relied in denying Defendants' motion. Defendants did not address these arguments in their reply below. [Filing No. 43.] As a result, they have waived any objection as to pre-sale email communications.

Even if Defendants had not waived this objection, Judge Nelson's decision would remain correct. Defendants do not argue that *In-Store Advertising Securities Litigation,* 163 F.R.D. 452 (S.D.N.Y. 1995) is wrong as a matter of law or that Judge Nelson erred in applying it. As noted above, *In-Store Advertising* held that "where confidential attorney-client communications are transferred from a corporation selling assets to the corporation buying the assets, the privilege is waived as to those communications." *Id.* at 458. Judge Nelson correctly found that all of Daws, Inc.'s assets, including its server, were transferred to JDT. [Filing No. 147 at 2.] Judge Nelson also found Jim never instructed JDT or its owners to delete pre-sale communications. [Filing No. 147 at 9.] Defendants do not challenge either of these findings of fact as clearly erroneous. Nor could they. There is no evidence to contradict either of them.

5

Defendants argue, without addressing the holding in *In-Store Advertising*, that Jim could not have waived privilege because, in his own words, he was "not tech-savvy" and did not understand that his emails were stored on the company server. In support of their argument, Defendants cite *Five Points Bank v. Scoular-Bishop Grain Co.,* 350 N.W.2d 549, 552 (Neb. 1984), which they argue means privilege could not have been waived unless Jim knew his emails were stored on the company server. Defendants ignore the key language in *Five Points Bank*, which held privilege can be waived by "such conduct as warrants an inference of the relinquishment of such right; or the intentional doing of an act inconsistent with claiming it." *Five Points Bank,* 350 N.W.2d at 552. Jim intentionally sold the server to JDT as part of a transaction worth over $12 million. It is inconsistent for Jim to sell the server to JDT and simultaneously claim he retained personal attorney-client privilege over the emails that were on it. When Jim sold the server, he "voluntary[ily] and intentional[ly] relinquish[ed] or abandon[ed]" his right to own and control it. *Id.* Judge Nelson thus correctly held that "Jim waived such privilege as to pre-sale communications when he sold the server on which those communications were contained." [Filing No. 147 at 9.]

Contrary to Defendants' arguments, JDT is not playing a game of "gotcha." Defendants are projecting. JDT simply claims the right to keep and use what it purchased from Daws, Inc. It is Defendants who, having accepted $12 million in cash and a promissory note, seek to play "gotcha" by depriving JDT of the assets it purchased.

6

**B.    Post-sale email communications are not protected by the attorney-client privilege.**

As noted above, Judge Nelson found Jim's post-sale communications on JDT's server were not privileged under the four-factor test set forth in *Asia Global Crossing*. Defendants do not argue Judge Nelson was wrong to apply *Asia Global Crossing* or that he applied any of its factors incorrectly. They thus fail to identify any possible error of law. Defendants also ignore evidence showing that Judge Nelson's factual findings were not clearly erroneous but clearly correct.

In arguing Judge Nelson erred, Defendants focus on Jim's claimed subjective understanding that the employee handbook Daws, Inc. sold to JDT and which JDT continued to follow did not apply to him. But Jim's subjective understanding is only part of the test. For privilege to exist, the party claiming privilege must have had a subjective expectation of confidentiality that is found to be ***objectively reasonable***. *Doe 1 v. George Washington University*, 480 F. Supp. 3d 224, 226 (D.D.C. 2020). The four-part test in *Asia Global Crossing* is designed to resolve the fact issue whether there was an objectively reasonable expectation of confidentiality. *Asia Global Crossing*, 322 B.R. at 257–58.

**1.    Daws Trucking had a policy that continued to apply to employees after the sale of the business.**

The first factor under *Asia Global Crossing* is whether the company maintained a policy banning personal or other objectionable use of email. [Filing No. 147 at 10 (citing *Asia Global Crossing, 322 B.R. at 257*).] As Judge Nelson noted, a policy that does not impose a blanket ban on personal email use still weighs against an expectation of privacy if it "warns employees that electronic

communications are not private." [Filing No. 147 at 11 (quoting *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1109 (W.D. Wash 2011)).] Defendants do not contend either of these holdings is incorrect as a matter of law.

Evidence in the record shows that after JDT acquired the business of Daws, Inc., it continued to use Daws, Inc.'s handbook to describe and govern company policies, and that Jim was subject to the policies in the handbook. [Filing No. 41-1 at 3 ¶¶ 11–12.] Judge Nelson thus properly found that JDT maintained the same email policy. [Filing No. 147 at 10.] Defendants argue this holding was clearly erroneous and that JDT "had no email use policy." [Filing No. 153 at 12.] This argument, not Judge Nelson's Order, is clearly incorrect.

As Judge Nelson detailed in his Order, JDT purchased Daws, Inc. "as a going concern." [Filing No. 147 at 10.] After the sale, Jim became an employee of JDT and understood "that nothing would change from how the company was run before the APA." [*Id.*] JDT employees continued to refer to the employee handbook. [*Id.*] The undisputed evidence shows that employees knew and understood that the Daws Handbook continued to apply after the sale. [Filing No. 41-1 at 3–4 ¶¶ 13–15.] As just one example, Jim's wife, Lana, requested a copy of the employee handbook, and Jaisa Douty, an employee of JDT, responded on July 26, 2024, writing, "Daws Handbook Office **is the only handbook we have**." [Filing No. 41-6 (emphasis added).] Given this evidence, Judge Nelson did not clearly err in finding that "the handbook, which JDT bought as part of the transaction, served as the relevant handbook, and was treated as such by JDT employees." [Filing No. 147 at 10.]

Moreover, as Judge Nelson noted, the handbook created by Daws, Inc., which continued to apply at JDT, advised employees "[a]ll data entered on the Company's computer's is the property of the Company" and that "the Company may need to access your E-mail for various reasons." [Filing No. 147 at 11.] It likewise warned employees that email "should be used primarily for business purposes" and that "any information input to the computer is property of the Company." [*Id.*]

Defendants argue that even if the handbook applied to everyone else, it didn't apply to Jim. [Filing No. 153 at 13.] But Jim was undisputedly an employee of the company [Filing No. 147 at 2], and Rick testified the policies in the handbook did apply to Jim. [Filing No. 41-1 at 3 ¶ 12.]

In support of their Objections, Defendants argue Jim was free to interpret the handbook as he saw fit, because he was president of JDT. [Filing No. 153 at 13.] It is true that Jim was president of Daws, Inc., but he does not claim ever to have been the "president" of JDT. [Filing No. 35-1 at 1.] At JDT, which is a limited liability company, Jim answered to the company's members, Rick and Ricky. [Filing No. 35-1 at 3 ¶ 13; Filing No. 41-1 at 1 ¶ 2.] Rick testified that Jim was subject to the policies in the handbook. [Filing No. 41-1 at 3 ¶ 12.] Jim had no reason to expect that once he left JDT, its owners would not access emails he sent and received on the company server. Judge Nelson did not commit any arguable error, let alone a clear error, in finding that Jim was subject to JDT's policies.

9

**2.    Daws Trucking reserved the right to monitor its employees' computer usage.**

Defendants claim "JDT also failed to cite any evidence that Daws, Inc. or JDT ever monitored employee's [sic] personal e-mails." [Filing No. 153 at 14.] As Judge Nelson correctly held, "most courts have not required evidence that the employer actually monitored an employee's email address." [Filing No. 147 at 11.] Instead, a company's "reservation of the right to [monitor] has sufficed as a basis for concluding that the employees had no reasonable expectations of privacy." *Doe 1 v. George Washington Univ.*, 480 F. Supp. 3d 224, 227 (D.D.C. 2020) (internal brackets omitted). Defendants do not argue Judge Nelson got the law wrong on these points or that he incorrectly applied it. [Filing No. 153 at 14.] To the contrary, Judge Nelson correctly found this factor weighs against Defendants' claim of privilege.

**3.    JDT had a right to access information contained on the server it purchased.**

As Judge Nelson correctly noted, under *Asia Global Crossing*, an employer's right to access emails weighs against a reasonable expectation of confidentiality. [Filing No. 147 at 12 (citing *Asia Global Crossing* at 259).] Defendants barely touched on this factor below [Filing No. 37 at 9] and do not even mention it now [Filing No. 153 at 14–15]. Judge Nelson did not err, as a matter of fact, in finding that JDT had access to Jim's emails, or as a matter of law in finding this weighed against Defendants' claim of privilege. [Filing No. 147 at 12.]

10

4. **JDT employees were aware of the Daws Trucking policies in the Handbook.**

As Judge Nelson correctly held, the fourth factor is whether the employee was notified or aware of the policy. [Filing No. 147 at 12 (citing *Asia Global Crossing*, 322 B.R. at 257).] Citing paragraph 14 of Jim's declaration, Defendants argue the evidence shows he was unaware of any email policy. [Filing No. 153 at 15.] That's not what Jim's declaration said, though. In carefully worded paragraph 14, Jim said, "***After*** the APA and becoming an employee of JDT, I never received a JDT employee handbook or a JDT e-mail use policy." [Filing No. 35-1 at 3 ¶ 14 (emphasis added).] But as Judge Nelson found, the operative policy was contained in the handbook promulgated ***before*** the APA, when Jim was president of Daws, Inc. [Filing No. 147 at 10–11.] Nowhere did Jim claim to have been unaware of that policy. Judge Nelson also found, as a matter of fact, that "[a]s president Jim was aware of the handbook policies but simply interpreted the policies not to apply to him." [Filing No. 147 at 12.] This finding of fact is clearly correct.

5. **In combination, the *Asia Global Crossing* factors weigh against an objectively reasonable expectation of confidentiality.**

Defendants repeatedly argue that Judge Nelson was wrong because he ignored Jim's self-described, subjective understanding that his emails remained confidential despite the policies set forth in the employee handbook. [Filing No. 153 at 12–16.] But under *Asia Global Crossing*, a person's subjective expectation of confidentiality is not enough. It must also be objectively reasonable. Judge Nelson correctly applied the *Asia Global Crossing* factors to the facts to find that

Jim "did not have a reasonable expectation of privacy in his post-sale e-mail communications, thus waiving protections of attorney client privilege." [Filing No. 147 at 13.]

## C.    Ms. Karavas' inadvertent disclosure operated as a waiver of privilege.

That leaves two emails which Ms. Karavas sent to Jim's JDT email address on October 1 and October 9, 2024. Ms. Karavas sent these emails after JDT's counsel had notified her, on September 30, of JDT's position that Jim's emails on the JDT server were not subject to attorney-client privilege. [Filing No. 41-1 at 9–10 ¶ 43.]

Defendants claim the disclosure of these emails was inadvertent, such that privilege was not waived. But as Judge Nelson correctly held, not every mistaken disclosure is "inadvertent"; in the Eighth Circuit, courts apply the five-factor *Hydraflow* test to determine whether the privilege was waived. [Filing No. 147 at 13 (citing *Gray v. Bicknell,* 86 F.3d 1472, 1484 (8th Cir. 1996)).] In this district, as Judge Nelson held, "an inadvertent disclosure does not operate as a waiver of the attorney-client privilege if the holder of the privilege took reasonable steps to prevent disclosure and the holder promptly took reasonable steps to rectify the error after learning of the error." [*Id.* (citing *Gunter v. City of Omaha*, N. 8:21CV281, 2022 WL 3597762, at *2 (D. Neb. Aug. 23, 2022)).] Defendants don't argue this authority is wrong; they themselves cited it below. [Filing No. 37 at 11.]

Applying this standard, Judge Nelson found Defendants "provided no evidence of reasonable steps taken to protect the e-mails from inadvertent

disclosure, nor do they provide evidence of reasonable steps taken to rectify the error after learning of it." [Filing No. 147 at 13–14.] Defendants do not dispute this finding of fact. Nor could they. They offered no declaration from Ms. Karavas or any other evidence to show any steps to prevent or rectify these allegedly inadvertent disclosures.

Without evidence to support their claim of inadvertent disclosure, Defendants try to shift the blame to JDT's counsel, by arguing that a lawyer has an ethical duty to notify a party that he or she has received a document that he or she knows or reasonably should know was inadvertently sent. [Filing No. 153 at 16 (citing Neb. R. Prof. Conduct § 3-504.4(b)).] Defendants did not level this accusation below. Even if they had, it is factually unsupported. JDT's attorneys were not subject to an ethical obligation under Rule 3-504.4(b), because Ms. Karavas did not send the emails to them. She sent them to Jim's address at JDT, which then provided copies to Defendants' counsel.

Defendants also try to rely on a disclaimer allegedly included in Ms. Karavas's email dated October 9, 2024, but not, evidently, in her email dated October 1, 2024. [Filing No. 153 at 17.] Ms. Karavas's October 9 email itself was not provided or proffered to the Court below, nor did Defendants make any arguments to Judge Nelson regarding the disclaimer to support their claim of inadvertent disclosure. [Filing No. 37 at 11.] Even if they offered the disclaimer, it would have provided no evidence that Defendants took reasonable care to prevent disclosure or to rectify their error. Judge Nelson thus did not err in rejecting Defendants' claim of inadvertent disclosure.

**D.   Unfairness is not necessary to show waiver but nonetheless supports Judge Nelson's finding of waiver.**

Defendants suggest privilege can only be waived under the holding of *League v. Vanice*, 374 N.W.2d 849 (Neb. 1985), which sets forth a fairness standard for certain waivers of privilege. However, Nebraska statute expressly provides that a person waives privilege if he "voluntarily discloses or consents to disclosure of any significant part of the matter or communication." Neb. Rev. Stat. § 27-511. As Defendants themselves concede, a waiver can be accomplished by "such conduct as warrants an inference of the relinquishment of such right; or the intentional doing of an act inconsistent with claiming it." *Five Points Bank*, 350 N.W.2d at 552. Moreover, the decisions in *In-Store Advertising* and *Asia Global Crossing*, neither of which Defendants contested below, provide the relevant standard for judging whether privilege was waived in the context of emails stored on a company server.

Even if Judge Nelson had ignored the fact that Jim did not have a reasonable expectation of confidentiality in emails he sold to JDT and the emails he sent using JDT's server, basic fairness would still support Judge Nelson's finding of waiver. Jim claims he did nothing to coordinate a mass exodus of JDT employees in September of 2024. At the same time, though, he seeks to shield the emails he sent to and from his attorney multiple times per day during that same time. [Filing No. 38-1 at 21–28.] And Jim was using an attorney who for years had represented and been paid by JDT, without any consent to joint representation. [Filing No. 40 at 36; Filing No. 41-1 at 6–8, ¶¶ 22–38.] There is nothing unfair about JDT having access to these emails.

14

**E.   If Defendants' objection is sustained, the crime-fraud exception remains to be decided.**

JDT also argued that the crime-fraud exception to attorney-client privilege applies. [Filing No. 40 at 39–43; Filing No. 147 at 8.] Judge Nelson did not need to reach the crime-fraud exception, because he correctly found privilege was waived as to all three categories at issue. If the Court were somehow to reverse Judge Nelson's decision, the crime-fraud issue would remain for decision as presented on the record below.

## V. CONCLUSION

Defendants argue "any doubt regarding waiver should be resolved in favor of upholding the privilege." [Filing No. 153 at 18.] They cite no legal authority to support this proposition, which is not part of the governing law. Even if it were, under the law Judge Nelson correctly applied, there is no doubt that the privilege was waived. Judge Nelson's decision should be upheld in all respects.

Dated October 21, 2025

JIM DAWS TRUCKING, LLC,
Plaintiff

By:   s/ Andre R. Barry
      Andre R. Barry #22505
      Henry L. Wiedrich #23696
      Madeline C. Hasley #27870
      CLINE WILLIAMS WRIGHT
        JOHNSON & OLDFATHER, L.L.P.
      233 South 13th Street
      1900 US Bank Building
      Lincoln, NE 68508
      (402) 479-6900
      abarry@clinewilliams.com
      hwiedrich@clinewilliams.com
      mhasley@clinewilliams.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the word count of this brief complies with local rule NECivR 7.1(d). The word-count function of Microsoft Word M365, states that this brief, inclusive of all text, contains 3,858 words. No generative artificial intelligence program was used in drafting this brief.

s/ Andre R. Barry
Andre R. Barry

## CERTIFICATE OF SERVICE

I, Andre R. Barry, hereby certify that on October 21, 2025, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Nebraska using the CM/ECF system, which sent notification of such filing to all registered case participants.

s/ Andre R. Barry
Andre R. Barry